Steve W. Berman (to request admission *pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Christopher Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

(Additional counsel captioned below)
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| Barbara Linhart, on behalf of herself and all others similarly situated.<br><br>                                    Plaintiff,<br><br>        v.<br><br>New York Life Insurance Company, New York Life Insurance and Annuity Corporation, Life Insurance Company of North America and NYLife Insurance Company of Arizona and DOES 1 TO 50, inclusive,<br><br>                                    Defendants. | No.   5:21-cv-1640<br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>1.   BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM<br>2.   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |

BARBARA LINHART ("Mrs. Linhart" or "Plaintiff"), brings this action on behalf of herself and all others similarly situated, against Defendants New York Life Insurance Company (incorporated in New York), New York Life Insurance and Annuity Corporation (incorporated in Delaware), Life Insurance Company of North America (incorporated in Pennsylvania), and NYLife Insurance Company of Arizona (incorporated in Arizona) all of which are part of the NAIC #0826 NEW YORK LIFE GROUP companies which issue and administer life insurance policies in the state of California (jointly, "New York Life"). Plaintiff, by and through her attorneys, based on her individual experiences, the investigation of counsel, and information and belief, alleges as follows in support of the claims herein.

## I.   NATURE OF THE CASE

1. Plaintiff has filed this class action lawsuit because Defendant New York Life knowingly and repeatedly violated California law by failing to provide statutorily mandated forms and annual notices to policyholders as required by California law, and therefore, improperly lapsed and refused to pay the benefits of its life insurance policies.

2. Under Section 10113.72 of the California Insurance Code ("Statutes"), which became effective January 1, 2013, life insurance companies such as New York Life are required to, among other requirements:

a) give their policyholders an opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium by providing a form to the policyholder which form "shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium."("Designation Notice Requirement"); and

b) shall notify the policy owner annually of the right to change the written designation or designate one or more persons. ("Annual Notice Requirement")

3.    For policies issued before January 1, 2013, New York Life failed to comply with the Statutes in two distinct ways, each of which independently warrant the relief sought in this case.  Specifically: a) New York Life did not provide its policy owners with the requisite form to make the designation as required by the Designation Notice Requirement; and b) New York Life did not advise its policy owners of their right to change their designation as required by the Annual Notice Requirement.

4.    Rather than simply comply with the spirit and letter of the Statutes, New York Life included a plainly deficient and ambiguous "notice" within other lengthy and unrelated policy materials that did not conspicuously and unambiguously advise policyholders of their rights. This purported notice made it nearly impossible for policyholders to exercise their important statutory rights that the Statutes were enacted to protect.  The public policy undergirding the Statutes' requirements—which were publicly supported by California's Governor, Insurance Commissioner and Department of Insurance—is to provide consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would benefit, specifically, to protect consumers from losing insurance coverage due to a premium payment that is accidentally missed.

3.    According to the author of the legislation: "Individuals can easily lose the critical protection of life insurance if a single premium is accidentally missed. If an insured individual loses coverage and wants it reinstated, he or she may have to undergo a new physical exam and be underwritten again, risking a significantly more expensive, possibly unaffordable premium if his or

her health has changed in the years since purchasing the policy. Therefore, the protections provided by [the Requirements] are intended to make sure that policyholders have sufficient warning that their premium may lapse due to nonpayment."

4.     This is not a mere hypothetical concern. When one is ill, or in the final stages of life, it is not uncommon for a life insurance holder to miss a premium payment as a result of their poor health.

5.     The Statutes were also designed specifically to deal with the unique nature of life insurance. When a potential claim for benefits arises, the policy owner and party responsible for payment of premiums is often the insured, and due to their death, is no longer available to explain the circumstances related to any potential lapse or termination of coverage. The beneficiary is often unaware of the circumstances related to any lapse of coverage. Rather, the insurer is fully in control of the documentation and requirements for termination of coverage. As such, California requires strict compliance with all statutory and contractual provisions governing termination of an otherwise in-force policy regardless of the nonpayment of premium and no lapse or termination for failure to pay a premium is effective, and the policy remains in force even if premiums are unpaid, unless and until all statutory and contractual provisions are satisfied.

