Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Abigail D. Pershing (SBN 346467)
abigailp@hbsslaw.com
HAGENS BERMAN SOBOL
SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

Joseph M. Vanek (*pro hac vice*)
jvanek@sperling-law.com
Mitchell H. Macknin (*pro hac vice*)
mhmacknin@sperling-law.com
Daniel A. Schmikler (*pro hac vice*)
dschmikler@sperling-law.com
John P. Bjork (*pro hac vice*)
jbjork@sperling-law.com
Martin V. Sinclair (*pro hac vice*)
mvs@sperling-law.com
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200

*Attorneys for Plaintiff*
(Additional counsel captioned below)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| BARBARA LINHART, on behalf of herself and all others similarly situated.<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, and DOES 1 TO 50, inclusive,<br><br>Defendants. | Case No. 5:21-cv-01640-JWH-KK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**<br><br>**REDACTED PUBLIC VERSION**<br><br>Hearing Date: April 19, 2024<br>Time: 9:00 a.m.<br>Courtroom: 9D<br>Judge: Hon. John W. Holcomb<br>Mag. Judge: Hon. Kenly Kiya Kato |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................6

II.    RELEVANT FACTUAL BACKGROUND.........................................8

    A.     NY Life was required to provide the Designation Form
        for policies in force on January 1, 2013. ....................................8

    B.     NY Life failed to provide the Designation Form for
        policies in force on January 1, 2013........................................10

    C.     NY Life disregarded the Statutes in its treatment of Mr.
        Linhart....................................................................................11

    D.     NY Life likewise disregarded the Statutes to the
        detriment of the members of the putative class.....................12

III.   ARGUMENT .......................................................................................13

    A.     The class meets the prerequisites of Rule 23(a). ....................14

        1.     Numerosity is undisputed..............................................14

        2.     The claims of Mrs. Linhart and other members of
            the class share common questions of fact and law. ......15

        3.     Mrs. Linhart's claims are typical of those of the
            class. .............................................................................18

        4.     Mrs. Linhart is an adequate representative. .................20

    B.     The Class should be certified pursuant to Rule 23(b)(3)
        because common issues of fact and law predominate,
        and a class action is the superior method of adjudication.....21

        1.     The material legal and factual issues common to
            the class predominate over any individual
            inquiries. ......................................................................22

        2.     There are no issues of policyowner intent or
            "causation" that predominate over the common
            issues. ...........................................................................24

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    a. Beneficiaries of policies terminated in writing by the policyowner are definitionally excluded from the class. ...............................24

    b. No individualized proof of causation is required. ...............................25

   3. Class adjudication of the claims is plainly superior to individual lawsuits. ...............................27

IV. CONCLUSION ...............................29

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Hawaii State Dept. of Educ.,*
   30 F.4th 828 (9th Cir. 2022) ................................................................14, 15

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)...............................................................................23

*Bentley v. United of Omaha Life Ins. Co.,*
   2018 WL 3357458 (C.D. Cal. May 1, 2018) .................................. *passim*

*Beverage v. Canton Placer Min. Co.,*
   43 Cal. 2d 769 (1955) ............................................................................24

*Briseno v. ConAgra Foods, Inc.,*
   844 F.3d 1121 (9th Cir. 2017) ...............................................................15

*Edwards v. First Am. Corp.,*
   798 F.3d 1172 (9th Cir. 2015) ...............................................................23

*Farley v. Lincoln Benefit Life Co.,*
   2023 WL 3007413 (E.D. Cal. Apr. 18, 2023) ................................. *passim*

*In re Hyundai & Kia Fuel Econ. Litig.,*
   926 F.3d 539 (9th Cir. 2019)..................................................................23

*Johnson v. Harford Cas. Ins. Co.,*
   2017 WL 2224828 (N.D. Cal. May 22, 2017)..................... 19, 25, 28, 29

*Kotlar v. Hartford Fire Ins. Co.,*
   83 Cal. App. 4th 1116 (2000) ................................................................11

*Leyva v. Medline Indus., Inc.,*
   716 F.3d 510 (9th Cir. 2013)..................................................................18

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998) ...............................................................21

*Mackey v. Bristol W. Ins. Servs. of Cal., Inc.,*
   105 Cal. App. 4th 1247 (2003) ..............................................................11

*McHugh v. Protective Life Ins. Co.*,
    12 Cal. 5th 213 (2021) ...................................................................10, 12, 17

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal.4th 811 (Cal. 2011).......................................................................23

*Paez v. Mut. Indem. Acc., Health & Life Ins. Co. of Calif.*,
    116 Cal. App. 654 (Cal. Ct. App. 1931) ...................................................24

*Rannis v. Recchia*,
    380 Fed. Appx. 646 (9th Cir. 2010).........................................................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)...................................................................................14

*Siino v. Foresters Life Ins. & Annuity Co.*,
    2023 WL 4410948 (N.D. Cal. July 7, 2023)..............................10, 11, 26

*Small v. Allianz Life Ins. Co. of N.A.*,
    2023 WL 4042593 (C.D. Cal. May 23, 2023) ............................... *passim*

*Turnette v. Fulton, Friedman & Gullace, LLP*,
    2013 WL 12222361 (S.D. Cal. June 27, 2013).........................................29

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)...................................................................................23

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ....................................................16, 18, 19

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................... 16, 17, 18, 19

*Walker v. Life Ins. Co. of the Southwest*,
    953 F.3d 624 (9th Cir. 2020).....................................................................23

*Wilson v. 21st Century Ins. Co.*,
    42 Cal. 4th 713 (Cal. 2007).......................................................................23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...........................................................20, 28

*Zinser v. Accufix Resch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...................................................................29

**Statutes**

Cal. Civ. Code § 3289 ...................................................................................17

Cal. Civ. Code § 3532 ...................................................................................23

Cal. Ins. Code § 10111 .............................................................................17, 25

Cal. Ins. Code § 10113.71 ...................................................................... *passim*

Cal. Ins. Code § 10113.72 ...................................................................... *passim*

Cal. Ins. Code § 10508(c)(7)..........................................................................25

Cal. Ins. Code § 10508.5................................................................................25

**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and
    Procedure* § 1778 (3d ed. 1998) ...........................................................22

7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice
    and Procedure*, § 1779 (3d ed. 2005) ...................................................27

Fed. R. Civ. P. 23 ................................................................................ *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiff Barbara Linhart and the putative class are beneficiaries to life insurance policies that Defendant New York Life Insurance and Annuity Corporation ("NY Life") breached by failing to pay the death benefits provided for in the policies. NY Life asserts it had no obligation to pay because the policies supposedly had lapsed for nonpayment of premium. But the California Insurance Code requires insurers to meet certain requirements before it can terminate a policy. One is that the insurer shall first provide a form by which the policyowner can elect to designate another person to receive notices of a pending payment lapse. The statute states that a nonpayment lapse "shall not be effective" if the insurer failed to first provide this required designation form. By failing to provide the required designation form, the class policies remained in effect and were later breached when the insureds died and NY Life failed to pay beneficiaries the death benefits due under the policies. As a result, Plaintiff seeks to certify a class of beneficiaries wrongfully denied those benefits.

