Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Abigail D. Pershing (SBN 346467)
abigailp@hbsslaw.com
HAGENS BERMAN SOBOL
SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

Joseph M. Vanek (*pro hac vice*)
jvanek@sperling-law.com
Mitchell H. Macknin (*pro hac vice*)
mhmacknin@sperling-law.com
Daniel A. Schmikler (*pro hac vice*)
dschmikler@sperling-law.com
John P. Bjork (*pro hac vice*)
jbjork@sperling-law.com
Martin V. Sinclair (*pro hac vice*)
mvs@sperling-law.com
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200

*Attorneys for Plaintiff*
(Additional counsel captioned below)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| BARBARA LINHART, on behalf of herself and all others similarly situated.<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, and DOES 1 TO 50, inclusive,<br><br>Defendants. | Case No.  5:21-cv-01640-CJC-(DTBx)<br><br>**PLAINTIFF'S OPPOSITION TO NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>**REDACTED PUBLIC VERSION**<br><br>Hearing Date: June 7, 2024<br>Time: 9:00 a.m.<br>Courtroom: 9B<br>Judge: Hon. Cormac J. Carney<br>Mag. Judge: Hon. David T. Bristow |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    RELEVANT BACKGROUND ............................................................ 3

    A.     California's procedural safeguards (Designation Forms and
        Annual Notices) protect policyowners like Mr. Linhart. ...................... 3

    B.     NYLIAC failed to comply with the Statutes in its treatment
        of Mr. Linhart. .......................................................................... 6

    C.     There remains a genuine dispute whether Mr. Linhart
        intended for his life insurance policy to lapse. .............................. 7

III.   LEGAL STANDARD ......................................................................... 9

    A.     Summary Judgment.................................................................... 9

    B.     Statutory Interpretation ............................................................. 9

IV.    ARGUMENT ................................................................................. 10

    A.     Mr. Linhart's policy remained in force at the time of his
        death. .................................................................................... 10

        1.     Mr. Linhart did not surrender his policy...................................... 10

        2.     Mr. Linhart's policy did not lapse. .............................................. 10

            a.     California law required NYLIAC to provide
            Designation Forms and Annual Notices to all its
            policyowners, including those whose policies
            were already in force on January 1, 2013 ........................ 11

            b.     NYLIAC did not provide the Designation Form
            or Annual Notices to Mr. Linhart. ..................................... 13

            c.     NYLIAC's failure to provide the Designation
            Forms and Annual Notices precluded Mr.
            Linhart's policy from lapsing. ........................................... 14

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

d.   Mr. Linhart's circumstances illustrate the reasons underlying the policy choice made by the California legislature. ................................. 18

B.   Because Mr. Linhart's policy was in force at the time of his death, NYLIAC breached its contractual obligation to pay benefits. ................................................................. 19

C.   NYLIAC's breach caused Plaintiff's damages. ..................................... 19

D.   NYLIAC is not entitled to summary judgment on Plaintiff's bad-faith claim. ...................................................... 22

E.   NYLIAC is not entitled to summary judgment on punitive damages. .................................................................. 24

V.   CONCLUSION ...................................................................... 25

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amadeo v. Principal Mut. Life Ins. Co.*,
290 F.3d 1152 (9th Cir. 2002) ........................................................................ 24, 25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................. 9

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) .................................................................................. 9

*Bentley v. United of Omaha Life Ins. Co.*,
2017 WL 10518099 (C.D. Cal. Aug. 8, 2017) ..................................................... 24

*Bentley v. United of Omaha Life Ins. Co.*,
2018 WL 3357458 (C.D. Cal. May 1, 2018) .................................................. 12, 17

*Bentley v. United of Omaha Life Ins. Co.*,
371 F. Supp. 3d 723 (C.D. Cal. 2019) ...................................................... 11, 17, 18

*Board of Com'rs of Custer Cnty. v. Anderson*,
68 F. 341 (9th Cir. 1895) ......................................................................................... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................. 9

*Farley v. Lincoln Benefit Life Co.*,
2023 WL 3007413 (E.D. Cal. Apr. 18, 2023) ............................................... 15, 17

*Food Pro Int'l, Inc. v. Farmers Ins. Exch.*,
169 Cal. App. 4th 976 (2008) ............................................................................... 25

*Grundstrom v. Wilco Life Ins. Co.*,
2023 WL 5723674 (N.D. Cal. Sept. 5, 2023) ...................................................... 22

*Hallmark Specialty Ins. Co. v. Cont'l Ins. Co.*,
2022 WL 382037 (9th Cir. 2022) ........................................................................... 9

*Kransco v. Am. Empire Surplus Lines Ins. Co.*,
23 Cal. 4th 390 (2000) .......................................................................................... 22

- iii -

*McHugh v. Protective Life Ins. Co.*,
    12 Cal. 5th 213 (2021) ................................................................ *passim*

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ................................................................ 9

*Nieves v. United of Omaha Life Ins. Co.*,
    2023 WL 2705836 (S.D. Cal. Mar. 28, 2023) ...................................... 21

*Pitt v. Metro. Tower Life Ins. Co.*,
    2022 WL 17972167 (S.D. Cal. Dec. 1, 2022) ...................................... 21

*Poe v. Nw. Mut. Life Ins. Co.*,
    2023 WL 7273741 (C.D. Cal. Oct. 19, 2023) ................................. 12, 20

*Siino v. Foresters Life Ins. & Annuity Co.*,
    2023 WL 4410948 (N.D. Cal. July 7, 2023) ........................................ 12

*Small v. Allianz Life Ins. Co. of N. Am.*,
    2023 WL 4042593 (C.D. Cal. May 23, 2023) ................................. 17, 21

*Smith v. UNUM Life Ins. Co. of Am.*,
    2007 WL 9662662 (C.D. Cal. Mar. 21, 2007) ...................................... 24

*Steen v. Am. Nat'l Ins. Co.*,
    2023 WL 4004192 (C.D. Cal. Jun. 14, 2023) ............................. 17, 18, 21

*Thomas v. State Farm Ins. Co.*,
    2021 WL 4596286 (9th Cir. Oct. 6, 2021) ................................. 14, 18, 21

*Thomas v. State Farm Ins. Co.*,
    424 F. Supp. 3d 1018 (S.D. Cal. 2019) ............................. 11, 18, 20, 21