6.     New York Life has repeatedly and intentionally failed to adhere to the Designation Notice Requirements and Annual Notice Requirements, and then failed to honor those life insurance policies by refusing to pay beneficiaries the proceeds.  New York Life's conduct has been particularly egregious and unreasonable as it has had notice that numerous district courts in the Ninth Circuit have enforced the Statutes against life insurance companies in nearly

1   identical circumstances, and more recently the California Supreme Court

2   agreed.

3       7.    The California Supreme Court has unequivocally held—in

4   *McHugh v. Protective Life Ins. Co.*, Cal. Supreme Court Case Number S259215

5   (Aug. 30, 2021)—that the Statutes apply to <u>all</u> policies that were in force as of

6   January 1, 2013:

7         We conclude that sections 10113.71 and 10113.72 apply to all

8         life insurance policies in force when these two sections went into

9         effect, regardless of when the policies were originally issued.

10         This interpretation fits the provisions' language, legislative

11         history, and uniform notice scheme, and it protects policy owners

12         — including elderly, hospitalized, or incapacitated ones who

13         may be particularly vulnerable to missing a premium payment —

14         from losing coverage, consistent with the provisions' purpose.

15       8.    The *McHugh* decision followed multiple rulings from other courts,

16   one dating as far back as 2016, which have likewise applied the Statutes to

17   policies in force as of the Statutes' effective date. *See Bentley v. United of*

18   *Omaha Life Insurance Co.*, 2:15-CV-07870 (C.D. Cal. Feb. 21, 2019), Dkt. No.

19   174 at 24-25 ("Jennifer Bentley, as the class representative, has successfully

20   demonstrated that United breached its contractual duty to pay life insurance

21   benefits because: (1) United issued the life insurance policy to Eric Bentley,

22   and Jennifer Bentley is that policy's beneficiary, Jt. Stip. ¶ 15; (2) the Bentley

23   policy was issued, delivered, or renewed in California by United, *id.* ¶¶ 16–17;

24   (3) the Bentley policy renewed after the Effective Date, *id.* ¶¶ 17, 20; (4) United

25   did not provide Eric Bentley with the Offer to Designate or provide Jennifer

26   Bentley with the Designee/30-Day Notice required by the Statutes, *id.* ¶¶ 22–

27   24; (5) the Bentley policy lapsed for non-payment of premium after the

28

Effective Date, *id*. ¶¶ 4–5, 35–36; and (6) to date, United has not paid death benefits on the Bentley policy. *Id*. ¶ 32. Thus, there is no dispute of material fact that United breached its contractual duty to pay Jennifer Bentley's life insurance claim."). *Accord Moriarty v. American General Life Ins. Co.*, 3:17-cv-1709 (S. D. Cal. Oct. 1, 2020); *Siino v. Foresters Life Ins. & Annuity Co.*, 2020 U.S. Dist. Lexis 178709, *14–19 (N.D. Cal. Sep. 1, 2020); *Thomas v. State Farm Insurance Company*, Case No 18-cv-00728 (S.D. Cal. Dec. 10, 2019); *Bentley v. United of Omaha Life Insurance Co* 2016 U.S. Dist. LEXIS 195183 (C.D. Cal. June 22, 2016).

9.      In addition to these judicial interpretations, New York Life is one of the members of the Association of California Life & Health Insurance Companies ("ACLHIC"), and on October 25, 2012, ACLHIC advised, among others, New York Life employees Michael Tobin and Jill Diaz that the Statutes and the "alternative designee provisions will be applied prospectively, and will only impact those policies issued, delivered or renewed on or after January 1, 2013." Thus, nearly nine years before denying Plaintiff's claim, New York Life's own trade association advised that the Statutes would cover policies renewed after the Effective Date.

10.      Despite this longstanding, clear and overwhelming authority, for life insurance policies originally issued prior to January 1, 2013, New York Life has terminated and refused to pay benefits due to the non-payment of premiums despite failing to adhere to the Designation Notice and Annual Notice Requirements mandated by law with respect to such policies.