The requirement to provide a designation form arose in 2012, when §§ 10113.71 and 10113.72 of the California Insurance Code (the "Statutes") were enacted. The Statutes protect life insurance policyowners and their beneficiaries from lapses in their coverage for missed premium payments, which is of heightened concern as policyowners age. Effective January 1, 2013, the Statutes required insurers to, among other things, provide a form by which policyowners can elect to designate another person by name, address, and telephone number to receive notice of a pending payment lapse ("Designation Form"). If this standalone form is not provided, then policy lapses or terminations for nonpayment of premium "shall not be effective." This anti-termination rule contains no conditions to its applicability once it is shown that the form was not provided. Cal. Ins. Code § 10113.71(b)(1).

The Statutes apply to all policies in force as of January 1, 2013, but NY Life did not provide the Designation Form to the owners of all such policies. Even though that failure meant that such policies could not be terminated for nonpayment per the

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

statutory anti-termination rule, NY Life still purported to terminate the policies when premiums were missed. Worse, NY Life used its feigned policy terminations as the reason not to pay death benefits to beneficiaries when the insureds died, in breach of the policies.

Plaintiff, Barbara Linhart, ("Mrs. Linhart") was one of these beneficiaries. Her late husband, James Linhart ("Mr. Linhart"), maintained his life insurance policy for nearly 14 years only to have NY Life purportedly terminate it for nonpayment *four days* before he died in 2021.

Plaintiff moves to certify a class of beneficiaries who made a claim, or would have been eligible to make a claim, for death benefits on life insurance policies that NY Life issued or delivered in California that were in force on or after January 1, 2013, and that NY Life purported to lapse or terminate for nonpayment of premium without first providing the Designation Form.

As set forth below, the requirements of Federal Rules of Civil Procedure 23(a) are plainly met. Numerosity is undisputed, as there are hundreds of beneficiaries all with identical claims including Plaintiff. *See infra* § III.A.1. There are both common questions of law and fact, such as whether NY Life ineffectively terminated the policies and then failed to pay beneficiaries the death benefits, and whether the class was harmed by that failure to pay. *See infra* § III.A.2. Having been denied the benefit of her late husband's policies, Plaintiff's claims are typical of the absent class members. *See infra* § III.A.3. She is sufficiently committed to this litigation and will continue to adequately represent the class. *See infra* § III.A.4.

Class certification is also warranted under Rule 23(b)(3), as common questions predominate and class treatment offers a superior method of resolution. *See infra* § III.B. Common evidence will prove that NY Life adopted a blanket practice to ineffectively lapse for non-payment of premium all policies in force as of January 1, 2013, even where it had not provided the Designation Form. Plaintiff also relies on common evidence to prove that NY Life's refusal to pay death benefits to the

beneficiaries of such policies for which the Designation Form was not provided constitutes a breach of NY Life's contractual obligations on a class-wide basis. *See infra* § III.B.1. Given Plaintiff's reliance on a common course of conduct by NY Life causing damage to all class members, class adjudication of these claims is far superior to hundreds of individual lawsuits. Further, because most of the class members are not the policyowners, but beneficiaries, many of them are likely unaware they even have claims. *See infra* § III.B.2.

Indeed, essentially the same class has been certified twice in this District. *Small v. Allianz Life Ins. Co. of N.A.*, 2023 WL 4042593, at \*4 (C.D. Cal. May 23, 2023), *appeal docketed*, No. 23-80050 (9th Cir. June 6, 2023); *Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458, at \*12 (C.D. Cal. May 1, 2018). A similar class was likewise certified last year in a sister District. *Farley v. Lincoln Benefit Life Co.*, 2023 WL 3007413, at \*9 (E.D. Cal. Apr. 18, 2023), *appeal docketed*, No. 23-80037 (9th Cir. May 3, 2023). Class certification is again warranted here.

## II.   RELEVANT FACTUAL BACKGROUND[1]

### A.   NY Life was required to provide the Designation Form for policies in force on January 1, 2013.

As they reach the end of their lives, life insurance policyowners frequently face a myriad of issues and may be unable to ensure that their premiums are kept current. Policies whose premiums have been faithfully paid for decades can lapse due to an uninformed missed payment, precisely when the policy benefits may be needed most. To help ensure that coverage is not lost due to mere oversight or for ill-advised reasons, the California legislature added specific procedural safeguards to its insurance code.

As of January 1, 2013, insurers were required to provide the Designation Form. *See* Ex. 1 (Cal. Ins. Code §§ 10113.71-72). This specific statutory requirement was part

---

[1] All exhibits cited herein are attached to the January 19, 2024 Declaration of Christopher R. Pitoun filed concurrently with this memorandum, unless otherwise indicated, and are cited "Ex. __" followed by a short description.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

and parcel of the new statutory regimen requiring life insurers to provide policyowners notice of the right to designate another person to receive notice of pending lapse for nonpayment of premium. *Id.*, § 10113.72(a). "The Legislature enacted the sections … to ensure that existing policyowners don't lose the life insurance coverage that they may have spent years paying for and on which their loved ones depend." *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 246 (2021).