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
    88 F. Supp. 3d 1156 (S.D. Cal. 2015) ................................................ 23

*Wilson v. 21st Century Ins. Co.*,
    42 Cal. 4th 713 (2007) ............................................................... 22, 23

### STATUTES

Cal. Ins. Code § 10113.71 ................................................................. *passim*

Cal. Ins. Code § 10113.72 ................................................................. *passim*

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

N.Y. Ins. Law § 3211(a)(1) ........................................................................ 16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .................................................................................. 9

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The ultimate question presented by New York Life Insurance and Annuity Corporation's ("NYLIAC's") Motion for Summary Judgment is whether an insurer breaches an in-force life insurance policy when it fails to pay death benefits after an insured dies. NYLIAC posits that no breach has occurred in this case because the beneficiary plaintiff cannot meet an additional causation requirement (i.e., that nothing different would have happened had NYLIAC provided the required notices). NYLIAC is wrong for at least two reasons. First, the statutory language does not include this additional causation requirement. Second, even if the Court were to accept NYLIAC's invitation to rewrite the Statutes to include such a requirement, the question of what the decedent would have done is a quintessential question of fact.

Out of concern for life insurance policyowners, who frequently face physical and mental challenges as they reach the end of their lives, the California legislature enacted certain procedural safeguards—Sections 10113.71 and 10113.72 of the California Insurance Code (the "Statutes")—to protect them and their beneficiaries from lapses in their life insurance coverage when premiums may be missed. These procedural safeguards require insurers, among other obligations, to provide a form allowing them to designate a third party to receive notice of pending lapse of the policy for nonpayment of premium (§ 10113.72(b) ("Designation Form")), as well as annual notice of the right to change or supplement their third-party designation (§ 10113.72(b) ("Annual Notice")).

To secure compliance with these statutory requirements, the legislature included a bright-line rule for non-compliant insurers. If an insurer fails to provide policyowners the Designation Form or the Annual Notices, then it cannot terminate the policy for nonpayment of premium. Cal. Ins. Code §§ 10113.71(b)(1), 10113.72(c). This statutory "anti-termination rule" also relieves beneficiaries of the burden to prove that the payment lapse was unintentional or would have been avoided if the insurer had complied. The anti-termination rule is far from unfair. To avoid it, all an insurer need do is provide

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

the Designation Form and Annual Notices to policyowners, the cost of which is minimal.

The Statutes went into effect January 1, 2013, and required insurers to provide a Designation Form and Annual Notices for all in-force policies, regardless of when they were originally issued. *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 220-21 (2021). However, NYLIAC adopted a blanket practice not to provide either for policies issued prior to the January 1, 2013, effective date. Not only was this contrary to the plain language of the Statutes, and their clear intent, ███████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████ As a result, by reason of the self-effectuating anti-termination rule, those policies remained in force when NYLIAC purported to terminate them for nonpayment of premium. Nevertheless, NYLIAC has failed to pay death benefits to the beneficiaries of such policies—including Plaintiff Barbara Linhart.

NYLIAC's motion rests on a fundamental misstatement of this statutory scheme. NYLIAC asserts that the anti-termination rule includes an exception for policies whose termination an insurer could argue was "intentional." However, the statutory language includes no such carve-out and, as noted above, there were good policy reasons that the legislature chose not to create one. The Statutes are unconditional. They state that, if the Designation Form and Annual Notice are not provided, then any attempted termination or lapse of the policy for nonpayment of premium "shall not be effective." Cal. Ins. Code § 10113.71(b)(1).

NYLIAC knows full well that the anti-termination rule as written includes no causation requirement. Insurers in 2022 unsuccessfully sought to amend the Statutes specifically to add such a requirement. No such amendment would be necessary if the Statutes already included the carve out upon which NYLIAC relies. The rejection of insurers' effort to add that language reaffirms the legislative intent *not* to create one.

And even if the phantom carve-out were added to the actual statutory language,

there would be genuine disputes of material fact regarding whether Mr. Linhart's "decision" to let his policy lapse was intentional. The record is clear that Mr. Linhart was in poor mental and physical health in the last years of his life, which impacted his awareness and decision-making.  Again, however, the legislature did not intend for courts to engage in this ambiguous exercise, nor for insurers to benefit from the uncertainty they created by failing to follow the strict notice of cancellation requirements. The Court should reject NYLIAC's effort and enforce the statutory rule as written—which is unconditional.

NYLIAC similarly argues that Plaintiff must prove that, but for its failure to provide the Designation Form and Annual Notices, Mr. Linhart's policy would not have lapsed. But as noted, the statutory anti-termination language does not include a causation requirement, as evidenced by the insurers' unsuccessful effort to amend the statute to add one. Thus, NYLIAC's failure to comply meant Mr. Linhart's policy could not terminate for nonpayment and remained in force no less than any other in-force policy. A causation element arose only later, when NYLIAC breached the policy by refusing to pay the death benefits. And Plaintiff has clearly shown that her damages (the unpaid benefits) resulted from NYLIAC's failure to pay.

NYLIAC is not entitled to summary judgment, and its motion should be denied.

## II.     RELEVANT BACKGROUND

### A.    California's procedural safeguards (Designation Forms and Annual Notices) protect policyowners like Mr. Linhart.

Sections 10113.71 and 10113.72 of the California Insurance Code (the "Statutes") were enacted to help ensure that life insurance coverage is not lost due to mere oversight or for ill-advised reasons. *McHugh*, 12 Cal. 5th at 246 ("The Legislature enacted the sections … to ensure that existing policy owners don't lose the life insurance coverage that they may have spent years paying for and on which their loved ones depend.").

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Thus, effective January 1, 2013, the Statutes required insurers to provide certain procedural protections to policyowners. *See* Cal. Ins. Code §§ 10113.71(b)(1), 10113.71(a)-(c). Among other things, life insurers must provide: (i) a form to designate a third party to receive notice of pending lapse of the policy for non-payment of premium (§ 10113.72(a)); and (ii) annual notice of the right to change or supplement their third-party designation (§ 10113.72(b)).

If an insurer fails to provide either the Designation Form or Annual Notices, a bright line rule applies: The insurer cannot lapse or terminate the policy for non-payment of premium.