11.      Plaintiff is one of many beneficiaries that have been damaged by New York Life's unlawful conduct.

12.    New York Life improperly terminated and refused to pay the benefits of a policy it had issued to James Linhart ("Mr. Linhart") —Mrs. Linhart's husband—who died on August 7, 2021.

13.    Plaintiff brings this suit as a class action to hold New York Life accountable for its violations of the law, which have severely harmed, and will continue to severely harm if not stopped, numerous families such as Mrs. Linhart's.

## II.    JURISDICTION AND VENUE

14.    This action is a civil matter of which this Court has jurisdiction under the provisions of 28 U.S.C. § 1332.

15.    The Plaintiff is a citizen and domiciliary of the State of California currently residing in Palm Desert, California.

16.    New York Life Insurance and Annuity Company has its corporate headquarters at 51 Madison Avenue, New York, NY, is incorporated in the State of Delaware and is part of the New York Life Group of Companies.

17.    The amount in controversy well exceeds the jurisdictional minimum under 28 U.S.C. § 1332.

18.    New York Life operates and has operated in the State of California since 1957 and has issued and administers life insurance policies under various entities and trade names, including but not limited to: New York Life Insurance Company (incorporated in New York), Life Insurance Company of North America (incorporated in Pennsylvania), and NYLife Insurance Company of Arizona (incorporated in Arizona).

19.    Venue is appropriate in this district under 28 U.S.C.§1391 because a substantial part of the events giving rise to claims at issue occurred in this district.  Specifically, the life insurance policy at issue in this matter was issued to Mr. Linhart while he was a resident of Mission Viejo, California. Mr. Linhart

paid his premiums for the policy at issue for nearly thirteen years while residing in Mission Viejo, California. New York Life has transacted business throughout this district including the issuance of life insurance policies and was found or had agents in this district.

20.    This Court has personal jurisdiction over New York Life because, among other facts, New York Life: a) transacted business in this district; b) issued insurance policies in this district; c) had substantial contacts with this district; and/or d) was engaged in the illegal conduct alleged herein which was directed at and had the intended effect of causing injury to persons residing or located in this district.

## III.    THE PARTIES

21.    Mrs. Linhart is the sole beneficiary of the insurance policy issued by New York Life to her late-husband James Linhart that was entered into in Mission Viejo, California. At the time the policy was issued, Mr. and Mrs. Linhart were residents of Mission Viejo, California.

22.    New York Life is an insurance company licensed to conduct the business of insurance in California. New York Life Insurance and Annuity Corporation is a Delaware corporation and is a unit of New York Life Group, a New York based financial services company that issues and administers life insurance policies in the state of California under the names including but not limited to: New York Life Insurance Company (incorporated in New York), Life Insurance Company of North America (incorporated in Pennsylvania), and NYLife Insurance Company of Arizona (incorporated in Arizona).

## IV.    FACTUAL ALLEGATIONS

23.    In 2012, Assembly Bill 1747 was enacted and created Sections 10113.71 and 10113.72 of the California Insurance Code (the "Statutes").

24.    The Statutes went into effect on January 1, 2013 (the "Effective Date") and established, among other things, notice and designation requirements for life insurance policies.

25.    The mandates of the Statutes included, among other requirements, the Designation Notice Requirement and Annual Notice Requirement, which required insurers to: 1) provide their policyholders with a form to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium, 2) advise their policyholders annually of their right to make or change a designation; and 3) provide notice to a third party the policyholder designates of any non-payment of a premium prior to terminating any policy.

26.    The Statutes read in pertinent part:

**Section 10113.71:**

(b)(1):A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

****

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid.  However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

****

**Section 10113.72:**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium.  The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

Cal. Ins. Code § 10113.71-72. (emphasis added)

27.    New York Life has chosen to disregard the Statutes with respect to life insurance policies it issued or delivered or renewed in California prior to January 1, 2013.

28.    In particular, New York Life has disregarded the Designation Notice and Annual Notice Requirements for insurance policies it issued or delivered in California prior to the Effective Date of the Statutes—January 1, 2013—even if the policies were renewed after the Effective Date.