To give teeth to this crucial procedural safeguard, the legislature deliberately included an unconditional rule for insurers who fail to comply: any purported policy lapse or termination for nonpayment of premium "shall not be effective." *See* § 10113.71(b)(1) ("A notice of pending lapse and termination … shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 … and a known … other person having an interest in the individual life insurance policy…."); *see also* § 10113.72(c) ("No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer … gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a).").[2]

The statutory language of the anti-termination rule imposes no causation requirement. It does not say that a non-compliant insurer can nonetheless terminate a policy for nonpayment unless the failure to provide the Designation Form caused the payment lapse. Recognizing the Statutes contained no such requirement, in 2022, insurers sought to amend the Statutes to add one. The insurance industry's proposed § 10113.73 read: "No insurer shall be liable for failure to [provide the Designation Form]

---

[2] These anti-termination provisions likewise render unenforceable any policy provision that allows termination for nonpayment. *See Siino v. Foresters Life Ins. & Annuity Co.*, 2023 WL 4410948, at *6 (N.D. Cal. July 7, 2023).

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

unless an alleged policy lapse occurred as a result of that failure."[3] However, the proposed amendment "died" and never became part of the California Insurance Code.[4]

Had the legislature added that causation condition to the rule, the statutory protections would have been rendered illusory. Beneficiaries would have to show that that the insurer's failure to provide the Designation Form caused the policy lapse or that a deceased policyowner did not intend to terminate the policy by lapsing premium payments. This is all but impossible once the insured has died, to say nothing of identifying the person whom the deceased would have designated and what the designee would have done.

The unconditional nature of the rule is also consistent with California common law that an insurer's effort to terminate a policy requires "strict compliance with the terms of any statutory provisions applicable to cancellation." *Mackey v. Bristol W. Ins. Servs. of Cal., Inc.,* 105 Cal. App. 4th 1247, 1258 (2003). "If a cancellation is defective, the policy remains in effect even if the premiums are not paid." *Siino*, 2023 WL 4410948, at *7 (quoting *Kotlar v. Hartford Fire Ins. Co*., 83 Cal. App. 4th 1116, 1121 (2000)).

**B.    NY Life failed to provide the Designation Form for policies in force on January 1, 2013.**

When the Statutes went into effect on January 1, 2013, NY Life made a deliberate decision *not* to provide the Designation Form required by § 10113.72(a) to owners of hundreds of existing, in-force policies.[5] ████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████[6]

---

[3] Ex. 2 (SB-1320 (Proposed Amendment to the Statutes)).

[4] Ex. 3 (Bill Status of SB-1320 (Proposed Amendment to the Statutes)).

[5] Ex. 4 (Citera Dep.) at 84:17-85:19, 109:21-110:7.

[6] *Id.* at 88:25-92:22; Ex. 5 (Linhart-NYLIAC 006543).

PLTF'S MEM. OF POINTS AND AUTHORITIES ISO MOT. FOR CLASS CERT.

1  NY Life's failure to provide the Designation Form triggered the statutory anti-
2  termination rule, yet it still purported to terminate the policies when premiums were
3  missed. Worse, NY Life used its feigned terminations to avoid paying death benefits to
4  beneficiaries when the insureds later died, in breach of its contractual obligations under
5  the policies.[7]

6  NY Life used this ruse and disregarded its policy obligations even after the
7  California Supreme Court unanimously confirmed that these very policies were covered
8  by the Statutes (*i.e.*, those in force as of January 1, 2013). *McHugh*, 283 Cal. 5th at 221-
9  22. It has been over two and a half years since the California Supreme Court weighed
10  in, and NY Life has yet to pay the hundreds of beneficiaries their death benefits.

11  There was no excuse for NY Life's non-compliance, as the cost of sending the
12  Designation Form was "minimal." *McHugh*, 12 Cal. 5th at 233.[8] The only reason an
13  insurer would not send the Designation Form is that they "prevent inadvertent
14  defaults"—which represent a "windfall" to the insurer and is exactly what the Statutes
15  were designed to prevent. *McHugh*, 12 Cal. 5th at 233.

16  **C.**  **NY Life disregarded the Statutes in its treatment of Mr. Linhart.**

17  NY Life issued Policy No. 62970515 (the "Policy"), in the amount of $350,000,
18  to Mr. Linhart in August 2007.[9] Over the course of nearly 14 years, Mr. Linhart
19  maintained the Policy and enjoyed uninterrupted coverage.[10] He designated his wife,

20
21
22
23

24  [7] *See* Ex. 4 (Citera Dep.) at 151:9-152:10, 153:8-154:4.

25  [8] NYLIAC's Rule 30(b)(6) representative estimated the cost of sending notices,
26  which would include the Designation Form, to be about $2 per policyowner. Ex. 4 (Citera Dep.) at 104:12-105:4.

27  [9] Ex. 6 (Policy) at Linhart-NYLIAC 00477.

28  [10] Ex. 4 (Citera Dep.) at 173:21-24.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

1  Mrs. Linhart, as the sole beneficiary of the Policy, and never changed that designation.[11]

2  At no time did NY Life provide Mr. Linhart with the Designation Form.[12]

3        Notwithstanding its failure to provide Mr. Linhart with the Designation Form,

4  which triggered the statutory anti-termination rule, NY Life purported to lapse Mr.

5  Linhart's Policy for nonpayment of premium on August 3, 2021.[13] Mr. Linhart died just

6  four days later, on August 7, 2021.[14] His family promptly contacted NY Life and sought

7  to submit a claim for the proceeds of the Policy.[15]  Despite its non-compliance with the

8  Statutes, NY Life stated that the Policy had lapsed and any attempt to make a claim

9  would be futile, giving rise to this litigation.[16]

10  **D.      NY Life likewise disregarded the Statutes to the detriment of the members of the putative class.**

11        Mr. Linhart was not alone; NY Life applied a uniform company practice not to

12  provide the Designation Form on policies that were in force as of January 1, 2013 (the

13  effective date of the Statutes) and issued prior to approximately December 27, 2010.[17]

14  Since January 1, 2013, NY Life purportedly terminated many of these policies for

15  nonpayment of premium, the insured later died, and NY Life uniformly breached its

---

[11] *Id.* at 173:14-17.

[12] *Id.* at 174:4-7.

[13] *Id.* at 173:21-174:3. Although Mr. Linhart called NY Life in June 2021 to inquire about potentially surrendering his Policy, he never did so. *Id.* at 196:15-22. Indeed, surrender (or any other form of voluntary cancelation of the Policy) could only have been done in writing, not orally. *Id.* at 191:3-13, 192:10-20; Ex. 6 (Policy) §§ 5.3, 5.4 (Linhart-NYLIAC 00503).