Sections 10113.72(a)-(c) specify the anti-termination rule as follows:

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant[1] has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) *No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless* the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse

---

[1] The word "applicant" is not defined by the Statutes and is synonymous with the owner of the policy—the policyowner. *See infra*, Part IV(A)(2)(a). In any event, it is undisputed that Mr. Linhart was the applicant for the policy at issue.

- 4 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

*Id.* (emphasis added).

Section 10113.71(b)(1) likewise makes clear that the anti-termination rule is self-effectuating (and neither .72(c) nor .71(b)(1) include any causation requirement). If the form or notice is not provided, policy terminations or lapses for nonpayment of premium "shall not be effective":

> (b)(1) *A notice of pending lapse and termination of a life insurance policy shall not be effective unless* mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

*Id.* (emphasis added).

That the language of the anti-termination rule does not require causation is evidenced by the fact that the insurers sought to later add a causation requirement to the statute. Senator Brian Jones, sponsored by the Association of California Life and Health Insurance Companies, introduced a bill in 2022 to add a new section to the statute, which would have provided that "[n]o insurer shall be liable for failure to meet any requirement of Section 10113.71 or 10113.72 unless an alleged policy lapse occurred as a result of that failure." JS-216, 217. But the bill died and never became part of the California Insurance Code. JS-218. Insurers had also argued that the Statutes did not apply to policies issued before (but in force as of) the statutory effective date (January 1, 2013), such as Mr. Linhart's. But the California Supreme Court unanimously rejected the argument, JS-136, holding that:

> [S]ections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued. This interpretation fits the provisions' language, legislative history,

- 5 -

and uniform notice scheme, and it protects policy owners — including elderly, hospitalized, or incapacitated ones who may be particularly vulnerable to missing a premium payment — from losing coverage, consistent with the provisions' purpose.

*McHugh*, 12 Cal. 5th at 220. NYLIAC was therefore required to comply with the Statutes regarding life insurance policies in force on or after January 1, 2013, including those policies of which Plaintiff and the members of the putative class are beneficiaries. JS-137-138.

**B.    NYLIAC failed to comply with the Statutes in its treatment of Mr. Linhart.**

On August 1, 2007, NYLIAC issued a $350,000 Universal Life Policy to James Linhart. JS-18, 156, 158. Mr. Linhart was and is the only applicant for the Policy. JS-157. Mr. Linhart named his wife, Plaintiff Barbara Linhart, as the sole policy beneficiary. JS-160-161. For nearly fourteen years, Mr. Linhart paid his premiums and his policy remained in force without interruption. JS-159.

The Statutes were enacted while Mr. Linhart's policy was still in force. Consequently, NYLIAC was bound to provide a Designation Form and Annual Notices to Mr. Linhart. In fact, ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████ JS-154. But NYLIAC still decided to ignore its obligations under the Statutes. At no time did NYLIAC provide Mr. Linhart the requisite Designation Form and Annual Notices. JS-162.

Instead, NYLIAC failed to provide the Designation Form entirely; and as to the requisite Annual Notices, it merely included a reference to the right to designate a third party in its annual policy statements starting in 2013. This reference was buried in the middle of the policy statement, at the end of three columns of insurance-related definitions, in size 8 font. JS-140-141. On top of that, the language itself was non-compliant because it did not, despite a clear Statutory mandate, inform the policyowner of their right to "change" their third-party designee. JS-142. And what little incomplete notice

- 6 -

NYLIAC may have provided did not obviate its Statutory obligation to send a standalone Designation Form to all policyowners. JS-144.

On August 3, 2021—just four days before Mr. Linhart's death on August 7, 2021—NYLIAC purported to lapse Mr. Linhart's policy for nonpayment of premium. JS-195, 244. Within days, Plaintiff and her family contacted NYLIAC and sought to claim benefits under Mr. Linhart's policy. JS-197. But NYLIAC denied the claim and failed to pay the death benefits, despite the policy remaining in force by reason of its failure to comply with the Statutes. JS-205.

## C. There remains a genuine dispute whether Mr. Linhart intended for his life insurance policy to lapse.

Mr. Linhart's intent regarding his life insurance policies is irrelevant given the Statutes' strict anti-termination provisions. Even so, there is ample evidence indicating that Mr. Linhart did not intend for his NYLIAC life insurance policy to lapse, particularly so soon before his death.

Mr. Linhart's family recalls that he repeatedly emphasized the importance of having life insurance, as well as his assertion that Mrs. Linhart (Plaintiff) would be "taken care of." JS-215. For fourteen years—from August 1, 2007, up until four days before he died—Mr. Linhart faithfully paid his premiums and kept his life insurance policy in force. JS-159.

Mr. Linhart had a habit of paying his premiums within a few days of their due date. JS-220. He often chose to pay only a month or two of premiums at a time. JS-222. Paying the required policy premium close to the due date would therefore not have been unusual for Mr. Linhart.

Unfortunately, when his insurance premium payment came due in August of 2021—the payment that would have been his last ever—Mr. Linhart was not in a position to think clearly about bills. He was suffering from memory loss. JS-247-248. At work, Mr. Linhart, for many years a sharp businessman, began forgetting to factor in overhead and inflation costs when setting prices for his business's customers. JS-250.

And in his daily life, he began having episodes that his wife described as "not really lost consciousness, but he was not in his right mind." JS-245. For example, Mr. Linhart at one point became lost while driving, just a few blocks from his home, JS-208; sometime later, Mr. Linhart became confused as to where he was while out on a boat with friends. JS-246.

Compounding these memory issues, in July of 2021, Mr. Linhart suffered a catastrophic fall that sent him to the hospital. Mr. Linhart returned home from the hospital in a wheelchair, with a fading memory, and died just a few days later. It was during this final week of his life that the NYLIAC premium payment came due. JS-242, 247-248.

It is not clear that, upon returning home from the hospital, Mr. Linhart ever saw the July 1, 2021, warning from NYLIAC that his policy was in danger of lapsing for non-payment if a premium was not paid by August 3. JS-223. Mr. Linhart's wife never saw him open any mail after he came home from the hospital. JS-243. But even if Mr. Linhart had opened his mail, another letter from NYLIAC, dated July 23, 2021, contradicted the July 1 message, informing Mr. Linhart that the "minimum monthly premium necessary" to keep his policy in force was "due by August 11, 2021." JS-196. Particularly given Mr. Linhart's ill health and clouded mental state, it is reasonable to conclude that, had he read the letters at all, Mr. Linhart believed his policy premium was not due until August 11—and he passed before then.