29.    As a result of New York Life's disregard of the Designation Requirements and Annual Notice Requirements of the Statutes, New York Life has improperly terminated policies and refused to pay out proceeds that are due and owing to the beneficiaries of such improperly terminated policies.

30.    The policy issued by New York Life to Mr. Linhart—for which Plaintiff is the sole beneficiary—is one example.

31.    On August 1, 2007, New York Life issued a $350,000 "Individual Term Life Insurance" policy to Mr. Linhart (Policy No. 62970515) (the "Policy").

32.    Upon information and belief, pursuant to the Policy, Mr. Linhart was able to and had the option to renew the Policy by paying the monthly renewal premium identified in the Policy.  The Policy Anniversary was each August 1st of the year.

33.    Mr. Linhart made his premium payments for over 13 years, some after the Effective Date, and, as a result, the Policy renewed each year and coverage remained in force without interruption during that time.  On August 3, 2021, New York Life purportedly sent Mr. Linhart a letter that advised that coverage under the Policy was no longer being provided for the alleged non-payment of the premiums.

34.    Mr. Linhart died on August 7, 2021.

35.    At no time prior to the termination did New York Life provide Mr. Linhart with the form to designate a third party to receive notification of a pending termination as mandated by the Designation Notice Requirements of the Statutes.  At no time prior to the termination did New York Life provide Mr. Linhart with notice of his annual of the right to change the written designation of the third party to receive notifications as mandated by the Annual Notice Requirement.

36.    Instead of providing plain, clear, unambiguous and conspicuous notice of these important statutory and consumer rights, New York Life did exactly the opposite.

37.    New York Life buried a confusing reference to a right to designate a third party in California within a lengthy, single-spaced "Annual Policy Summary" in the definitions section on page two of the five-page summary lumped together with references to New Jersey, Florida, Vermont and Maine residents—attached as **Exhibit 1**—which read as follows:

**Page 2 of 5**

This Annual Policy Summary is not a contract. Please refer to your policy contract or contact your agent/representative for more complete explanations of your coverage. We reserve the right to correct errors.

DEFINITIONS OF TERMS FOR THE NYLIAC ANNUAL POLICY SUMMARY - Not all terms will appear nor will all be applicable on all Annual Policy Summaries.

Account Value - The value of the policy on the specified "as of" date. This value is based on the account value as of the beginning of the reporting period less cost of insurance charges, administrative fees, and any partial cash surrender value benefits paid, and any service or other charges debited during the reporting period. The account value is increased by premiums received (less premium expense charges) and interest credited during the reporting period.

Additional Benefits - The listing of benefits included in the policy.

Alternative Cash Surrender Value (ACSV) - For a period of 10 years from the policy date of this policy, while the insured is living, this policy will have an ACSV. The ACSV is equal to the Cash Surrender Value of the policy plus the amortized value of the Alternative Cash Surrender Value Benefit.

Alternative Cash Surrender Value Benefit (ACSVB) - The ACSVB is equal to (a) x (b), where (a) is equal to the current month's un-amortized ACSVB value which consists of the prior month's un-amortized ACSVB value; 60 % of the Sales Expense Charges deducted from all premiums paid since the last Monthly Deduction Day and 60% of the monthly deduction for both the Monthly Per Thousand of Base Policy Face Amount Charges and the Monthly Per Thousand of any riders attached to this policy and (b) is the current month's amortization factor. This factor is 1 each month during the first policy year and then decreases linearly beginning with the 13th policy month and continuing through the end of the 10th policy year. On the 10th Policy Anniversary and any date thereafter, the ACSVB will be zero.

Base Plan Face Amount - The initial Death Benefit under the policy. This amount does not include any other policy or rider benefits. It also does not reflect a reduction for a policy loan.

Cash Surrender Value - The net amount payable to the policyowner if the policy is surrendered to the Company on the specified "as of" date. The amount is based on the account value, less any applicable Surrender charges, less any unpaid premium and accrued loan interest. A surrender may result in a taxable gain that may be subject to federal and estate withholding.