[14] Ex. 4 (Citera Dep.) at 174:8-10.

[15] *See, e.g.,* Ex. 7 (Linhart-NYLIAC 0003604) at 2:9-4:22.

[16] Ex. 4 (Citera Dep.) at 174:11-14, 230:13-16.

[17] Ex. 8 (NY Life Responses to Second Set of Interrogatories) at 9; *see also* Ex. 4 (Citera Dep.) at 84:17-85:19, 109:21-110:7. Discovery is ongoing.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

contracts by refusing to pay beneficiaries the death benefits.[18] Accordingly, the putative

class would consist of:

> All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies issued or delivered in the State of California by NY Life that were in force on or after January 1, 2013 and were lapsed or were terminated by NY Life for the non-payment of premium after January 1, 2013, and as to which policies the designation forms described by Section 10113.72(a) of the California Insurance Code were not provided by NY Life prior to lapse or termination.[19]

Excluded from the class would be: (i) NY Life; (ii) any entity in which NY Life has a

controlling interest; (iii) NY Life's officers, directors, and employees; (iv) NY Life's

legal representatives, successors, and assigns; (v) governmental entities; and (vi) this

Court.

## III.  ARGUMENT

The putative class should be certified because it meets both the prerequisites set

forth in Rule 23(a) and the requirements of Rule 23(b) of the Federal Rules of Civil

Procedure. *See A.B. v. Hawaii State Dept. of Educ.*, 30 F.4th 828, 834 (9th Cir. 2022).

If these elements are met, certification is mandatory. *Shady Grove Orthopedic Assocs.,*

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 creates "a categorical rule

entitling a plaintiff whose suit meets the specified criteria to pursue [her] claim as a

class action.").

---

[18] Ex. 9 (Policy List); Ex. 8 (NY Life Responses to Second Set of Interrogatories) at 4-5; Ex. 4 (Citera Dep.) at 151:9-152:10, 153:8-154:4.

[19] As defined, the class does not include policies that were surrendered or otherwise terminated in writing by the policyowner in accordance with the policy terms. Such policy terminations were not for nonpayment of premium and therefore were not "ineffective" under the statutory anti-termination rule.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

**A.   The class meets the prerequisites of Rule 23(a).**

There are four prerequisites to certification of a class pursuant to Rule 23(a): (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy. Fed. R. Civ. P. 23(a); *A.B.*, 30 F.4th at 834.[20]

**1.   Numerosity is undisputed.**

A putative class is eligible for certification if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder need not be impossible"; it is enough if putative class members "would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (citation omitted). This hardship is generally presumed, and numerosity met, when a class includes at least 40 members. *Id.* at 651.

This threshold is well exceeded here. NY Life has produced in discovery a list of policies (the "Policy List"), which identifies ▮ policies that fit within the class definition.[21] NY Life has stipulated, for purposes of class certification, that "at least 40 policies on the Policy List lapsed for non-payment of premium," that all insureds of policies on the Policy List are deceased, and that members of the putative class are dispersed throughout California and the United States (which is to be expected, as they

---

[20] Some federal courts have also imposed a separate requirement that the class be "ascertainable" or "administratively feasible," *i.e.*, that the plaintiff must show that class members are easily identifiable. But the Ninth Circuit has rejected this "additional hurdle into the class certification process delineated in the enacted Rule." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-26 & n.4 (9th Cir. 2017) ("[Defendant] cites no other precedent to support the notion that our court has adopted an 'ascertainability' requirement. This is not surprising because we have not.").

[21] *See* Ex. 9 (Policy List). Of the ▮ policies listed by NY Life, ▮ were issued prior to December 27, 2010 – the approximate date when NY Life began providing the Designation Form to policyowners. *See* Ex. 8 (NY Life Responses to Second Set of Interrogatories) at 9. Pursuant to stipulation, NY Life has only produced a representative sample of policy files and exemplars. ECF No. 82 at 3-5. A final determination of class membership will require production of all policy files which will occur at the merits stage.

are not the purchasers of the California policies but their beneficiaries).[22] Accordingly, there is no dispute that the putative class meets the standard for numerosity.

### 2. The claims of Mrs. Linhart and other members of the class share common questions of fact and law.

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The requirement of 'commonality' means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A single common question is enough." *Bentley*, 2018 WL 3357458, at *8 (citing *Dukes*, 564 U.S. at 359).

Commonality is satisfied here because the core factual and legal issues are the same for all class members, including Mrs. Linhart. As articulated in *Farley v. Lincoln Benefit Life Co.*, "the overarching common question of law and fact raised in plaintiff's complaint is whether defendant violated California Insurance Code sections 10113.71 and 10113.72 by not providing the statutes' required procedural safeguards prior to lapsing and/or terminating life insurance policies." 2023 WL 3007413, at *4; *see also Small*, 2023 WL 4042593, at *2 ("Here, there is at least one class-wide common question—whether all class members were harmed by Allianz's alleged failure to comply with the Statutes. Therefore, commonality is satisfied.").

Factually, NY Life did not individually determine whether to pay the contractual death benefits due on policies it had purportedly terminated for nonpayment of premium without first providing the Designation Form. Rather, it adopted a blanket practice of

---

[22] *See* ECF No. 82, Joint Stipulation Resolving Discovery Dispute ¶¶ 5.j., 5.j.iii.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

deeming these policies as having lapsed and therefore not to pay claims.[23] Because NY Life failed to provide the Designation Form, the policy terminations were ineffective by law, and the policies remained in force when their insureds died. The proof of this business practice, which NY Life uniformly applied to every class member, will be shown via common, class-wide evidence. *See Small*, 2023 WL 4042593, at *4 ("The central issue, here, is whether Allianz had a corporate policy to terminate life insurance policies for non-payment of premiums without first complying with the Statutes. The answer 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (quoting *Dukes*, 564 U.S. at 350).

NY Life's bad faith likewise arises out of this common factual nexus. ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.[24] NY Life then chose to implement a uniform practice of failing to pay benefits on any pre-2013 policy it had "terminated" for nonpayment of premium, even though it had not provided the Designation Form. This practice of not paying benefits on improperly terminated policies continued unabated even after the California Supreme Court held in *McHugh* that the Statutes applied to those policies and even after NY Life knew it failed to comply with the statutory mandate.