Mr. Linhart, who was elderly, infirm, and suffering from memory problems, was precisely the type of policyowner whom California legislators sought to protect by enacting the Statutes. Had NYLIAC complied with the Statutes, the outcome would have been far different. Mr. Linhart's children have declared that, had they been listed as third parties to be notified about a pending lapse and had known that their father's policy was in danger of lapsing, they would have covered the cost of the premiums. And Plaintiff herself testified that "[i]f I had known" about the overdue payments, "I think we would be in a totally different situation today." JS-254.

- 8 -
PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   LEGAL STANDARD

**A.   Summary Judgment**

Summary judgment should be granted only "if the movant shows that there is *no* genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is "material" if it may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). There is a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.   Statutory Interpretation**

When interpreting California state statutes, federal courts apply state court rules of statutory construction. *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013). Among California state courts, it is well-settled that "[t]he goal of statutory interpretation 'is to determine the Legislature's intent so as to effectuate the law's purpose.'" *Hallmark Specialty Ins. Co. v. Cont'l Ins. Co.*, 2022 WL 382037, at *2 (9th Cir. 2022) (quoting *Sierra Club v. Superior Ct.*, 57 Cal.4th 157, 166 (Cal. 2013)); *see also Board of Com'rs of Custer Cnty. v. Anderson*, 68 F. 341, 342 (9th Cir. 1895) (stating that the legislature is "always the guiding star and controlling principle of all statutory interpretation."). Courts should "not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." *Hallmark Specialty*, 2022 WL 382037, at *2 (9th Cir. 2022) (citation omitted). "[W]hen the language is susceptible of more than one reasonable interpretation," the court "look[s] to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." *Id.*

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# IV.    ARGUMENT

## A.    Mr. Linhart's policy remained in force at the time of his death.

NYLIAC erroneously argues that Mr. Linhart's policy was no longer in force when Mr. Linhart died. Mr. Linhart's policy coverage could have ended prior to his death only if (1) Mr. Linhart surrendered his policy; or (2) the policy lapsed. But Mr. Linhart never surrendered his policy, and, contrary to NYLIAC's arguments, his policy did not lapse. As such, the policy remained in force at the time of Mr. Linhart's death.

### 1.    Mr. Linhart did not surrender his policy.

The first way Mr. Linhart's coverage could have ended before his death is if he had surrendered, and thereby terminated, his policy. Although Mr. Linhart discussed the possibility of surrender with a NYLIAC representative in June of 2021, JS-99-100, he never filled out or returned to NYLIAC the paperwork required to surrender the policy. JS-106. Because Mr. Linhart did not fill out or return this paperwork, his policy was not surrendered. JS-106.

### 2.    Mr. Linhart's policy did not lapse.

The second way Mr. Linhart's policy coverage could have ended before his death is if his policy had lapsed. NYLIAC argues that Mr. Linhart's failure to pay his premiums meant that his policy lapsed on August 3, 2021—four days before his death on August 7, 2021. But the Statutes preclude policies from lapsing for nonpayment of premium if the Designation Form or Annual Notices were not provided. This bright-line rule applies regardless of whether a policyowner's nonpayment was intentional. Because NYLIAC was non-compliant, his policy could not—and did not—lapse prior to his death.

NYLIAC further claims that no breach exists here because Mr. Linhart did not pay sufficient premiums, and hence "Plaintiff cannot establish . . . performance or excuse for nonperformance." Mtn. at 32 (citation omitted). But because NYLIAC admittedly did not send the requisite Form or Notices, whether sufficient premiums were paid

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

is irrelevant because of the anti-termination rule. Thus, by operation of law, non-payment of premium on Mr. Linhart's policy does not constitute lack of performance.

### a. California law required NYLIAC to provide Designation Forms and Annual Notices to all its policyowners, including those whose policies were already in force on January 1, 2013.

For policies in force on or after January 1, 2013, NYLIAC was required to provide policyowners (1) a form to designate another person to receive notice of pending lapse of the policy for nonpayment of premium (§ 10113.72(a)); and (2) annual notice of the right to change or supplement their designation (§ 10113.72(b)). The Statutes contain no exception for policies that were issued prior to 2013. This is established as a matter of law by not just the California Supreme Court but also multiple federal courts. *See, e.g.*, *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1028 (S.D. Cal. 2019), *aff'd*, 2021 WL 4596286 (9th Cir. Oct. 6, 2021); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723, 732, 736-37 (C.D. Cal. 2019); *McHugh*, 12 Cal. 5th at 220. Hence, NYLIAC was required by law to comply with the procedural safeguards regarding life insurance policies it issued prior to 2013, including Mr. Linhart's policy.

NYLIAC nevertheless argues that one portion of these Statutes, Section 10113.72(a), applies to new policies exclusively and not to policies already in force on January 1, 2013. Mtn. at 25-27. This argument is a nonstarter. In *McHugh*, the California Supreme Court clarified that the Statutes—including Section 10113.72(a)—must be interpreted "as a package," and that, as a package, they "apply to *all* policies in effect as of the sections' effective date," not just to new policies. 12 Cal. 5th at 246 (emphasis added). While the California Supreme Court recognized that the language of Section 10113.72(a) facially concerns "new policies" because it references "applicants" rather than policyowners, *id.* at 236, that was merely the starting point for the court's thorough and methodical analysis of the Statutes' scope. NYLIAC's reliance on cherry-picked quotes from this first stage of the court's analysis, while ignoring the remainder of the opinion, radically misconstrues the California Supreme Court's ultimate holding: the

Statutes as a whole—including the requirements of Section 10113.72(a)—apply to existing policies as well as to new policies. *Id.* at 246.

NYLIAC's argument that Section 10113.72(a) does not apply to pre-2013 policies also ignores subsequent, post-*McHugh* cases in which courts have concluded that the section requires life insurance companies to send designation forms to *all* policyowners, including those whose policies were in force on January 1, 2013. For example, the court in *Siino v. Foresters Life Ins. & Annuity Co.*, 2023 WL 4410948 (N.D. Cal. July 7, 2023) determined:

> [S]ections 10113.71(b)(1) and 10113.72(c) require that notice be sent to the policy owner's third-party designee. But an insurer who fails to give its insured the opportunity to designate a third-party designee as required by section 10113.72(a) makes the sending of that notice impossible. Accordingly, the Court concludes that an insurer cannot terminate a policy if it has not complied with sections 10113.71(a) or 10113.72(a).