Cash Value Accumulation Test (CVAT) - The IRS Life Insurance Qualification Test that states that the account value cannot exceed the single premium required to fund future contract benefits, under the guaranteed assumptions. If the account value exceeds the net single premium, the death benefit will be increased to an amount that will meet the test.

Corridor Death Benefit - The increase in death benefit necessary to maintain the relationship between a policy's death benefit and account value prescribed by the Internal Revenue Code.

Cost of Insurance Charges - The amount deducted to pay the insurance cost of the base policy and any riders.

Current Loan Interest Rate - The rate of interest currently charged on a policy loan.

Fees and Other Charges - The fees and other charges include a monthly contract charge, a monthly per thousand face amount charge, premium expense charges and any additional first year premium expense charges, if applicable.

Guideline Annual Premium - The annual premium needed to endow a policy at age 100 at 4% interest and guaranteed charges.

Guideline Premium Test - The IRS Life Insurance Qualification Test that requires that cumulative premiums paid do not exceed the greater of the Guideline Single Premium or the sum of the Guideline Annual Premiums.

Guideline Single Premium - The single premium needed to endow a policy at age 100 under the guaranteed assumptions.

Interest Earned - The amount of interest earned on the policy's account value during the prior policy year, ending on the anniversary date.

Policy Loans and Partial Surrenders - The amount(s) of money the Company pays out of the policy as loans and/or partial surrenders during the reporting period.

Loan Interest Paid - The policy loan interest paid in cash during this statement period.

Loan Repayment(s) - The amount(s) paid to us to reduce the outstanding policy loan principal during this period. This includes receipt of both internal and external funds.

Outstanding Loan Balance - The policy loan amount and any unpaid interest due on a specified "as of" date.

Policy Date - The date when the insurance coverage began.

Policyowner - The person or organization who has the rights of ownership in the policy during the life of the primary insured.

Planned (Pay Mode) Premium - The frequency of premium payments and the amount of the current planned premium selected by the policyowner.

Summary of Payments - The various payments made to the Company for the policy during the reporting period.

Target Premium - The Target Premium is an amount used to determine the amount of premium expense charge deducted from your policy premium payments during each policy year. The Target Premium will change if the initial base policy face amount is increased or decreased.

Taxes Withheld - The amount withheld to pay federal or state taxes on money paid from the policy.

Total Death Benefit - A summary of the Death Benefit provided by the policy that would be payable if the insured had died on the "as of" date. This amount includes the total face amount of the base policy, any term insurance rider on the Primary Insured , and, depending upon the Life Insurance Option elected, the account value amount or the adjusted total premium amount. The benefit has been reduced by any outstanding policy loan and unpaid loan interest.

Total Loan Interest Charged - The sum of the policy loan interest charged during the period, including loan interest charged on the anniversary.

New Jersey, Vermont, Florida, Maine & California Residents - If the insured covered by this policy and/or policyowner is age 62 or older (NJ), age 64 or older (VT) or any age (FL, ME and CA), you can designate a third party to whom we will mail copies of premium, cancellation and lapse notices. Please call a Customer Service Representative at the toll-free number on page one for more information regarding this procedure.

OVUL04 01/13

38.    This buried "notice"—enlarged and isolated below for reference—located in the lower right hand corner not only failed to comply with the mandate of the Statutes—by not providing the requisite form or notification of a policyholder's important statutory right to change a designation—it also plainly failed to satisfy the spirit of the Statutes by depriving policyholders, particularly the vulnerable population the Statutes were designed to protect, of any meaningful opportunity to designate a third-party to receive notices of a potential lapse as the Legislature intended.

> **New Jersey, Vermont, Florida, Maine & California Residents** - If the insured covered by this policy and/or policyowner is age 62 or older (NJ), age 64 or older (VT) or any age (FL, ME and CA), you can designate a third party to whom we will mail copies of premium, cancellation and lapse notices. Please call a Customer Service Representative at the toll-free number on page one for more information regarding this procedure.

39.    New York Life's conduct is egregious because it shows that it knew it had obligations to Mr. Linhart and others like him under the Statutes yet chose to ignore some of the obligations entirely and make hollow efforts to satisfy others in a way that made it highly unlikely policyholders would ever be aware of, much less exercise, their statutory rights.