The legal issues are likewise subject to common determination. Each class member's claim turns on whether NY Life was required to provide the Designation Form for policies issued prior to January 1, 2013 (*McHugh* answered in the affirmative), whether NY Life's policy terminations for nonpayment of premium were ineffective under the Statutes so that the policies remained in force at the time of the insureds' deaths, whether NY Life later breached the policies by failing to pay the death benefits, and whether the class was harmed as a result of that contract breach. These core

---

[23] Ex. 4 (Citera Dep.) at 153:15-154:4.

[24] *See* Ex. 5 (Linhart-NYLIAC 006543).

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

determinations are the same for all putative class members and will determine each claim. The bad faith determination will also be common, given that NY Life withheld benefits for each class member on the same basis.

Even the legal assessment of damages is uniform across the class, as their nature and calculation are set by California statute—including the face amount of the policy and the amount of interest accrued from the date of death of the insured. *See Bentley*, 2018 WL 3357458, at *10 ("The legal issues will be straightforward because damages are set by California statutes."); Cal. Ins. Code § 10111 ("In life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto"); Cal. Civ. Code § 3289 (prejudgment interest).[25] Mrs. Linhart's accounting expert, Kent Barrett, will rely exclusively on common evidence to provide a straightforward methodology to calculate class wide damages.[26]

When a single-actor defendant has applied a uniform practice to all putative class members, without individual determinations, and the legality of that policy is at issue, this is the quintessential "'common contention' that easily 'is capable of class-wide resolution.'" *Vaquero*, 824 F.3d at 1154 (quoting, and distinguishing, *Dukes*, 564 U.S. at 350). Hence, it is not surprising that courts in this District and a sister District have found commonality—and certified the class—for nearly identical claims and class definition against another insurer that likewise uniformly failed to meet the Statutes' requirements for policies issued prior to January 1, 2013, and later breached the policies by failing to pay the death benefits:

---

[25] In any event, individualized damages determinations—which are not necessary here—do not defeat predominance or class certification. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (abuse of discretion to find that individual questions predominated, and deny class certification, due to individualized damage determinations).

[26] Ex. 10 (Barrett Expert Report) §§ 3, 5, 6.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

> The Court concludes that Plaintiff has satisfied the commonality prong. Factually, Defendant has admitted that it does not give designees notice if the policy was purchased before 2013. … All the class members have suffered the same alleged injury: they are beneficiaries of policies that United canceled before providing statutorily required notice. And the legal issues can be resolved in "one stroke." *Dukes*, 544 U.S. at 350…. If the Court determines that United violated the Statutes by not providing adequate notice, then Plaintiff and class members will prevail. Otherwise, United will win. Because the facts are similar and the legal issues can be resolved by answering one question, commonality is met.

*Bentley*, 2018 WL 3357458, at *8; *see also Small*, 2023 WL 4042593, at *2 ("Here, there is at least one class-wide common question—whether all class members were harmed by Allianz's alleged failure to comply with the Statues."); *Farley*, 2023 WL 3007413, at *4 ("[T]he injury alleged here is the same among all putative class members: the deprivation of procedural safeguards guaranteed by the [S]tatutes. Commonality is satisfied here.").

*Bentley, Small*, and *Farley* were not outliers. Courts routinely find commonality when the claims are based on the application of a uniform policy to the putative class members. *See, e.g.*, *Vaquero*, 824 F.3d at 1154 (affirming finding of commonality because the putative class alleged defendant's uniform violation of California's minimum wage law); *Johnson v. Harford Cas. Ins. Co.*, 2017 WL 2224828, *13 (N.D. Cal. May 22, 2017) (finding commonality because the putative class alleged defendant insurer's uniform violation of California's Insurance Code (depreciation of insured property)). The commonality requirement is satisfied here.

### 3. Mrs. Linhart's claims are typical of those of the class.

The typicality requirement is met if "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Bentley*, 2018 WL

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

3357458, at *9 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-1176 (9th Cir. 2010)) (additional citation omitted).

Here, Mrs. Linhart's interests are aligned with those of the class. Specifically, because of its uniform, company-wide practice, NY Life did not provide the Designation Form to Mr. Linhart, just like it did not provide the Designation Form to any other owner of the policies at issue in this case. As a result, Mr. Linhart's policy was still in force when he died, just like every other policy at issue in this case remained in force when the insured died. NY Life breached Mr. Linhart's policy by failing to pay Mrs. Linhart the death benefit due and owing under the policy, just like it breached all of the other policies at issue in this case when it failed to pay to the beneficiaries the death benefits due and owing for the in-force policies. Only Mrs. Linhart's damages will differ from other class members' depending on the face value of the policy and the amount of interest (which varies only by date of death).[27]

The typicality requirement is plainly met. *See Small*, 2023 WL 4042593, at *2 ("Small's claims are reasonably co-extensive with those of the class because she alleged that Allianz committed the same misconduct against all class members—namely, Allianz failed to apply the Statutes to life insurance policies that were issued before 2013 and terminated in or after 2013."); *Farley*, 2023 WL 3007413, at *5-6 ("Here, the claims of all the putative class members, including plaintiff are the same, they were denied a procedural right in violation of the [S]tatutes."); *Bentley*, 2018 WL 3357458, at *9 ("Bentley and the class members suffered the same injury because they were subjected to the same blanket policy").[28]

---

[27] Ex. 10 (Barrett Expert Report) §§ 6.9-6.17.

[28] In both *Farley* and *Small*, the putative class comprised not only vested beneficiaries of policies whose insureds had died (the limited putative class here), but also still-living policyowners whose policies were purportedly terminated for nonpayment of premium even though the insurer failed to first provide certain notices, including the Designation Form. The vested beneficiaries sought the death benefits the insurers failed to

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

1

### 4.    Mrs. Linhart is an adequate representative.

2    The Court must determine that "the representative parties will fairly and

3  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). It is satisfied if

4  the plaintiff shows that her interests are not antagonistic to those of the class, and she is

5  able to prosecute the action vigorously via qualified and competent counsel. *Linney v.*

6  *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). For the same reasons that

7  Mrs. Linhart's claims are typical, she is an adequate representative: her claims are

8  identical to those of other class members and so are certainly not antagonistic to them.