2023 WL 4410948, at *6 n.6; *accord Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458 at *2 (C.D. Cal. May 1, 2018) ("If an insurer fails to give a policyholder an opportunity to name a designee, the [lapse] notice to the policyholder is not effective.").

More recently, the court in *Poe v. Northwestern Mutual Life Ins. Co.* reached the same conclusion. In that case, the defendant insurer never provided a Designation Form to the policyowner of a policy already in force on January 1, 2013. *Poe v. Nw. Mut. Life Ins. Co.*, 2023 WL 7273741, at *3 (C.D. Cal. Oct. 19, 2023). The court determined this failure to provide the requisite form "violated Section[] 10113.72(a)." *Id.* at *3.

These decisions belie NYLIAC's claim that applying Section 101173.2(a) to policies already in force in 2013 would "create an impossible situation for insurers." Mtn. at 27. To avoid ineffective terminations for nonpayment, all NYLIAC had to do was provide policyowners a Designation Form. NYLIAC's "impossibility" argument rings

particularly hollow given that at least four other life insurance companies promptly complied with the Statutes by sending the required form to their policyowners.[2]

### b. NYLIAC did not provide the Designation Form or Annual Notices to Mr. Linhart.

NYLIAC admits that it never provided Mr. Linhart with the Designation Form required by Section 101173.2(a). JS-206. NYLIAC argues it nevertheless complied because it would have sent the form to any policyowner who asked for one. Mtn. at 28. But the Statutes put the burden of sending designation forms and other notice requirements on insurance companies, not on policyowners.

In addition, NYLIAC's purported "Annual Notices" do not conform to Section 101173.2(b)'s requirements. NYLIAC argues that language informing Mr. Linhart that he could "designate a third party," written in size eight font and buried in the middle of its annual policy statements, was a sufficient Annual Notice of the right to designate and change that designation. Mtn. at 14. This inconspicuous language merely informed Mr. Linhart that, if he wanted to "designate a third party," he needed to "call a Customer Service Representative" for "more information regarding this procedure." Mtn. at 14. It did not also explain that he could "change" his designation, as NYLIAC admits, despite the Statutory mandate that NYLIAC include such language. *See* Section 10113.2(b) ("The insurer shall notify the policy owner annually of the *right to change* the written designation or designate one or more persons.") (emphasis added); Mtn. at 25.

The Statutes could have been drafted to allow insurers to inform policyowners of the right to make a designation along the lines of the language NYLIAC used. But the California legislature created more robust and explicit procedural safeguards. The actual statutory language of Section 10113.72(a) makes the process as easy as possible for the

---

[2] As Plaintiff explains in her Complaint, this is precisely what other life insurance companies have done. *See* FAC at 40 ("Other major insurance companies, including but not limited to Fidelity, United of Omaha, Blue Cross Blue Shield, and Primerica had no trouble drafting simple forms for their policyholders to complete.").

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

policyowner. It explicitly mandates a standalone form, and also specifies its contents. Only after an insurer provides such a form so the policyowner can make the designation, is the insurer's obligation reduced to merely notifying the policyowner annually (without a specified form) of the right to amend or supplement that designation. Cal. Ins. Code § 10113.72(b). Nothing in the Statutes permitted NYLIAC to disregard this critical procedural safeguard by burying it in the middle of an annual policy statement, or to omit the language the Statute explicitly required.

### c. NYLIAC's failure to provide the Designation Forms and Annual Notices precluded Mr. Linhart's policy from lapsing.

As already noted, the Statutes establish a bright line rule if an insurer fails to provide the Designation Forms or Annual Notices: it cannot lapse the policy for non-payment of premium. The Statutes do not include any language that conditions this prohibition against termination by non-compliant insurers on a showing that the payment lapse occurred as a result of the insurer's non-compliance.

There is good reason for this rule: after the policyowner or insured has died, it would often be impossible for the beneficiary to prove that the policyowner did not intend to terminate the policy by lapsing premium payments. For their part, insurers need only provide the Designation Forms and Annual Notices in order to avoid the proscription against terminating a policy for non-payment of premium. For his part, Mr. Linhart performed his contractual obligations. For nearly 13 years, he paid his premiums—until NYLIAC improperly terminated his policy for non-payment of premium just four days prior to his death, after Mr. Linhart had just returned home from the hospital.

The unconditional nature of the rule established by Sections 10113.71 and 10113.72 was noted by the Ninth Circuit Court of Appeals in *Thomas v. State Farm Ins. Co.*, 2021 WL 4596286, *1 (9th Cir. Oct. 6, 2021) (affirming grant of summary judgment to plaintiff, citing *McHugh*):

> The policies did not lapse because State Farm failed to comply with two statutory provisions—sections 10113.71 and 10113.72 of the California Insurance Code.
>
> …
>
> State Farm nevertheless maintains that Thomas is not entitled to summary judgment on her breach of contract action. Specifically, State Farm argues that Thomas failed to establish causation because she did not offer any evidence that the policies would not have lapsed even had State Farm complied with sections 10113.71 and 10113.72. But this evidence is not necessary for Thomas to prevail.
>
> …
>
> An insurer's failure to comply with these statutory requirements means that the policy cannot lapse.
>
> …
>
> State Farm failed to comply with sections 10113.71 and 10113.72. which prevented the policies from lapsing.

A court in the Eastern District of California stated the same, citing *Thomas*:

> Questions of causation, i.e., whether the policy would have lapsed even if defendant had complied with the statutes, are not relevant to whether there was a violation of a procedural right. [citing *Thomas*]. Similarly, it is not necessary for the court to delve into the individualized circumstances of each policyholder and their policies because the injury alleged here is the same among all putative class members: the deprivation of procedural safeguards guaranteed by the statutes.

*Farley v. Lincoln Benefit Life Co.*, 2023 WL 3007413, *4 (E.D. Cal. Apr. 18, 2023).