40.    All life insurance companies already have on file beneficiary designation forms.  Other major insurance companies, including but not limited to Fidelity, United of Omaha, Blue Cross Blue Shield, and Primerica had no trouble drafting simple forms for their policyholders to complete.  See **Exhibit 2**.

41.    Having failed to satisfy the Designation Notice Requirement and Annual Notice Requirement, New York Life, by extension, also failed to notify a third-party designee of Mr. Linhart's of the pending termination in violation of the Third-Party Notice Requirement of the Statutes.

42.    After Mr. Linhart's death, Mrs. Barbara Linhart (the named beneficiary under the Policy and Mr. Linhart's widow) contacted New York Life and submitted a claim for benefits.

43.    New York Life is aware of the California Supreme Court's ruling in *McHugh,* as well as, on information and belief, the rulings in *Bentley* and *Thomas*.

44.    New York Life denied the claim, stating that no benefits were payable on the Policy.

45.    As a result of the denial, Mrs. Linhart has not received the proceeds from the Policy, which has caused Mrs. Linhart to suffer considerable harm in an amount to be proven at the time of trial.

## V.    CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this class action on behalf of herself, and all persons and entities similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Plaintiff brings this action on behalf of the following class, which is subject to refinement based on information learned during discovery:

All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies issued or delivered in the State of California, that were in force on or after January 1, 2013 or renewed after January 1, 2013, and were lapsed or were terminated by New York Life for the non-payment of premium after January 1, 2013, and as to which policies the notice form as described by Sections 10113.72(a) of the California Insurance Code (the "Designation Notice Requirement") or notice to change a designation as described in Section 10113.72(b) of the California Insurance Code (the "Annual Notice Requirement"), were not sent by New York Life prior to lapse or termination (hereinafter referred to as "Class").

As used in the Class definition, the "notice to change a designation as described in Section 10113.72(b)" refers to the notice to the policy owner annually of the opportunity to change the written designation of a third-party designee.

As used in the Class definition, the "form" described by Section 10113.72(a) of the California Insurance Code refers to the form the insurer shall provide that affords the opportunity for the policy owner to submit the name, address, and telephone number of at least one person who is to receive notice of lapse or termination of the policy for nonpayment of premium.

47.    Excluded from the Class are: a) New York Life; b) any entity in which New York Life has a controlling interest; c) New York Life's officers, directors, and employees; d) New York Life's legal representatives, successors, and assigns; e) governmental entities; and f) the Court to which this case is assigned.

48.    Members of the Class are so numerous and geographically dispersed, throughout California and likely the United States, that joinder of all members is impracticable. On information and belief, the Class is readily identifiable from information and records in New York Life's possession.

49.     Plaintiff's claims are typical of the claims of the members of the Class. The Plaintiff and all members of the Class were damaged by the same wrongful conduct of New York Life, that is, *inter alia*, its failure to satisfy the Designation Notice Requirement and Annual Notice Requirement and its breach of its insurance policies through its wrongful termination and non-payment of proceeds.

50.     The Plaintiff will fairly and adequately protect and represent the interests of the Class.  Having suffered the same injury from the same conduct of New York Life, Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

51.     Plaintiff's counsel in this matter are experienced in the prosecution of complex commercial class actions such as this one.

52.     Questions of law and fact common to members of the Class predominate over questions that may affect only individual class members because, among other things, New York Life has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in New York Life's wrongful conduct.

53.     Questions of law and fact common to the Class include, but are not limited to:

- Whether the Designation Notice and Annual Notice Requirement applied to New York Life policies issued before the Effective Date but in force after the Effective Date;

- Whether the Designation Notice Requirement applied to New York Life policies issued before the Effective Date but renewed after the Effective Date;

- • Whether New York Life has failed to satisfy the Designation Notice and Annual Notice Requirements;
- • Whether New York Life violated the Statutes by not satisfying the Designation Notice and Annual Notice Requirements;
- • Whether New York Life breached its life insurance policies by not satisfying the Designation Notice and Annual Notice Requirements;
- • Whether New York Life breached its life insurance policies by terminating policies and not paying claims despite not satisfying the Designation Notice and Annual Notice Requirements; and
- • The quantum of damages sustained by the Class in the aggregate.