9  *See Small*, 2023 WL 4042593, at *3 ("Small is an adequate representative because she

10  shares the same interests as the other putative class members in showing that Allianz

11  failed to comply with the Statutes."); *Bentley*, 2018 WL 3357458, at *10 ("Plaintiff

12  shares the same goal as the absent class members: to show that the Statutes apply to the

13  policies affecting the class members, and that [defendant] violated the Statutes by not

14  providing the policyholders' designees with appropriate notice before allowing policies

15  to lapse.").

16    By her knowledge of the case, extensive litigation efforts to date (including

17  responding to written discovery), and attested willingness to do what is necessary going

18  forward (including sitting for her deposition), Mrs. Linhart has demonstrated that she

19  will competently fulfill her obligations as a class representative.[29] *See also Bentley*,

20  2018 WL 3357458, at *10 ("Plaintiff has shown that she will prosecute this case because

21

22

23  pay (like the limited putative class here), while the living policyowners sought equitable

24  relief in the form of reinstatement of their policies. In *Farley*, the named plaintiff was a

25  living policyowner (not a beneficiary of a deceased insured, as here), and therefore her

equitable claims were not typical of the claims of the beneficiaries of deceased insureds,

26  who sought monetary relief for the failure to pay death benefits. As a result, the court

27  certified only the class of living policyowners and invited a beneficiary representative

to certify a beneficiary class like the putative class here. 2023 WL 3007413, at *9.

28  [29] Ex. 11, Declaration of Plaintiff Barbara Linhart ¶¶ 2-8.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

1  she has educated herself about her responsibilities as class representative and

2  participated in discovery—including appearing for a four-hour deposition.").

3        Finally, Mrs. Linhart's counsel is qualified and competent to represent the class.

4  They have many years' collective experience in class action litigation—including

5  extensive background in insurance coverage and complex commercial litigation—with

6  successful resolution of many class actions.[30] They also possess the human and financial

7  resources to effectively litigate this matter to conclusion. *Id.* Indeed, for a nearly

8  identical class, they were found to be "skilled and experienced class action litigators

9  [who] will adequately prosecute this action." *Bentley*, 2018 WL 3357458, at *10

10  (appointing as class counsel attorneys from Vanek, Vickers & Mansini (now with

11  Sperling & Slater LLC) and Hagens Berman Sobol & Shapiro LLP).

12        Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied and Mrs.

13  Linhart requests, pursuant to Rule 23(g), the Court appoint as class counsel her

14  attorneys, Joseph M. Vanek of Sperling & Slater LLC, Christopher R. Pitoun of Hagens

15  Berman Sobol Shapiro LLP, and David Klevatt of Klevatt & Associates, LLC. *See*

16  *Bentley*, 2018 WL 3357458, at *10 n.5 ("Because the Court concludes that Bentley's

17  counsel is adequate under Rule 23(a)(4), it also concludes that Bentley's counsel meets

18  Rule 23(g)'s requirements.").

19  **B.    The Class should be certified pursuant to Rule 23(b)(3) because common issues of fact and law predominate, and a class action is the superior method of adjudication.**

20

21        A putative class action must meet one of the qualifications of Rule 23(b). This

22  class qualifies pursuant to Rule 23(b)(3) because "the questions of law or fact common

23  to class members predominate over any questions affecting only individual members,

24

25

26        [30] *See* Ex. 12 (Attorney resume of Joseph M. Vanek of Sperling & Slater LLC); Ex.

27  13 (Firm and attorney resume of Christopher R. Pitoun of Hagens Berman Sobol Shapiro LLP); Ex. 14 (Attorney resume of David Klevatt of Klevatt & Associates,

28  LLC).

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

1   and … a class action is superior to other available methods for fairly and efficiently

2   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

3   **1.    The material legal and factual issues common to the class**
        **predominate over any individual inquiries.**

4

5   The "predominance" prong of Rule 23(b)(3) "tests whether proposed classes are

6   sufficiently cohesive to warrant adjudication by representation." *Edwards v. First Am.*

7   *Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting *Amchem Prod., Inc. v. Windsor*,

8   521 U.S. 591, 623 (1997)). "Common issues predominate over individual issues when

9   the common issues 'represent a significant aspect of the case and they can be resolved

10  for all members of the class in a single adjudication.'" *Id.* (quoting 7AA Charles Alan

11  Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 1998)).

12  "[E]ven if just one common question predominates, 'the action may be considered

13  proper under rule 23(b)(3) even though other important matters will have to be tried

14  separately.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019)

15  (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016)). Here, nearly

16  every material legal and factual issue is common.

17  The predominance assessment begins with the elements of the underlying cause

18  of action. *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020)

19  (quotations omitted). The elements of breach of contract are: "(1) the existence of the

20  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

21  breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*,

22  51 Cal.4th 811, 821 (Cal. 2011). The bad faith claim is based on the principle that

23  California law "implies in every contract, including insurance policies, a covenant of

24  good faith and fair dealing." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (Cal.

25  2007). An insurer is liable in tort for bad faith if it "unreasonably and in bad faith

26  withholds payment of the claim of its insured." *Id.* (quotation omitted).

27  The facts underlying both claims will be proven on a common basis. As noted

28

above, summary records (and testimony) from NY Life itself establish that: (i) it is-
sued life insurance policies to the policyowners prior to January 1, 2013; (ii) the poli-
cies were in force as of that date; (iii) it did not provide the Designation Form to the
policyowners; (iv) it purported to lapse or terminate the policies for nonpayment of
premium; (v) each of the insureds covered under the policyowners' life insurance pol-
icy  is deceased; (vi) each of the policies was in force at the time of the insured's
death; (vii) each class member is a beneficiary of those policies; (viii) NY Life failed
to pay the death benefits due and owing under the policies; (ix) plaintiff performed or
was excused from performing her contractual conditions to payment;[31] and (x) plain-
tiff's damages were caused by NY Life's failure to pay the death benefits.[32]