Nonetheless, NYLIAC asserts that the prohibition against noncompliant policy lapses or terminations for non-payment of premium does not apply unless the lapse or termination was caused by the insurance company's failure to provide the Designation Form or Annual Notices. Mtn. at 31. In support, NYLIAC states that the Statutes were designed to address only "inadvertent defaults." *Id.*

- 15 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

NYLIAC confuses the purpose the Statutes with the method the legislature chose to best effectuate that purpose. The legislature certainly was concerned about inadvertent defaults, *see McHugh*, 12 Cal. 5th at 233, and the *way* it elected to prevent such defaults was to create a bright-line rule that failure to provide the mandated Designation Form and Annual Notices rendered ineffective *any* termination for nonpayment of premium. This approach was necessary to give teeth to the statutory mandates. Otherwise, an insurer could avoid the statutory scheme altogether—just as NYLIAC attempts here—simply by refusing to provide the Designation Form and Annual Notices and forcing beneficiaries to prove that the lapse was not intentional, an often-impossible task after the policyowner or insured has died.

In other words, the unconditional anti-termination rule was a deliberate policy choice by the California legislature. The legislature could have simply included a causation element, but it did not. And, as noted, the life insurance industry's attempt to amend the Statutes to add such a causation requirement was rejected. This attempted amendment highlights the fact that, as numerous courts have held, the effective language of the Statutes precludes any individual causation analysis; if the Designation Form and Annual Notices are not sent, the policy simply does not lapse.

Alternatively, the legislature could have included language allowing the insurer, despite failing to provide the notices, to terminate the policy after a specified time period had passed without payment, as other states have done. *See e.g.*, N.Y. Ins. Law § 3211(a)(1) ("No policy of life insurance … shall terminate or lapse by reason of default in payment of any premium … in less than one year after such default, unless, for scheduled premium policies, a notice shall have been duly mailed at least fifteen and not more than forty-five days prior to the day when such payment becomes due."). But again, California chose not to. Courts have repeatedly recognized the implications of the Statutes' unconditional rule. Just last year, another Central District court certified a class substantially identical to the putative class here, over the insurer's contention that the class would include policyowners who "were aware of an impending policy lapse [and

- 16 -

therefore] did not suffer any harm as a result of [defendant's] non-compliance with the Statutes." *Small v. Allianz Life Ins. Co. of N. Am.*, 2023 WL 4042593, at *4-5 (C.D. Cal. May 23, 2023).

NYLIAC points to cases in which the court found that such classes should not include policies whose owners "affirmatively" terminated their policies. *Steen v. Am. Nat'l Ins. Co.*, 2023 WL 4004192 (C.D. Cal. Jun. 14, 2023);[3] *Bentley*, 2018 WL 3357458. To the extent these courts concluded that the Statutes permit an inquiry into the policyowner's intent regarding a payment lapse that otherwise would be rendered ineffective by the Statutes, Plaintiff submits such a conclusion is incorrect, for all of the reasons set forth herein.

Further, in both *Steen* and *Bentley*, the courts understood the policies to have been cancelled in accordance with their terms, which is not the same as intentionally allowing a lapse. *See Steen*, 2023 WL 4004192, at *9 ("Class members who affirmatively cancelled their policies are different from those who merely intended that their policies lapse."); *Bentley*, 2018 WL 3357458, at *6 ("When a policyholder cancels her policy…..").[4] This is not the case here. NYLIAC itself does not contend that Mr. Linhart affirmatively terminated his policy, merely that he "voluntarily let the Policy lapse." Mtn. at 30. The reasoning of *Steen* and *Bentley* do not support entering summary judgment against Plaintiff.

NYLIAC's argument that "a violation perpetually prevents a policy from terminating—would be an improper end-run around the rule that the Legislature must speak clearly to create a private right of action" borders on the absurd. Mtn. at 29. At any point

---

[3] *Steen* is distinguishable because in that case, the plaintiff was a living policyowner who testified that she stopped paying her premiums because she no longer wanted her policy. 2023 WL 4004192, at *7.

[4] This distinction was also recognized in *Farley*, which noted that policyowners who "affirmatively chose" to cancel their policy (as opposed to supposedly "intentional" lapse) is definitionally excluded from the class, because the Statutes expressly prevent termination or lapse *only* for nonpayment of premium. 2023 WL 3007413, at *5.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

in time, NYLIAC itself always had the power to bring itself into compliance with the Statutes by sending out a single sheet of paper to Mr. Linhart advising him of his rights.

Because the Statutes specify the remedy if insurers fail to comply with the procedural safeguards, *i.e.*, that the policy does not lapse, no further proof of "causation" is necessary. As in *Thomas*, NYLIAC's failure to provide the Designation Form and Annual Notices prevented the policies from lapsing, and it "breached its contractual obligations by failing to pay benefits to [Plaintiff] after [Mr. Linhart's] death." *Thomas*, 2021 WL 4596286 at *1.

### d. Mr. Linhart's circumstances illustrate the reasons underlying the policy choice made by the California legislature.

NYLIAC's motion rests on the notion that Mr. Linhart intentionally allowed his policy to lapse. As discussed in the previous section, California law does not recognize such a defense for an insurer's violation of the Statutes. Moreover, the factual record here illustrates why the California legislature elected a bright-line rule that does not include adjudication of the alleged intention of the policyowner.

Mr. Linhart's family had substantial concerns about Mr. Linhart's mental state in the years leading up to his death. JS-207. There were instances in which Mr. Linhart became confused, such as when he became lost while driving just a few blocks from home. JS-208. He apparently had mild strokes. JS-209. Mr. Linhart's son worked closely with him in the family business and explained his father's mental deterioration made it untenable for him to continue in a substantial role—an assessment with which his father ultimately agreed. JS-210.

What's more, Mr. Linhart regularly paid his NYLIAC premiums on a month-to-month basis. JS-221. It was not unusual for him to wait to pay his premiums until just a few days before the due date. JS-222. A reasonable jury could find that Mr. Linhart intended to pay his premium, but that, having just been released from the hospital days before and given his deteriorated mental state, the bill simply slipped his mind. A reasonable jury could also conclude that the dueling letters NYLIAC sent Mr. Linhart (the

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

first letter stating that payment was due on August 3, the latter stating that payment was due on August 11) confused Mr. Linhart, who assumed he had until August 11 to pay and in fact intended to pay his premium before that date.