54.   Treatment of this dispute as a class action is a superior method for the fair and efficient adjudication of this matter over individual actions. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would require. In addition, class treatment will avoid the risk of inconsistency and varying adjudications.

55.   The many benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably or cost effectively be pursued individually, substantially outweighs potential difficulties—which Plaintiff does not anticipate—in management of this case as a class action.

## VI.   CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

56.    Plaintiff refers to all preceding paragraphs and incorporates them as though set forth in full in this cause of action.

57.    New York Life issued and delivered life insurance policies, which were binding contracts, to the policyholders identified in the Class.

58.    New York Life breached the terms of such life insurance policies—including its policy with Mr. Linhart, which Plaintiff, as the beneficiary, has the right to enforce—by, *inter alia*, the following acts and/or omissions:

a.    Failing to timely and meaningfully invite the policyholders identified in the Class—including Mr. Linhart—to designate a third party to receive termination notices for non-payment of a premium as required by the Designation Notice Requirement of the Statutes by not providing policyholders with a copy of a designation form that provides the opportunity for the policy owner to submit the name, address, and telephone number of at least one person who is to receive notice of lapse or termination of the policy for nonpayment of premium, drafting the notices in way that was difficult to comprehend and act on and burying the notices within other materials;

b.    Failing to timely invite the policyholders identified in the Class— including Mr. Linhart—of their annual right to change their third-party designation as required by the Annual Notice Requirement of the Statutes;

c.    Improperly terminating and refusing to pay benefits to the Class members—including Plaintiff—despite not satisfying

the Designation Notice and Annual Notice Requirements of the Statutes; and

c.    Failing to abide by the Statutes at all times after the Effective Date.

59.    The Statutes mandate that no lapse or termination is effective unless the statutory provisions are complied with, which New York Life has failed to do, and thus breached Mr. Linhart's policy and the other policies for which the Class members are beneficiaries.

60.    As a result of New York Life's breaches of its life insurance policies, the Class—including Plaintiff—has sustained direct damages, as well as other foreseeable and incidental damages, in an amount to be determined according to proof at the time of trial, plus interest.  In California, the measure of damage for breach of a life insurance policy is set as the "sum or sums payable in the manner and at the times as provided in the policy to person entitled thereto." Cal. Ins. Code § 10111.

**SECOND CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND**
**FAIR DEALING OF AN INSURANCE POLICY**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

63.    Plaintiff refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

64.    In every insurance policy there exists an implied duty of good faith and fair dealing that the insurance company will not do anything to injure the right of the insured to receive the full benefit of the policy.

65.    New York Life breached the duty of good faith and fair dealing it owed to the policy holders identified in the Class, including its policy with Mr. Linhart, which Plaintiff has the right to enforce.

66.   New York Life breached its duty of good faith and fair dealing and engaged in bad faith by, inter alia, the following unreasonable acts and/or omissions:

  a. Failing to timely and meaningfully invite the policyholders identified in the Class—including Mr. Linhart—to designate a third party to receive termination notices for non-payment of a premium as required by the Designation Notice Requirement of the Statutes by not providing policyholders with a copy of a designation form that provides the opportunity for the policy owner to submit the name, address, and telephone number of at least one person who is to receive notice of lapse or termination of the policy for nonpayment of premium, drafting the notices in way that was difficult to comprehend and act on and burying the notices within other materials;

  b. Failing to timely invite the policyholders identified in the Class— including Mr. Linhart—of their annual right to change their third party designation as required by the Annual Notice Requirement of the Statutes;

  c. Failing to abide by the Statutes at all times after the Effective Date;

  d. Failing to abide by the Statutes and resolve life insurance claims after becoming aware of the precedential rulings in California state and federal courts; and

  e. Improperly terminating or lapsing the respective policies and unreasonably refusing, without proper cause, to pay benefits to the Class members—including Plaintiff—

despite, on information and belief, having knowledge that California courts had interpreted the Statutes as covering polices like those within the Class.