---

[31] Payment of premium is not a condition precedent to the policy being "in force."
Because NY Life failed to provide the Designation Notices, the policy remained in force
and could not lapse or be terminated for nonpayment of premium. *See* §§ 10113.71,
10113.72. Therefore, payment of premium is also not a condition of NY Life's contrac-
tual obligation to pay death benefits. Moreover, any requirement to pay premium after
NY Life wrongfully terminated the policy would be excused because any attempt by
putative class members to pay premiums would have been futile. NY Life has a uniform
policy of rejecting any premium payment after the policy lapses for nonpayment of
premium, regardless of whether NY Life failed to first provide the Designation Notices,
NY Life has therefore waived the right to insist on payments as a condition for coverage.
*See* Ex. 4 (Citera Dep.) at 152:11-154:4; 173:25-174:7. California courts have long held
that it would be "absurd" to require a claimant to perform conditions precedent to a
policy that the insurer says is terminated. *Paez v. Mut. Indem. Acc., Health & Life Ins.
Co. of Calif.*, 116 Cal. App. 654, 659 (Cal. Ct. App. 1931); *see also* Cal. Civ. Code §
3532; *see also Beverage v. Canton Placer Min. Co.*, 43 Cal. 2d 769, 777 (1955) ("[A]
formal tender of performance is excused by the refusal in advance of the party to accept
the performance owing.").

[32] *See, e.g.*, Ex. 9 (Policy List); Ex. 4 (Citera Dep.) at 117:4-8, (Policy List generated
using NY Life's database (its "admin systems")), 120:24-123:9 (describing process for
retrieving summary data from NY Life admin systems), 151:9-154:4 (NY Life has not
paid benefits for any policy on Policy List due to blanket practice to treat them as
lapsed), 158:8-159:6 (NY Life implemented blanket practices regarding compliance
with Statutes, not policy-by-policy determination), 159:7-160:22 (NY Life lapsed poli-
cies based on automated process, not case-by-case determination).

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

Courts routinely hold that common questions predominate when breach of contract claims are based on the defendant's uniform conduct towards all class members—including claims identical to those at issue here. *See Small*, 2023 WL 4042593, at *4 ("Class claims that depend on proof of uniform corporate policies have long been held to satisfy the predominance requirement."); *Bentley*, 2018 WL 3357458, at *11 ("The Court finds that common issues predominate here [because] … United has a uniform practice of not providing notice to policyholders and their designees if they purchased their policies before [January 1, 2013]."). *See also Johnson*, 2017 WL 2224828, at *15 (common issues predominated in class claims for breach of insurance contracts because "[plaintiff's] claims revolve around [defendant's] alleged failure to pay the amount it owes under its insurance contracts to the insured…. These questions, which pertain to every class member, can be resolved through the interpretation of one statute, Section 2051, and the same factual determinations"); *Durant*, 2017 WL 950588, at *5 (common issues predominated because defendant had applied a uniform standard to deny insurance coverage and determination of its propriety "will resolve most of the elements of the causes of action").

2. **There are no issues of policyowner intent or "causation" that predominate over the common issues.**

a. **Beneficiaries of policies terminated in writing by the policyowner are definitionally excluded from the class.**

The class is definitionally limited to policies terminated for nonpayment of premium (*i.e.*, not including those surrendered or otherwise terminated in accordance with other policy terms), because—by definition in the Statutes—the statutory anti-termination provisions render ineffective only terminations for nonpayment of premium. *See Farley*, 2023 WL 3007413, at *5 ("As to those who affirmatively chose to terminate their coverage, the court finds those policyholders are already excluded from the putative class."). This presents no logistical or practical issues, as NY Life has already conceded that it can easily identify which policies it lapsed for nonpayment of

- 24 -

premium (as opposed to surrender or other termination)—indeed, the Policy List it provided includes only those that were lapsed for nonpayment of premium.[33] Insurance policies are written contracts that cannot, by their terms, be modified orally.

### b.    No individualized proof of causation is required.

Nor are there any individual issues regarding the "causation" element of Mrs. Linhart's contract claim that defeat predominance and/or typicality. The causal connection between NY Life's contract breach and damages is straightforward and uniform across the class. The relevant breach in this case is NY Life's failure to meet its contractual obligation to pay the death benefit due and owing upon the death of the insured. Other cases concerning the Statutes have pled different breaches of contract that are not at issue here.  Causation is shown if NY Life's failure to pay death benefit claims resulted in damages to Mrs. Linhart and the remainder of the class (*i.e.*, the death benefits each should have received, plus interest accrued from the date of the insured's death). *Siino*, 340 F.R.D. at 166 (citing Cal. Ins. Code § 10111). That causation linkage is clear and does not require individualized proof.

This result is driven by the Statues' unconditional anti-termination remedy. That is, if the Designation Form is not provided, the policy does not lapse for nonpayment of premiums. As a result, NY Life's blanket purported policy lapses were ineffective, as if they never happened, so the policies remained in force and were later breached when NY Life did not pay the death benefit. Policies that remain in force due to the anti-termination rule are no less enforceable for the failure to pay benefits than any other in-force policy, and they are subject to no different causation standards. Indeed, even if an insurer violated the Statutes by not providing the notices, it could nonetheless avoid breaching its contractual obligation by choosing to pay death benefits.

---

[33] Ex. 4 (Citera Dep.) at 52:17-53:8, 191:14-20. In fact, the California Insurance Code requires insurers like NY Life to maintain such records, which must include a "statement of reasons" for each termination and "be readily available." *See* Cal. Ins. Code §§ 10508(c)(7), 10508.5.