Thus, were it legally relevant, the question of whether Mr. Linhart "intentionally" allowed his policy to lapse would plainly be a disputed issue of fact. This question is hopelessly complicated by the fact that Mr. Linhart is not available to explain his actions or be medically evaluated. This is exactly why the California legislature enacted an unconditional rule: to avoid putting beneficiaries to the often-impossible task of proving from the grave the policyowner's state of mind regarding lapse. Nor is this bright-line rule unfair to insurance companies like NYLIAC, which had the ability to avoid the entire issue by simply providing the required Designation Form and Annual Notices.

**B.    Because Mr. Linhart's policy was in force at the time of his death, NYLIAC breached its contractual obligation to pay benefits.**

NYLIAC wrongly asserts that its failure to pay Plaintiff the death benefits specified in the policy was not a breach because the policy had lapsed. *See, e.g.*, Mtn. at 30-31. However, for the above reasons, the policy remained in force by operation of the Statutes. NYLIAC's admitted failure to pay therefore breached its insurance contract.

**C.    NYLIAC's breach caused Plaintiff's damages.**

The causal connection between NYLIAC's breach of contract and Plaintiff's damages is straightforward. The breach was NYLIAC's failure to pay the death benefits due on Mr. Linhart's in-force policy. Plaintiff's breach-of-contract damages are the amount of those benefits (plus statutory interest) which resulted from NYLIAC'S failure to pay.

To manufacture a lack-of-causation argument, NYLIAC relies on misdirection. NYLIAC identifies the contract breach as its failure to provide the Designation Form and Annual Notices, which meant the policy could not terminate. *See* Mtn. at 28. But because the policies remained in force under the Statutes, the breach of contract was

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

NYLIAC's subsequent failure to pay the policy death benefits. And there is no dispute that the failure to pay caused Plaintiff's damages.

The court rejected this same misdirection in *Poe*, 2023 WL 7273741, *4. The court stated as follows, concerning the same breach of contract claim as here, where the insurer breached by failing to pay death benefits on a policy that had remained in force due to the insurer's failure to comply with the Designation form and notice requirements:

> Because Mr. Poe's policies were still in force under California law, Defendant's failure to pay the policy amounts is the breaching conduct. "Contrary to Defendant's arguments, there is no dispute regarding causation: Defendant admittedly refused to pay the benefits of this policy, and this refusal is the breach of contract that caused Plaintiff's damages." *Moriarty*, 2023 WL 5211632, at *4 (S.D. Cal. Aug. 14, 2023); *see also Farley v. Lincoln Benefit Life Co.*, 2023 WL 3007413, at *4 (E.D. Cal. Apr. 18, 2023) ("Questions of causation, i.e., whether the policy would have lapsed even if defendant had complied with the statues, are not relevant to whether there was a violation of a procedural right.); *Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 WL 4596286, at *1 (9th Cir. Oct. 6, 2021)… This is the case here. Defendant's failure to pay the policy amount is the breaching conduct, and this breach caused Plaintiff's harm.

*Poe*'s reliance on the Ninth Circuit's opinion in *Thomas* is worth highlighting, as *Thomas* noted that the anti-termination provisions themselves include no causation element. *Thomas* held:

> State Farm argues that Thomas failed to establish causation because she did not offer any evidence that the policies would not have lapsed even had Sate Farm [provided the Designation Form and Annual Notices]. But this evidence is not necessary for Thomas to prevail.
> ….
> Because State Farm failed to bring forward any evidence indicating that it sent Flynn notice of the right to designate, there

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

is no genuine dispute of fact about whether it did so. . . . Accordingly, based on this record, State Farm failed to comply with sections 10113.71 and 10113.72, which prevented the policies from lapsing. *Therefore, State Farm breached its contractual obligations by failing to pay benefits to Thomas under the policies after Flynn's death.*

2021 WL 4596286, at *1 (emphasis added). Another Central District of California court applied *Thomas* to hold that, because the insurer failed to notify policyowners of their designation right per Section 10113.72(b), the insurer "could not have lapsed the Policy … [c]onsequently, since the Policy was in effect at the time of [the policyowner's] death, Allianz breached its contractual obligation to pay the Policy's death benefits…." *Small*, No. 2:20-cv-01944, ECF 140, at 7.

NYLIAC ignores the clear logic behind these opinions and instead cites cases in which the court applied a non-existent statutory exception for allegedly "intentional" lapses and thus focused on the wrong breach. *See Steen*, 2023 WL 4004192, at *7; *Nieves v. United of Omaha Life Ins. Co.*, 2023 WL 2705836, at *9 (S.D. Cal. Mar. 28, 2023); *Pitt v. Metro. Tower Life Ins. Co.*, 2022 WL 17972167, at *7 (S.D. Cal. Dec. 1, 2022).

*Moriarty* just recently recognized that such cases are not persuasive because they ignore that the policies never lapsed due to the anti-termination provisions, so that who caused the lapse is immaterial to the breach for failure to pay death benefits:

> The Court finds that this line of inquiry—that is, asking a jury to determine who is responsible for the lapse in the policy— … [is] immaterial …[T]he California legislature explicitly provided that a policy shall not lapse for nonpayment unless the insurance company provides the required pretermination notice. Given the clear and explicit language of the statute itself, the Court is unpersuaded by the non-binding authority cited by Defendant to the contrary.

2023 WL 5211632, at *4 (summary judgment for beneficiary on her death benefit contract claim). *See also Grundstrom v. Wilco Life Ins. Co.*, 2023 WL 5723674, at *1 (N.D.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Cal. Sept. 5, 2023) ("Rather, the Court finds persuasive the authority, cited by Grundstrom, holding a defendant insurer's failure to comply with the above-referenced third-party-designee requirement sufficient to support a breach of contract claim, irrespective of the plaintiff's ability to show a causal relationship between the lack of statutorily required notice and the lapse.").[5]

**D.   NYLIAC is not entitled to summary judgment on Plaintiff's bad-faith claim.**

California law "implies in every contract, including insurance policies, a covenant of good faith and fair dealing." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007). An insurer is liable in tort for bad faith if it "unreasonably and in bad faith withholds payment of the claim of its insured." *Id.* (quotation omitted). Insurers are held liable for such bad faith, in addition to the insured's remedies for breach of contract, in order to "advance[] the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).