67.    As a direct and proximate result of New York Life's breaches of its duty of good faith and fair dealing, Plaintiff and the Class have sustained direct damages, as well as other foreseeable and incidental damages, in an amount to be determined according to proof at the time of trial, plus interest.

68.    As a further direct and proximate result of the claim denial and unreasonable and bad faith conduct of New York Life, Plaintiff was compelled to retain legal counsel on behalf of herself and the Class to institute litigation to obtain the full and fair benefit of the insurance of which they are beneficiaries, making New York Life liable for those attorney fees and litigation costs reasonably incurred in order to obtain the full benefit.

69.    In addition, New York Life's conduct described herein was intended to cause injury and/or was despicable conduct carried out with a willful and conscious disregard of the rights of the Class, including Plaintiff to delay and deny benefits.

70.    New York Life's conduct constitutes malice, oppression or fraud and was unreasonable under California Civil Code section 3294 and California Insurance Code Unfair Practices Act section 790.03 because New York Life's continued unwillingness to fully satisfy its contractual and statutory obligations was done and is being done with full knowledge that the courts, including the California Supreme court, based on, *inter alia,* the language and purpose of the Statutes, the legislative history and/or long-standing Renewal Principle, have ruled that the Statutes cover all policies in force as of the Effective Date.

71.    As *McHugh* specifically held: "…the Legislature enacted the [the Statutes] not only to provide protections to people in the future, but also to

ensure that existing policy owners don't lose the life insurance coverage that they may have spent years paying for and on which their loved ones depend".

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and each Class member, prays for relief and judgment as follows:

A.   For certification of this matter as a Class Action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as a Class Representative and her counsel of record as Class Counsel;

B.   For economic and foreseeable consequential damages, attorneys' fees and costs against Defendant New York Life for its breach of contract and bad-faith;

C.   For punitive damages against Defendant New York Life due to its ongoing bad-faith;

D.   For an award of attorneys' fees and costs of suit pursuant to, *inter alia,* the Public Benefit Doctrine, California Code of Civil Procedure Section 1021.5 on the basis that private enforcement of these rights is necessary, and the interests Plaintiff seeks to protect significantly benefit the general public;

D.   Prejudgment pursuant to §3289(b) of the California Insurance Code at a rate of 10% as well as applicable post judgment interest; and

E.   All other and further relief, including punitive damages, as this Honorable court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff, on behalf of the Class, hereby demands a jury trial on all causes of action that can be heard by a jury

Respectfully submitted,

September 28, 2021      HAGENS BERMAN SOBOL SHAPIRO LLP

BY: _/s/ Christopher Pitoun_
Christopher Pitoun (SBN 290235)
christopherp@hbsslaw.com
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

Steve W. Berman
(to request admission _pro hac vice_)
_steve@hbsslaw.com_
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Joseph M. Vanek
(to request admission _Pro Hac Vice_)
_jvanek@sperling-law.com_
Mitchell H. Macknin
(to request admission _Pro Hac Vice_)
_mhmacknin@sperling-law.com_
John P. Bjork
(to request admission _Pro Hac Vice_)
_jbjork@sperling-law.com_
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3500
Chicago, IL 60603
Telephone: (312) 641-3200

1

2
David S. Klevatt
(to request admission *Pro Hac Vice*)
3
dklevatt@insurancelawyer.com
4
Timothy M. Howe
(to request admission *Pro Hac Vice*)
5
tim@chicagolaw.biz
6
KLEVATT & ASSOCIATES, LLC
77 West Wacker Drive, Suite 4500
7
Chicago, IL 60601
8
Telephone: (312) 782-9090

9
Tatiana Kadetskaya, Esq.
10
(to request admission *Pro Hac Vice*)
Kadetskaya Law Firm LLC
11
630 Freedom Business Center Drive
12
Third Floor, PMB 168
King of Prussia, PA 19406
13
Telephone: (856) 524-1157

14

15
*Attorneys for BARBARA LINHART, on*
*behalf of herself and all others similarly*
16
*situated*

17

18

19

20

21

22

23

24

25

26

27

28