As the Ninth Circuit stated in *Thomas*, "State Farm argues that Thomas failed to establish causation because she did not offer any evidence that the policies would not have lapsed even had Sate Farm [provided the Designation Form]. But this evidence is not necessary for Thomas to prevail. … State Farm failed to comply with sections 10113.71 and 10113.72, which prevented the policies from lapsing. *Therefore, State Farm breached its contractual obligations by failing to pay benefits to Thomas under the policies after Flynn's death.*" 2021 WL 4596286, at *1 (emphasis added); *see also Farley*, 2023 WL 3007413, at *4 ("Questions of causation, *i.e.*, whether the policy would have lapsed even if defendant had complied with the statutes, are not relevant to whether there was a violation of a procedural right.") (citing *Thomas*); *Bentley*, 2018 WL 3357458 at *2 ("[I]f an insurer fails to give a policyholder an opportunity to name a designee, the notice [of lapse or termination] to the policyholder is not effective.").[34]

Nor is this result illogical or unfair. The California legislature determined that the statutory procedural safeguards would be severely undermined, to the point of being rendered illusory, had beneficiaries been precluded from enforcing those provisions unless they could somehow prove that the failure to provide the Designation Form caused the deceased policyowner's payment lapse. Setting aside the absurdity of requiring a deceased policyowner to testify as to their intention, any trade-off (such as allowing recovery even if a policyowner might have intended to terminate by payment lapse) was the balance struck by the legislature. And all that insurers like NY Life had to do in order to avoid the antitermination rule was to simply provide the Designation Form—

---

[34] In truth, insurers like NY Life know full well that the anti-termination provisions as written include no causation element. As noted above, in 2022, insurers unsuccessfully sought to amend the Statutes specifically to add such a requirement. *See* Exs. 2-3.

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

### 3.      Class adjudication of the claims is plainly superior to individual lawsuits.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1779 at 174 (3d ed. 2005)). "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair. … Underlying [the] test[] is a concern for judicial economy." *Wolin*, 617 F.3d at 1175-76. The test is met here.

First, as discussed above, the questions of law and fact are not only predominantly common but are essentially exclusively common. Once the common determinations are made (regarding NY Life's blanket practice of not providing the Designation Form and failing to pay benefits for such policies), all that remains are the ministerial determinations such as the face value of each policy and, for the calculation of interest due, the date of the policyowner's death. Resolving these dispositive issues in a single proceeding is far more efficient than in hundreds of individual actions, in which the same conduct of NY Life would be adjudicated over and over, resulting in a massive waste of resources. *See id.* at 1176 ("It is far more efficient to litigate this—the [common] basis for their claim—on a classwide basis rather than in thousands of individual and overlapping lawsuits."); *Small*, 2023 WL 4042593, at *4 (finding class adjudication superior because, *inter alia*, it "will reduce litigation costs, and will promote judicial efficiency by resolving the claims in one stroke").

Second, a single class adjudication in a single forum "will allow this Court to resolve the issues raised in a consistent manner, and avoid inconsistent judgments from courts across the country." *Bentley*, 2018 WL 3357458, at *11; *see also Johnson*, 2017 WL 2224828, at *17 ("A situation in which numerous lawsuits surrounding the same question of what items are 'normally' depreciated, in which each court must make a determination, would produce confusion and uneven and inequitable results.").

Third, absent class certification, few putative class members would likely bring claims. The putative class members are not the insured policyowners, but the beneficiaries, and thus are likely unaware of NY Life's failure to provide the Designation Form to the policyowner, much less the statutory mandates. Their likely ignorance weighs strongly in favor of the superiority of class certification. *See Small*, 2023 WL 4042593, at *4 ("[C]lass adjudication, here, is superior to individual claim adjudication because it will provide notice to class members who, otherwise, would not know that they have a claim…."); *Turnette v. Fulton, Friedman & Gullace, LLP*, 2013 WL 12222361, *5 (S.D. Cal. June 27, 2013) ("[B]ecause individuals are most likely unaware of their rights under the [statute], the likelihood of individual claims is remote and class action is superior.").

Fourth, many class members have claims that amount to just a few thousand dollars, which would not justify the substantial legal fees and costs of litigating against a formidable defendant insurer like NY Life.[35] *See Zinser v. Accufix Resch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) ("We recognize that a party with a claim of $50,000 might10150 have a difficult time alone pursuing a complex … case."); *Johnson*, 2017 WL 2224828, at *16 ("The *Zinser* court acknowledged that if only $50,000 in damages was sought, that amount would support certification."). Other class members have co-beneficiaries with whom they must share the policy's face value.

Whether because of the value of the policies, daunting challenge of litigating against a well-heeled insurer, or lack of knowledge of the claims, putative class members have brought few individual actions to enforce their rights. This further demonstrates that class certification is a superior method of adjudicating these claims. *See Johnson*, 2017 WL 2224828, at *17.

---

[35] The Policy List includes nearly ▮ policies with face values of ▮ or less. Ex. 9 (Policy List). Some policies have face values as low as ▮ *Id.*

1

## IV.   CONCLUSION

2

For the foregoing reasons, Mrs. Linhart respectfully requests that the Court enter

3

an order certifying her proposed class, appointing her as class representative, and

4

appointing as class counsel Joseph M. Vanek of Sperling & Slater LLC, Christopher R.

5

Pitoun of Hagens Berman Sobol Shapiro LLP, and David Klevatt of Klevatt &

6

Associates, LLC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTF'S MEM. OF POINTS AND AUTHORITES ISO MOT. FOR CLASS CERT.

1   Dated:  January 19, 2024      Respectfully submitted,

2

3                       HAGENS BERMAN SOBOL SHAPIRO LLP

4                       By: /s/   *Christopher R. Pitoun*

5                           Christopher R. Pitoun (SBN 290235)
                       christopherp@hbsslaw.com

6                       Abigail D. Pershing (SBN 346467)
                       abigailp@hbsslaw.com

7                       301 North Lake Avenue, Suite 920

8                       Pasadena, CA 91101

9                       Telephone: (213) 330-7150

10                      David S. Klevatt (*pro hac vice*)

11                     dklevatt@insurancelawyer.com
                     KLEVATT & ASSOCIATES, LLC

12                     77 West Wacker Drive, Suite 4500

13                     Chicago, IL 60601-1604
                     Telephone: (312) 782-9090

14

15                     Joseph M. Vanek (*pro hac vice*)
                     jvanek@sperling-law.com

16                     Mitchell H. Macknin (*pro hac vice*)
                     mhmacknin@sperling-law.com

17                     Daniel A. Schmikler (*pro hac vice*)

18                     dschmikler@sperling-law.com

19                     John P. Bjork (*pro hac vice*)
                     jbjork@sperling-law.com

20                     Martin V. Sinclair (*pro hac vice*)

21                     mvs@sperling-law.com
                     SPERLING & SLATER, LLC

22                     55 W. Monroe Street, Suite 3200

23                     Chicago, IL 60603
                     Telephone: (312) 641-3200

24

25                     *Attorneys for Plaintiff Barbara Linhart*

26                     *and Proposed Class*

27

28