Plaintiff's bad faith claim is based primarily on two key facts. First, NYLIAC has taken the position that it need not pay benefits on policies issued prior to 2013, for which it chose not to provide the requisite Designation Forms and Annual Notices, ███████████

████████████████████████████████████████████████████

████████████████████████       JS-154-155. Second, NYLIAC continues not to pay these benefits more than two and a half years after the California Supreme Court unanimously held that such notices were required. JS-147.

---

[5] NYLIAC cites *Lara v. First Nat'l Ins. Co. of Am.* for the proposition that Plaintiff must prove that the violation of the Statute was the proximate cause of the harm. But *Lara* is inapposite because the Washington statutes at issue have no parallel to the anti-termination provisions at issue here; rather, plaintiffs were suing for breach of regulations that were effectively terms of the contract, having been incorporated therein by operation of law. 25 F.4th 1134, 1139 n. 4 (9th Cir. 2022).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

NYLIAC argues that, even if Plaintiff is due benefits, it cannot be found liable for bad faith because there is a "genuine issue" regarding its liability. Mtn. at 33. It relies on its contention that the Statutes contain a carve-out—that when the policy was terminated for nonpayment (despite its noncompliance with the Statutes), the termination is nonetheless effective if the policyowner allegedly "knowingly lets the policy lapse." *Id.* at 34.[6] However, no such carve out is enumerated in the Statutes.

"A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson*, 42 Cal. 4th at 723 (italics in original). "[A]n insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Id.* at 724 (quoting *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1162 (9th Cir. 2002)); *see also Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1175 (S.D. Cal. 2015) (allegation that insurer took "coverage positions contrary to controlling law" stated claim for bad faith). "[T]he insurer cannot deny the claim without fully investigating the grounds for its denial." *Wilson*, 42 Cal. 4th at 720 (quotations omitted).

Here, the Statutes contain *no exception* for policies that were purportedly lapsed by intentionally not paying premium. There is more than enough evidence for a jury to find that Mr. Linhart's failure to pay premiums was not intentional, that his policy was fully subject to the anti-termination provisions of the Statutes, and that a reasonable investigation by NYLIAC would have reached the same conclusion. This is not to mention the bad faith positions NYLIAC took with regard to the applicability of the Statutes to pre-2013 policies, which included Mr. Linhart's. *See Bentley v. United of Omaha Life*

---

[6] NYLIAC also argues that because it "did *more* than what the law required" in some respects, i.e., by including a 62-day grace period rather than a 60-day grace period, it should be excused from complying with other Statutory requirements. Mtn. at 34. This is a spurious argument. Compliance—even over-compliance—with one aspect of the Statutes does not give NYLIAC license to violate other aspects of the Statutes.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Ins. Co.*, 2017 WL 10518099, at *4-5 (C.D. Cal. Aug. 8, 2017) (denying insurer's motion to dismiss based on assertion of a genuine dispute regarding the interpretation of the Statutes—even before *McHugh* was decided, ███████████████████ ███████████████████████████████████████████████████). In short, the record provides ample basis for a jury to find that NYLIAC acted in bad faith. *See Smith v. UNUM Life Ins. Co. of Am.*, 2007 WL 9662662, at * 9 (C.D. Cal. Mar. 21, 2007) ("Based on the evidence in the record, a reasonable jury could conclude that UNUM deliberately misinterpreted Smith's 2005 letters—the content of which is not disputed— and deliberately failed to investigate his … claim…."). While NYLIAC may have had some reasonable basis pre-*McHugh*, it certainly has not had one since 2021.

**E.      NYLIAC is not entitled to summary judgment on punitive damages.**

The Ninth Circuit has held that punitive damages are available in a case against an insurer when, *inter alia*, "the insurer's bad faith was 'part of a conscious course of conduct, firmly grounded in established company policy.'" *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (quoting *Neal v. Farmers Inc. Exch.*, 21 Cal. 3d 910, 923 (1978)). Bad faith is particularly troublesome in an insurance context because insurers are "'invested with a discretionary power affecting the rights of another,' and the insurance business is 'affected with a public interest and offers services of a quasi-public nature.'" *Id.* at 1161 (*citing Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 726 (1992)).

Here, it is undisputed that it was NYLIAC's policy not to send the required Designation Forms. JS-143. It was also NYLIAC's policy not to send adequate Annual Notices. JS-140-143. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ JS-154.

Ample evidence therefore exists here for a jury to conclude that punitive damages are warranted. *See Amadeo*, 290 F.3d at 1165 ("Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury."). NYLIAC

- 24 -

was aware of its obligations and had the opportunity to carefully consider its actions, and yet it nevertheless kept doggedly refusing to comply with the Statutes and refusing to pay benefits owed on policies whose owners were never afforded the Statutes' procedural protections. This approach continued even in the wake of the California Supreme Court's *McHugh* decision, which erased all doubt as to the Statutes' meaning and scope. This behavior demonstrates flagrant and reckless indifference to the rights of the insured and their beneficiaries, including Plaintiff, and entitles Plaintiff to an award of punitive damages. *See Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 995 (2008).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny NYLIAC's motion for summary judgment.

Dated:  April 5, 2024                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/   *Christopher R. Pitoun*
Christopher R. Pitoun (SBN 290235)
Abigail D. Pershing (SBN 346467)
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Email: christopherp@hbsslaw.com
Email: abigailp@hbsslaw.com

David S. Klevatt (admitted *pro hac vice*)
KLEVATT & ASSOCIATES, LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60601-1604
Telephone: (312) 782-9090
Email: dklevatt@insurancelawyer.com

Joseph M. Vanek (admitted *pro hac vice*)
Mitchell H. Macknin (admitted *pro hac vice*)

- 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel A. Shmikler (admitted *pro hac vice*)
John P. Bjork (admitted *pro hac vice*)
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Email: jvanek@sperling-law.com
Email: mhmacknin@sperling-law.com
Email: dshmikler@sperling-law.com
Email: jbjork@sperling-law.com


*Attorneys for Plaintiff Barbara Linhart*

- 26 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Barbara Linhart and Proposed Class, certifies that this brief contains 25 pages, which complies with the limit for Memoranda of Points and Authorities in support of or in opposition to motions set by the Standing Order (ECF No. 70 at 4).


DATED: April 5, 2023                    /s/  Christopher R. Pitoun
                                        Christopher R. Pitoun

- 27 -