Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Abigail D. Pershing (SBN 346467)
abigailp@hbsslaw.com
HAGENS BERMAN SOBOL
SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

Joseph M. Vanek (*pro hac vice*)
jvanek@sperling-law.com
Mitchell H. Macknin (*pro hac vice*)
mhmacknin@sperling-law.com
Daniel A. Shmikler (*pro hac vice*)
dshmikler@sperling-law.com
John P. Bjork (*pro hac vice*)
jbjork@sperling-law.com
Martin V. Sinclair (*pro hac vice*)
mvs@sperling-law.com
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200

*Attorneys for Plaintiff*
(Additional counsel captioned below)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| BARBARA LINHART, on behalf of herself and all others similarly situated.<br><br>                    Plaintiff,<br><br>    v.<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, and DOES 1 TO 50, inclusive,<br><br>                    Defendants. | Case No.  5:21-cv-01640-CJC-(DTBx)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**<br><br>**REDACTED PUBLIC VERSION**<br><br>Hearing Date: June 7, 2024<br>Time: 9:00 a.m.<br>Courtroom: 9B<br>Judge: Hon. Cormac J. Carney<br>Mag. Judge: Hon. David T. Bristow |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 2

    A. The class meets the prerequisites of Rule 23(a). ................................... 2

        1. Plaintiff has demonstrated commonality. ..................................... 2

        2. Mrs. Linhart's claims are typical of those of the class. ................ 7

        3. NYLIAC's attacks on Mrs. Linhart's adequacy as a representative fail ............................................................................ 7

    B. The class meets the prerequisites of Rule 23(b)(3) ............................. 10

        1. NYLIAC fails to establish any cognizable challenge to predominance ............................................................................... 10

        2. Class adjudication of the claims is plainly superior to individual lawsuits. .................................................................... 18

III. CONCLUSION ................................................................................................ 21

PLTF'S REPLY ISO MOT. FOR CLASS CERT. AND APPT. OF
CLASS REP. AND CLASS COUNSEL

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Abdullah v. U.S. Sec. Assocs., Inc.,*

5

   731 F.3d 952 (9th Cir. 2013) ............................................................ 17

6

*Allen v. Hyland's Inc.,*

7

   300 F.R.D. 643 (C.D. Cal. 2014) ........................................................ 8

8

*Amadeo v. Principal Mut. Life Ins. Co.,*

9

   290 F.3d 1152 (9th Cir. 2002) .......................................................... 17

10

*Bazarganfard v. Club 360 LLC,*

11

   344 F.R.D. 411 (C.D. Cal. 2023) ................................................ 15, 17

12

*Bentley v. United of Omaha Life Ins. Co.,*

13

   2018 WL 3357458 (C.D. Cal. May 1, 2018) ................................... 4, 19

14

*Briseno v. ConAgra Foods, Inc.,*

   844 F.3d 1121 (9th Cir. 2017) .......................................................... 14

15

*Brown v. DirecTV, LLC,*

16

   562 F. Supp. 3d 590 (C.D. Cal. 2021) .............................................. 14

17

*Cassim v. Allstate Inc. Co.,*

18

   33 Cal. 4th 780 (2004) .................................................................... 17

19

*Clemons v. Transamerica Premier Life Ins. Co.,*

20

   2023 WL 6535247 (Cal. Super. Ct. Aug. 9, 2023) ........................... 12

21

*Cole v. Gene By Gene, Ltd.,*

22

   322 F.R.D. 500 (D. Alaska 2017) ........................................... 18, 19, 20

23

*Colman v. Theranos, Inc.,*

   325 F.R.D. 629 (N.D. Cal. 2018) ............................................... 19, 20

24

*Delagarza v. Tesoro Refining & Mktg. Co.,*

25

   2011 WL 4017967 (N.D. Cal. Sep. 8, 2011) ................................. 10, 16

26

*Farley v. Lincoln Benefit Life Co.,*

27

   2023 WL 3007413 (E.D. Cal. Apr. 18, 2023) .............................. 2, 5, 9

28

*Grundstrom v. Wilco Life Ins. Co.*,
   2023 WL 5723674 (N.D. Cal. Sept. 5, 2023) ...................................................... 12

*Herrera v. LCS Fin. Servs. Corp.*,
   274 F.R.D. 666 (N.D. Cal. 2011) ...................................................................... 16

*Leyva v. Medline Indus., Inc.*,
   716 F.3d 510 (9th Cir. 2013) ..................................................................... 4, 16

*Litty v. Merrill Lynch & Co., Inc.*,
   2014 WL 5904907 (C.D. Cal. Aug. 4, 2014) .................................................... 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ......................................................................... 16

*Mackey v. Bristol W. Ins. Servs. Of Cal., Inc.*,
   105 Cal. App. 4th 1247 (2003) .......................................................................... 3

*McHugh v. Protective Life Ins. Co.*,
   12 Cal. 5th 213 (2021) ....................................................................................... 5

*In re Medical Capital Sec. Litig.*,
   2011 WL 5067208 (C.D. Cal. Jul. 26, 2011) .................................................... 16

*Melgar v. CSK Auto, Inc.*,
   681 Fed. Appx. 605 (9th Cir. 2017) .................................................................. 11

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) ....................................................................... 8

*Moreland v. Prudential Ins. Co. of Am.*,
   2023 WL 6450421 (N.D. Cal. Sept. 29, 2023) .................................................. 12

*Moriarty v. Am. Gen. Life Ins. Co.*,
   2022 WL 6584150 (S.D. Cal. Sept. 27, 2022) .................................................. 12

*Moriarty v. Am. Gen. Life Ins. Co.*,
   2023 WL 5211632 (S.D. Cal. Aug. 14, 2023) ........................................... 1, 2, 13

*Nguyen v. Baxter Healthcare Corp.*,
   275 F.R.D. 596 (C.D. Cal. 2011) ....................................................................... 8

PLTF'S REPLY ISO MOT. FOR CLASS CERT. AND APPT. OF
CLASS REP. AND CLASS COUNSEL

*Nieves v. United of Omaha Life Ins. Co.*,
    2023 WL 2705836 (S.D. Cal. Mar. 28, 2023) ................................................. 6, 12

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
    654 F.3d 618 (6th Cir. 2011) ................................................................................ 20

*Pitt v. Metro. Tower Life Ins. Co.*,
    2022 WL 17972167 (S.D. Cal. Dec. 1, 2022) ................................................. 6, 12

*Poe v. Nw. Mut. Life Ins. Co.*,
    2023 WL 7273741 (C.D. Cal. Oct. 19, 2023) ............................................. 1, 3, 13

*Richie v. Blue Shield of Cal.*,
    2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ....................................................... 10

*Roadhouse v. Las Vegas Metro. Police Dep't*,
    290 F.R.D. 535 (D. Nev. 2013) ........................................................................... 20

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*,
    2019 WL 3244487 (E.D. Cal. Apr. 17, 2019) ..................................................... 20

*Siino v. Foresters Life Ins. & Annuity Co.*,
    340 F.R.D. 157 (N.D. Cal. 2022) ........................................................................ 12

*Small v. Allianz Life Ins. Co. of N. Am.*,
    2023 WL 4042593 (C.D. Cal. May 23, 2023) .................................................. 6, 19

*Soares v. Flowers Foods, Inc.*,
    320 F.R.D. 464 (N.D. Cal. 2017) ........................................................................ 20

*Steen v. Am. Nat'l Ins. Co.*,
    2023 WL 4004192 (C.D. Cal. June 14, 2023) ................................................. 6, 12

*Thomas v. State Farm Life Ins. Co.*,
    2021 WL 4596286 (9th Cir. Oct. 6, 2021) ..................................................... 2, 3, 5

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) ................................................................. 11, 14, 16

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ............................................................................. 16

PLTF'S REPLY ISO MOT. FOR CLASS CERT. AND APPT. OF
CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................. 18

*Zinser v. Accufix Resch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...................................................................... 18, 20

### STATUTES

Cal. Civ. Code § 3289 ........................................................................................... 4

Cal. Ins. Code § 10111 ......................................................................................... 4

Cal. Ins. Code § 10113.72(c) ............................................................................... 5

Cal. Ins. Code § 10508(a), (c)(6), (c)(7) .......................................................... 15

Cal. Ins. Code § 10508.5 .................................................................................... 15

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................... 14

Fed. R. Civ. P. 23(a) ............................................................................................ 2

Fed. R. Civ. P. 23(b)(3) .............................................................................. 10, 18

PLTF'S REPLY ISO MOT. FOR CLASS CERT. AND APPT. OF
CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

# I.    INTRODUCTION

The claims here almost exclusively involve common issues of law and fact. NYLIAC uniformly failed to provide the requisite Designation Notices for life insurance policies of which the members of the putative class are beneficiaries. This meant that the policies uniformly did not lapse for nonpayment of premium and remained in force by virtue of the anti-termination provisions of the Statutes. When the insureds died, NYLIAC uniformly did not pay the death benefits due and owing to the beneficiaries, thus uniformly breaching the policies.

NYLIAC is unable to provide any basis to oppose certification beyond its recycled and meritless attempt to read "intentional lapse" and "causation" provisions into the Statutes where none exist. NYLIAC appeals to what it says is the weight of authority, but ignores that courts are increasingly persuaded by the logic of Plaintiff's argument here. This includes two of the cases upon which NYLIAC primarily relies (*Poe* and *Moriarty*). In both cases, the court has changed its position and held that the anti-termination provisions apply without regard to the intent of the policyowner and whether the insurer's failure to provide the Designation Notices caused the lapse. *Poe v. Nw. Mut. Life Ins. Co.*, 2023 WL 7273741, at *4 (C.D. Cal. Oct. 19, 2023); *Moriarty v. Am. Gen. Life Ins. Co.*, 2023 WL 5211632, at *4 (S.D. Cal. Aug. 14, 2023), *motion to certify appeal granted*, 2023 WL 6280967 (S.D. Cal. Sept. 26, 2023). As discussed below, the only causation relevant to the class claims is that NYLIAC's failure to pay death benefits resulted in their injuries.

Desperate to avoid the consequences of its own intentional decision not to provide the Designation Notices, NYLIAC offers a series of invented issues. Some, like its disingenuous attack on Mrs. Linhart's adequacy as a class representative, are based on blatant misrepresentation of the record. Some, like its assertion that putative class members might have received Designation Notices if they'd only requested one, are pure

speculation with no basis in the record. None provides any basis to deny class certification.

## II.   ARGUMENT

### A.   The class meets the prerequisites of Rule 23(a).

NYLIAC does not dispute that the class is sufficiently numerous. It challenges commonality, typicality, and adequacy of the representative.

#### 1.   Plaintiff has demonstrated commonality.

##### a.   NYLIAC's attack on the commonality of Plaintiff's breach of contract claim is misdirected.

To challenge commonality, NYLIAC resorts to mischaracterizing the nature of Plaintiff's contract claim. NYLIAC characterizes the breach as its failure to provide the Designation Notices (so that each class member would have to show, for example, that their damages resulted from the failure to provide the notices). Opp. at 16. In actuality, however, because the policies remained in force under the Statutes, the contract breach by NYLIAC was its failure to pay the death benefits when the insureds subsequently died.

As previously highlighted in Plaintiff's Opposition to Summary Judgement, the court in *Poe* rejected the same effort by an insurer to mischaracterize the same contract claim as here:

> Because Mr. Poe's policies were still in force under California law, Defendant's failure to pay the policy amounts is the breaching conduct. "Contrary to Defendant's arguments, there is no dispute regarding causation: Defendant admittedly refused to pay the benefits of this policy, and this refusal is the breach of contract that caused Plaintiff's damages." *Moriarty*, 2023 WL 5211632, at *4 (S.D. Cal. Aug. 14, 2023); *see also Farley v. Lincoln Benefit Life Co.*, 2023 WL 3007413, at *4 (E.D. Cal. Apr. 18, 2023) ("Questions of causation, i.e., whether the policy would have lapsed even if defendant had complied with the statues, are not relevant to whether there was a violation of a procedural right.); *Thomas v. State Farm*

011050-11/2533385 V1

> *Life Ins. Co.*, No. 20-55231, 2021 WL 4596286, at *1 (9th Cir. Oct. 6, 2021 ("Specifically, State Farm argues that Thomas failed to establish causation because she did not offer any evidence that the policies would not have lapsed even had State Farm complied with sections 10113.71 and 10113.72. But this evidence is not necessary for Thomas to prevail."). This is the case here. Defendant's failure to pay the policy amount is the breaching conduct, and this breach caused Plaintiff's harm.

ECF No. 118 at 20 (quoting 2023 WL 7273741, *4). Framed correctly, the supposed individual issues posited by NYLIAC evaporate.

The existence of the policy contracts need not be individually proven. NYLIAC's own records fully disclose, in summary fashion, the existence of the policies together with the salient characteristics of each (including the date of issuance, amount of benefit, whether it was lapsed for nonpayment of premium, identity of beneficiary, etc.). *See* ECF No. 90 at 22-23 & n.32. NYLIAC does not dispute this, but oddly asserts that Plaintiff must "show that § 10113.72 [is] part of the [insurance] contract." Opp. at 16. However, Plaintiff need not prove—much less on an individual basis—that the California Insurance Code is "part of the contract." By their nature, the Statutes govern NYLIAC's attempted lapse of the policies, no matter what the terms of an individual policy. *Mackey v. Bristol W. Ins. Servs. Of Cal., Inc.*, 105 Cal. App. 4th 1247, 1258 (2003) ("Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation.").

Nor is there any individual issue regarding each class member's "excuse for non-performance." Failure to pay premium was excused by the Statutes themselves, which preclude lapse for nonpayment of premium if the Designation Notices are not provided. As the class is composed entirely of beneficiaries of such policies (again, as shown in

1   NYLIAC's own summary records), this justification for nonperformance will be estab-

2   lished on a classwide basis.

3        Similarly, because NYLIAC's summary records disclose that it lapsed these pol-

4   icies for nonpayment of premium, even though they were in force by operation of law,

5   NYLIAC's breach of the policies will also be proven on a classwide basis. NYLIAC

6   uniformly failed to pay death benefits to any of the class members.

7        Even the method of determining each class member's damages is uniform and

8   easily computed (*i.e.*, the face amount of the policy and the interest accrued from the

9   date of death of the insured, less any applicable setoffs apparent from the policy file).

10  *See Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458, at *10 (C.D. Cal. May

11  1, 2018) ("The legal issues will be straightforward because damages are set by Califor-

12  nia statutes."); Cal. Ins. Code § 10111 ("In life or disability insurance, the only measure

13  of liability and damage is the sum or sums payable in the manner and at the times as

14  provided in the policy to the person entitled thereto"); Cal. Civ. Code § 3289 (prejudg-

15  ment interest). Nor would individual damage determinations defeat commonality or pre-

16  dominance. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

17            **b.    The statutory anti-termination rule is a common issue.**

18       NYLIAC argues that the anti-termination rule is inapplicable to its failure to pro-

19  vide the Designation Notices and, therefore, does not present a common issue. However,

20  NYLIAC's argument is a *non sequitur* regarding commonality because it is a challenge

21  to the *merits*, not whether the claims are appropriate for class certification. The issue of

22  whether the anti-termination rule applies to NYLIAC's failure to provide the Designa-

23  tion Notices is common to all class members—no matter which way the issue is decided.

24       In all events, the argument fails on the merits as the anti-termination rule clearly

25  applies to NYLIAC's failure to provide the Designation Notices. According to

26  NYLIAC, if it failed to provide the Designation Notices (specifically, here, the form

27  required by § 10113.72(a)), then only the *notice* of lapse is ineffective, yet the policy

28

011050-11/2533385 V1

itself may still be lapsed. Opp. at 18. This is both nonsensical and contrary to the plain language of the Statutes. The Statutes state that "*No individual life insurance policy shall lapse or be terminated* for nonpayment of premium unless the insurer … gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a)…." Cal. Ins. Code § 10113.72(c) (emphasis added).[1] As the Ninth Circuit concluded in *Thomas*, "An insurer's failure to comply with these statutory requirements [*i.e.*, the provisions of *both* §§ 10113.71 and 10113.72] means that the policy cannot lapse." *Thomas*, 2021 WL 4596286, at *1.

NYLIAC waves away *Thomas* as lacking "considered analysis" and as contrary to the common law rule that parties must provide an "excuse" for any nonperformance. Opp. at 20. But the Ninth Circuit based its holding on the unambiguous language of the Statutes which, as noted above, says plainly that the policies do not lapse. NYLIAC also forgets that this is a *statute*, which definitionally deviates from common law. The California legislature mandated that policyowners are, effectively, excused from nonpayment of premiums if the insurer does not provide the Designation Notices. To avoid this consequence, all NYLIAC had to do was to send the notices.

NYLIAC also erroneously suggests that *Thomas* has been rejected in the class action context. Opp. at 20. Courts have relied on *Thomas* and its reasoning to certify classes essentially identical to the putative class here. *See Farley*, 2023 WL 3007413, at *4 (relying on *Thomas* to reject argument that individualized causation analysis was

---

[1] NYLIAC does not dispute that failure to provide the designation form required by § 10113.72(a) must be treated identically to a failure to notify the designated third-party. When an insurer does not provide the policyowner with notice of the right to designate, it keeps knowledge of that right out of the hands of the policyowner and thereby ensures that no designee would be notified of an impending payment lapse or termination. If an insurer cannot lapse or terminate a policy when it fails to notify the designated third party, all the more so when it fails to comply with the more basic mandate of providing the Designation Notices in the first place. As the California Supreme Court stated in *McHugh*: the Statutes "create a single, unified pre-termination notice scheme." *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 240 (2021).

011050-11/2533385 V1

1   necessary); *Small v. Allianz Life Ins. Co. of N. Am.*, 2023 WL 4042593, at *1 (C.D. Cal.

2   May 23, 2023) (certifying a class because "[t]he Statutes prohibit insurance companies

3   from lapsing [or] terminating individual life insurance policies" if Designation Notices

4   are not provided, without explicitly citing *Thomas*).

5        Rather, NYLIAC is relying on cases lacking analysis of the statutory language or

6   making obvious errors in applying that language. *See Steen v. Am. Nat'l Ins. Co.*, 2023

7   WL 4004192, *2, 7-8 (C.D. Cal. June 14, 2023) (mistakenly concluding that the anti-

8   termination provisions apply only to certain of the statutory procedural safeguards);

9   *Nieves v. United of Omaha Life Ins. Co.*, 2023 WL 2705836, *8-9 (S.D. Cal. Mar. 28,

10  2023) (relying on a concern that class definition included policies that were intentionally

11  canceled, with no analysis of the Statutes or *Thomas*); *Pitt v. Metro. Tower Life Ins. Co.*,

12  2022 WL 17972167, *8 (S.D. Cal. Dec. 1, 2022) (relying on pre-*McHugh* authority,

13  with no analysis of the Statutes or citation of *Thomas*).

14       As for NYLIAC's assertion that the language of the Statutes should be disre-

15  garded in favor of their purpose, *i.e.*, prevention of "inadvertent" loss of policy cover-

16  age, it confuses the purpose of the Statutes with the method the Legislature chose to best

17  effectuate that purpose. In order to prevent inadvertent loss of coverage, it was necessary

18  to create a statutory scheme that incentivized insurers to provide the mandated Desig-

19  nation Notices to *all* policyowners. This issue—which, again, is merits-based and not

20  really a challenge to commonality—is addressed in full in Plaintiff's summary judgment

21  opposition. ECF No. 118 at 14-18.

22       **c.    NYLIAC cannot dispute that Plaintiff's bad faith claim pre-
             sents common issues.**

23

24       Plaintiff's bad faith claim likewise relies entirely on NYLIAC's blanket conduct,

25  *i.e.*, the unreasonableness of its refusal to pay benefits for policies that remained in force

26  due to its failure to provide the Designation Notices. NYLIAC provides no reason why

27  this is anything other than a common issue, instead arguing that it did not act in bad

28  faith. Its arguments regarding the merits of the claim have no bearing on commonality,

or class certification, and are rebutted substantively in Plaintiff's opposition to NYLIAC's motion for summary judgment. ECF No. 118 at 22-25.

### 2. Mrs. Linhart's claims are typical of those of the class.

NYLIAC's challenge to typicality is that Mr. Linhart supposedly intentionally allowed his policy to lapse which, NYLIAC contends, creates a specific defense to Plaintiff's claim, rendering her atypical. However, as discussed in Plaintiff's summary judgment opposition, the premise that NYLIAC has a cognizable defense to Plaintiff's claim based on an "intentional" lapse is false. Rather, the statutory language is not so qualified. The actual language precludes termination for nonpayment of premium if the Designation Notices are not provided—whether or not the insurer contends the payment lapse was "intentional." ECF No. 118 at 14-18.[2]

### 3. NYLIAC's attacks on Mrs. Linhart's adequacy as a representative fail.

NYLIAC contends that Mrs. Linhart is not an adequate representative of the class because (i) she supposedly has a claim for emotional distress that is different from the class claims, and (ii) she was, at one point, supposedly insufficiently informed of the details of this case. Opp. at 23-24. In both instances, NYLIAC shamelessly misrepresents Mrs. Linhart's testimony.

Asserting that Plaintiff has a standalone emotional distress claim that either differs from the class or creates individual issues, NYLIAC points not to her complaint (which pleads no such claim), but to a few lines of her deposition testimony. *Id.* at 23. What Mrs. Linhart actually said was that she had *experienced* emotional distress, not that she was asserting an emotional distress claim. ECF No. 98-23 at 130:11-19. Then, in the immediately following testimony, which NYLIAC pointedly omits, Mrs. Linhart

---

[2] The record shows that Mr. Linhart did not "intentionally" allow his policy to lapse; rather, he is an exemplar of why the California legislature created a statutory scheme that creates no exception for allegedly "intentional" failures to pay policy premiums. *Id.* at 18-19.

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT. OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

1   stated that what would relieve her emotional distress is payment of the "benefits" owed

2   to her by NYLIAC—*i.e.*, the same relief as every other member of the class. *Id.* at

3   130:10-131:2. In fact, when NYLIAC asked Mrs. Linhart what she expected to get out

4   of the litigation, she replied: "That hopefully I would eventually be paid the benefit that

5   I was – that I felt I was owed." *Id.* at 132:1-5.

6          Likewise meritless is NYLIAC's contention that Mrs. Linhart is insufficiently

7   familiar with the claims of this case. A class representative need only "understand[] the

8   nature of a class action suit, and her responsibilities as representative" to be an adequate

9   plaintiff. *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 602 (C.D. Cal. 2011).

10  "The threshold of knowledge required to qualify as a class representative is low; a party

11  must be familiar with the basic elements of her claim..., and will be deemed inadequate

12  only if she is *startlingly unfamiliar* with the case." *Moeller v. Taco Bell Corp.*, 220

13  F.R.D. 604, 611 (N.D. Cal. 2004) (emphasis added). "Those courts that have found rep-

14  resentatives inadequate have done so because the plaintiffs knew nothing about the case

15  and completely relied on counsel to direct the litigation." *Id.* (citing *Welling v. Alexy*,

16  155 F.R.D. 654, 659 (N.D. Cal. 1994)).

17         Mrs. Linhart has easily satisfied this threshold. She testified she reviewed the

18  complaint before it was filed, ECF No. 98-23 at 99:9-14, understood her duties as a class

19  representative were to be honest and protect the interests of the class, *id.* at 132:20-

20  133:13, and prepared extensively for her deposition, *id.* at 134:1-135:23; *see also Allen

21  v. Hyland's Inc.*, 300 F.R.D. 643, 663 (C.D. Cal. 2014) (representative plaintiffs were

22  adequate in part because they "made themselves available for depositions"). Mrs. Lin-

23  hart demonstrated her layperson understanding of her claims and how they were similar

24  to those of the other unnamed class members. ECF No. 98-23 at 99:19-101:13. She has

25  spent approximately thirty hours of work on this litigation, including responding to writ-

26  ten discovery, looking for documents, sitting for a deposition, and remaining in regular

27  contract with counsel. ECF No. 85-13 ¶¶ 2-6. She remains willing to testify at trial and

28

1  will continue to act in the best interests of the class. *Id.* ¶¶ 7-8.

2      In light of this testimony, NYLIAC must distort the record to portray Mrs. Linhart

3  as "startlingly unfamiliar" with the proceedings. It characterizes her testimony in a dif-

4  ferent case (against John Hancock Life Insurance Co.) as supposedly showing she was

5  unaware this action was pending. Opp. at 24. But that is not what Mrs. Linhart said. Her

6  actual testimony was, "I don't know if the firm that represents me now was – did the

7  same thing with New York Life," ECF No. 92-37 at 75:12-14, referring to whether

8  counsel had contacted NYLIAC before filing the claim, as it did with John Hancock.

9  Indeed, in that same John Hancock deposition, Mrs. Linhart testified regarding her

10 knowledge of her pending case against NYLIAC, demonstrated her understanding of

11 the claims, and even described her efforts to gather documents for production in this

12 case. *Id.* at 74:25-75:5, 76:4-15.

13     NYLIAC also complains that Mrs. Linhart did not review her First Amended

14 Complaint "in any detail" until prior to her deposition, and that she had not reviewed

15 this Motion for Class Certification. Opp. at 24. However, Mrs. Linhart testified that,

16 before it was filed, she did review the complaint with counsel, who explained it to her.

17 ECF No. 98-23 at 98:18-99:8. She then undertook an additional, detailed review prior

18 to her deposition. *Id.* at 99:15-18. Far from showing any deficiency, this is exactly how

19 a layperson class representative should conduct herself. Mrs. Linhart further testified

20 she was aware of the filing of the class certification motion, *id.* at 136:3-7, and it is

21 neither surprising nor disqualifying that, as a non-lawyer, Mrs. Linhart did not review

22 the technical briefs themselves. *Cf. Farley v. Lincoln Benefit Life Co.*, 2023 WL

23 3007413, *6 (E.D. Cal. Apr. 18, 2023) (plaintiff was an adequate class representative

24 even though she did not recall reviewing the complaint prior to filing).

25     Finally, NYLIAC asserts that Ms. Linhart misunderstood the nature of her claims,

26 believing that it would not be a violation of the Statues if NYLIAC had a policy of

27

28

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

providing Designation Notices upon request. Opp. at 24. This portrayal entirely mis-characterizes Ms. Linhart's testimony. What actually happened is that NYLIAC's counsel asked whether Mrs. Linhart would have any "complaint" if her husband had called NYLIAC to ask for a form and, if in response to this hypothetical call, he *had actually been given a form*. ECF No. 98-23 at 106:15-23. Ms. Linhart's answer, a simple "no," was predicated on a specific factual scenario in which her husband had actually received a form; it was not a carte-blanche approval of NYLIAC's general procedure. What's more, Ms. Linhart's answer was fully in line with the theory of the case: if NYLIAC had sent her husband a form, she would, by definition, be excluded from the class. Plaintiff later explained it was her understanding that insurers like NYLIAC must provide such a form without requiring a policyowner to call and ask for one. *Id.* at 122:21-125:16. When, as now, NYLIAC pretended that these answers were contradictory, she clarified, correctly, that in the first exchange "we didn't talk about the obligation to send a form." *Id.* at 124:19-22.[3] Ms. Linhart has not only demonstrated a "general understanding of the claims asserted," *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *18 (N.D. Cal. Dec. 9, 2014), she has also demonstrated a remarkably nuanced and insightful understanding of the claims, far beyond what is required for a class representative.

**B.    The class meets the prerequisites of Rule 23(b)(3).**

> **1.    NYLIAC fails to establish any cognizable challenge to predominance.**

Predominance is not "a uniformity requirement"; the existence of some variance in the claims or defenses relevant to some class members will not defeat predominance. *Delagarza v. Tesoro Refining & Mktg. Co.*, 2011 WL 4017967, *12 (N.D. Cal. Sep. 8, 2011). "In evaluating whether common issues predominate, the operative question is

---

[3] NYLIAC insinuates that Plaintiff's counsel coached the clarification during a break, Opp. at 24, but Mrs. Linhart testified that she did not discuss her prior testimony during the break. Opp. at 24; ECF No. 98-23 at 123:18-124:6.

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT. OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

whether a putative class is 'sufficiently cohesive' to merit representative adjudication." *Id.* at *10 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Once a plaintiff has demonstrated that common issues exist, it is not enough for a defendant to merely posit potential countervailing individualized issues; rather, it must "provide sufficient evidence" to establish that they not only exist but "overwhelm common [issues] and render class certification inappropriate." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067-68 (9th Cir. 2023).

NYLIAC's challenges to predominance fall into three categories. First, it reiterates its contention that the merits of the claims depend on each policyowner's intent, *i.e.*, whether the policy lapse was "intentional." Second, NYLIAC says that there are potential individual exclusions or defenses that may apply to certain putative class members. For example, it speculates that it may have provided Designation Notices upon request to some unknown number of policyowners and, because it did not track this information in a readily retrievable format, this creates an individualized inquiry that conveniently precludes the class action. Third, NYLIAC contends that the necessity of individual damages determination—including offsets for any unpaid premiums or loans taken against the policy—overwhelms the common questions in this matter. None of these assertions defeats predominance.[4]

---

[4] NYLIAC also asserts, in one conclusory sentence, that Plaintiff seeks to certify a "fail-safe" class. Opp. at 26. Such attacks are disfavored in the Ninth Circuit. *See Melgar v. CSK Auto, Inc.*, 681 Fed. Appx. 605, 607 (9th Cir. 2017). It is telling that NYLIAC cannot point to a single case relating to violations of the Statutes, including those with class definitions substantially identical to the one proposed here, in which a court has made such a finding. In all events, because NYLIAC's liability depends on more facts than those in the class definition (*e.g.*, NYLIAC's failure to pay benefits upon death of the insured), this is not a fail-safe class. *Id.*

### a.      Policyowner intent is not an element of "causation" that would defeat predominance.

NYLIAC's primary challenge to predominance is to reiterate its contention that each class member must prove that NYLIAC's violation of the Statutes "caused" the injury, *i.e.*, the policyowner would not have allowed the policy to lapse had a Designation Notice been provided. Again, this misconstrues Plaintiff's claim, which is not for breach of the Statutes but for breach of the policy, which the Statutes' anti-termination provisions prevented from lapsing. Unable to engage the logic of Plaintiff's argument, NYLIAC asserts that the weight of authority favors its view of causation. However, it relies on cases (mostly by living policyowners for breach of the Statutes, and not by beneficiaries for failure to pay death benefits on policies that remained in force by operation of law) in which the court applied a non-existent statutory exception for allegedly "intentional" lapses, and thus focused on the wrong breach. Opp. at 25.[5]

Indeed, more recent authority has recognized that those cases are not persuasive, because they ignore that the policies never lapsed due to the anti-termination provisions, so that the purported cause of the lapse is immaterial to the breach for failure to pay death benefits. *See, e.g.*, *Grundstrom v. Wilco Life Ins. Co.*, 2023 WL 5723674, at *1 (N.D. Cal. Sept. 5, 2023) ("[T]he Court finds persuasive the authority … holding a defendant insurer's failure to comply with the above-referenced third-party-designee requirement sufficient to support a breach of contract claim, irrespective of the plaintiff's

---

[5] *See Steen*, 2023 WL 4004192, at *7; *Nieves*, 2023 WL 2705836, at *9; *Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 164 (N.D. Cal. 2022); *Pitt*, 2022 WL 17972167, at *7; *Moriarty v. Am. Gen. Life Ins. Co.*, 2022 WL 6584150, *3 (S.D. Cal. Sept. 27, 2022); *Clemons v. Transamerica Premier Life Ins. Co.*, 2023 WL 6535247, *7 (Cal. Super. Ct. Aug. 9, 2023). NYLIAC's reliance on *Moreland* is misplaced because the court denied class certification for lack of typicality, not predominance. *Moreland v. Prudential Ins. Co. of Am.*, 2023 WL 6450421, at *6 (N.D. Cal. Sept. 29, 2023) ("Moreland's unique situation precludes finding typicality satisfied here.").

011050-11/2533385 V1

1    ability to show a causal relationship between the lack of statutorily required notice and

2    the lapse.”).

3         This trend includes both *Moriarty* and *Poe*, in which the courts backtracked from

4    their prior endorsement of this “causation” analysis, and instead found that the Statutes’

5    anti-termination provisions preclude such inquiry. *Poe*, 2023 WL 7273741, at *4; *Mo-*

6    *riarty*, 2023 WL 5211632, at *4. Again, this is discussed in greater detail in Plaintiff’s

7    opposition to NYLIAC’s summary judgment motion. ECF No. 118 at 19-22.

8         Here, NYLIAC adds that this Court cannot risk “awarding damages to … unin-

9    jured class members,” Opp. at 28, but it is confusing class definition with the California

10   legislature’s policy choice. Granted that the class must include, to the extent possible,

11   only those who have suffered legally cognizable injury. Plaintiff’s class definition ex-

12   cludes policies that were surrendered or otherwise terminated in writing by the policy-

13   owner. ECF No. 90 at 13 n.19. Such policies are not within the Statutes’ application to

14   policies that lapse due to non-payment of premium.  However, the Statutes establish that

15   *all* policies for which Designation Notices were not provided remain in force and do not

16   lapse for nonpayment of premiums, and NYLIAC’s failure to pay benefits upon the

17   death of those insureds injured the beneficiaries.

18        NYLIAC may regard some of those beneficiaries “uninjured,” because the pol-

19   icyowners supposedly intended the lapse, but the legislature decreed otherwise. In other

20   words, whether or not NYLIAC thinks these beneficiaries *should* have been afforded

21   the benefit of the anti-termination provisions is irrelevant to whether they *are* covered

22   by those provisions. And, again, to avoid this result, all NYLIAC had to do was *send*

23   *the Designation Notices*, █████████████████████████████

      **b.    NYLIAC’s speculation regarding potential individual issues**
24          **does not defeat predominance.**

25

26        NYLIAC speculates that it is possible that some putative class members may have

27   called its toll-free number to request, and were provided, Designation Notices. Opp. at

28   26. This, NYLIAC argues, creates the necessity of an “individualized analysis” for each

PLTF’S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

class member to determine whether those circumstances occurred. This is not a predominance issue. Rather, because only policies for which no Designation Notices were provided fall within the class definition, NYLIAC's argument is an attempt to assert that the members of the class are supposedly not readily ascertainable.

However, as addressed in Plaintiff's opening memorandum, ECF No. 90 at 14 n.20, the Ninth Circuit has squarely rejected the notion that Rule 23 contains an "ascertainability" requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-26 & n. 4 (9th Cir. 2017). Instead, any issues regarding the identities of claimants are determined "if and when they file claims for damages," *i.e.*, as part of the claims administration process. *Id.* at 1131 ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."); *see also Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 & n.16 (C.D. Cal. 2021) (because the "proposed claims administration procedure allows [defendant] to challenge the class membership of claimants during class administration," such issues do not "affect predominance or overcome the superiority of a class action").

Even if NYLIAC's contention were relevant to class certification, and not just claims administration, it would fail for lack of proof. Although NYLIAC asserts it had a practice of providing Designation Notice forms to any policyowner who requested one (a policy that fell well short of the Statutes' requirement that NYLIAC provide a form to all existing policyowners), it does not identify even a single instance in which this occurred. Indeed, per the parties' stipulation, NYLIAC has produced a sample consisting of █ policy files of the roughly █ policies whose beneficiaries are likely to be part of the class. ECF No. 82 at 3-5. NYLIAC does not contend that any one of them reflects a Designation Notice provided on request.

This falls well short of NYLIAC's burden to "provide sufficient evidence" that the occurrence of Designation Notices provided on request "overwhelm[s]" the otherwise predominant common issues. *See Van*, 61 F.4th at 1067-68. In *Van*, the defendant

- 14 -

opposed certification on the grounds that some putative class members were not deceived by its allegedly improper sales tax practices, having been informed of the true situation prior to paying the tax, hence a "purchaser-by-purchaser assessment of the voluntariness of the payments makes individualized issues predominate over class issues." *Id.* at 1064. However, the Ninth Circuit affirmed the finding of predominance, and certification of the class, because the defendant failed to prove "with certainty" that the claims of any specific putative class members were barred by the alleged individual issue. *Id.* at 1068; *see also Bazarganfard v. Club 360 LLC*, 344 F.R.D. 411, 426 (C.D. Cal. 2023) (rejecting a challenge to preponderance based on purported individualized defense as "speculation regarding individualized issues unsupported by evidence").

There is yet another reason that this challenge to predominance fails: to the extent this is a real issue, it is one of NYLIAC's own making, in violation of its obligations under the California Insurance Code. That is, NYLIAC contends it must engage in an "intricate," manual review of its files to determine whether any Designation Notices were provided pursuant to the policyowner's request, because it has not coded these notices. Opp. at 26; *see also* ECF No. 92-39 at 100:3-19. If the necessary information in NYLIAC's files is not readily available, NYLIAC has only itself to blame. The California Insurance Code not only requires insurers to maintain records of all correspondence to or from their policyowners, including any that may pertain to the termination of the policy, but to have that information "readily available." Cal. Ins. Code §§ 10508(a), (c)(6), (c)(7), 10508.5. NYLIAC is not entitled to disregard its statutory obligation, then claim the lack of "readily available" information creates individual issues which insulate NYLIAC from this class action.[6]

In addition to its Designation-Notice-provided-on-request scenario, NYLIAC speculates that there could be other issues that might apply to some class members, such

_____

[6] Nor is it plausible that checking ████████ files for the presence of such records could really "overwhelm" the substantial common issues that predominate here.

1   as questions regarding proper beneficiary and supposed failure to mitigate. Opp. at 30-

2   32. NYLIAC presents no evidence that these purported issues exist for any putative

3   class member, much less with sufficient frequency to overwhelm the common issues

4   here.[7] *Delagarza*, 2011 WL 4017967, at *11 (finding predominance because "excep-

5   tions to the general rule [*i.e.*, the general policies giving rise to the claim] appear rare");

6   *Van*, 61 F.4th at 1067-68; *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 676 (N.D.

7   Cal. 2011) ("While [defendant] raises factual scenarios under which some of its infor-

8   mation might not be accurate, these factual scenarios are not supported by evidence in

9   the record. They are speculative and do not defeat class certification.").

10               **c.       Damages calculations do not defeat predominance.**

11          NYLIAC argues that the determination of damages is so individualized that pre-

12   dominance is not met. However, it is "well settled" in the Ninth Circuit that "the need

13   for individualized findings as to the amount of damages does not defeat class certifica-

14   tion." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)

15   (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010);

16   *Leyva*, 716 F.3d at 514). Particularly when the damages determination for each class

17   member involves only "a straightforward calculation," which can be determined from

18   the records of the defendant, it does not defeat predominance. *Local Joint Exec. Bd. of*

19   *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

20   2001) (reversing denial of class certification).

21          As demonstrated in the report of Plaintiff's expert, the damages calculation here

22   is mere arithmetic, determinable from the contents of NYLIAC's own records. The

23

24          [7] NYLIAC's speculation of disputes regarding who is the proper beneficiary of a
     given policy also has nothing to do with the merits of the claims against NYLIAC and
25   is therefore irrelevant to class certification. *See In re Medical Capital Sec. Litig.*, 2011
26   WL 5067208, *8 (C.D. Cal. Jul. 26, 2011) (potential for indemnity claims by defendants
     against third parties did not defeat class certification because they "will arise only if
27   Defendants are found liable for Plaintiffs' claims").

28

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

amount due to a beneficiary begins with the death benefit due, plus statutory interest. ECF No. 90 at 17 & n.26. NYLIAC responds that certain set-offs may apply, *e.g.*, unpaid premiums and loans that might have been taken against the policy. Opp. at 29-30. However, it does not and cannot dispute that this information, too, is (or should be) readily available from NYLIAC's own files and is simply more arithmetic. Indeed, in *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013), the Ninth Circuit held that predominance was established even though determining the fact and amount of damages required examination of "Defendant's records of each employee's clock-in and clock-out times, how much he was paid, and whether he was staffed at a single guard post … to extrapolate whether his meal break was on- or off-duty." *Id.* at 966-67 ("In light of these records, it would not be difficult to determine USSA's liability to individual plaintiffs, nor would it be overly burdensome to calculate damages.").

Nor has NYLIAC evidenced that any of these issues would preclude recovery for any putative class member, much less on a scale that would overwhelm the substantial and predominant common issues here. *See Bazarganfard*, 344 F.R.D. at 427 (rejecting defendant's challenge to predominance for failure to evidence alleged individualized damage issues). NYLIAC has fallen far short of demonstrating that this case is an exception to the Ninth Circuit rule that variances in individual class members' damage calculations does not defeat predominance.

The bad faith claim implicates no individual issues at all. The damages for an insurer's bad faith in this context, *i.e.*, denial of benefits as "part of a conscious course of conduct, firmly grounded in established company policy," consist of punitive damages and an award of attorneys' fees. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (quoting *Neal v. Farmers Inc. Exch.*, 21 Cal. 3d 910, 923 (1978)); *Cassim v. Allstate Inc. Co.*, 33 Cal. 4th 780, 806 (2004). Fees will, obviously, be paid to counsel, and punitive damages can be divided among the class proportionate to their recovery or in any other manner the Court deems just.

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

### 2.       Class adjudication of the claims is plainly superior to individual lawsuits.

In challenging the superiority element of Rule 23(b)(3), NYLIAC argues that the ██████ of members of this putative class, composed primarily of widows from whom NYLIAC has concealed the existence of their claims, should instead bring their claims individually. As discussed in Plaintiff's opening brief, the essence of the superiority requirement is efficiency, *i.e.*, judicial economy. ECF No. 90 at 27. Yet NYLIAC has virtually nothing to say about efficiency other than to repeat its evidence-free assertions regarding hypothetical individual issues, including why judicial economy would be better served by hundreds of individual lawsuits. Instead, NYLIAC argues principally that the size of the damage claims of some putative class members precludes class action treatment. However, there is no such rule. To the contrary, other interests—such as efficiency, consistency of judgments, and providing relief to individuals ignorant of their claims—can establish superiority without regard to the size of the claims. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).[8]

No case cited by NYLIAC held that claims comparable to those here were ineligible for class action treatment.[9] Indeed, it is telling that NYLIAC can point to no other case involving the Statutes in which the court found superiority lacking. By contrast,

---

[8] There is no excuse for NYLIAC's distortion. Its own authority acknowledges this. *See, e.g.*, *Cole v. Gene By Gene, Ltd.*, 322 F.R.D. 500, 507 (D. Alaska 2017) ("A class action is superior when the claimed damages for each individual claimant are too small to be pursued individually. A class action may *also* be superior to other forms of litigation when it achieves economy of time, effort, and expense by consolidating individual lawsuits.") (cleaned up, emphasis added).

[9] In *Zinser*, the Ninth Circuit did not find—as NYLIAC would have it—that the existence of claims in excess of $50,000 precluded a finding of superiority. Rather, it noted that the plaintiff had failed to substantiate this factor in favor of superiority because it did not show the size of the claims at all, having alleged only that the amount in controversy "exceed[ed]" $50,000. *Zinser v. Accufix Resch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001).

numerous courts have found classes comparable to the one proposed here to be superior to a multiplicity of individual actions. *See, e.g., Small*, 2023 WL 4042593, at *4 (superiority established because, *inter alia*, class certification "will reduce litigation costs, and will promote judicial efficiency by resolving the claims in one stroke"); *Bentley*, 2018 WL 3357458, at *11 ("[K]eeping this case as a class action will allow this Court to resolve the issues raised in a consistent manner, and avoid inconsistent judgments from courts across the country.").

It is hardly surprising that these courts have found class treatment superior. Not only are there obvious efficiencies, as nearly all of the issues here are common, but the putative class members are ill-situated to litigate even potentially substantial claims (which are not necessarily so substantial considering that a plaintiff faces a sophisticated, well-heeled, aggressive litigant like NYLIAC). The class members are generally elderly widows, with widely varying degrees of sophistication, who are beneficiaries and thus likely unaware of NYLIAC's failure to provide Designation Notices, much less the specific mandates of the Statutes. *Small*, 2023 WL 4042593, at *4 ("[C]lass adjudication, here, is superior to individual claim adjudication because it will provide notice to class members who, otherwise, would not know that they have a claim…."). This sharply distinguishes the present matter from the cases NYLIAC cites, involving sophisticated people or entities who were fully aware of that they were harmed, in some instances with the benefit of fee-shifting provisions.[10]

Similarly, NYLIAC focuses on the size of the individual claims but, in each case it cites, there were other factors precluding a finding of superiority. The courts evaluated the size of the claims not to disqualify them from class action treatment, but to show

---

[10] *See, e.g., Cole*, 322 F.R.D. at 508 (Alaska's prevailing-party fee-shifting provision "may incentivize a plaintiff's attorney to pursue this type of case"); *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 651 (N.D. Cal. 2018) ("[I]ndividual claims would entail parties sophisticated enough to navigate early-phase investment in a private biotechnology startup….").

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

that certification was not necessary—despite the presence of those other factors—to ensure that the injured parties had an opportunity and interest to pursue those claims.[11] By contrast, here, ██ of the policies at issue (approximately ██ of the total) have a face value less than or equal to ██ . *See* ECF No. 90-3. Regardless of the size of the potential claims, class certification is likely the only way the vast majority of putative class members will obtain relief. NYLIAC points to a handful of individual cases that have been filed against insurers for violating the Statues, but this only highlights their paucity. At least hundreds—and more likely thousands—of beneficiaries of life insurance policies issued in California have been injured by insurers like NYLIAC who disregarded their statutory obligations and fail to notify the beneficiaries that they even have claims. They should not be denied what is likely their only practical opportunity for redress.

---

[11] *See Zinser*, 253 F.3d at 1192 ("In view of the formidable complexities here inherent in trying claims of negligence, products liability, and medical monitoring with differing state laws, Zinser does not persuade us that class treatment is superior to individual adjudication."); *Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2019 WL 3244487, *2 (E.D. Cal. Apr. 17, 2019) ("[T]his newly defined class presents many of the same manageability concerns that the court confronted in its previous order."); *Colman,* 325 F.R.D. at 651 ("[C]ertifying a narrow class hardly increases efficiency since class members would still need to bring their fraud claims individually."); *Cole*, 322 F.R.D. at 508 ("[T]here is no indication that a class action would achieve greater economy of time, effort, or expense."); *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484 (N.D. Cal. 2017) ("[A] class action [would be] no more efficient or convenient than numerous individual trials."); *Litty v. Merrill Lynch & Co., Inc.*, 2014 WL 5904907, *7 (C.D. Cal. Aug. 4, 2014) ("[T]he numerous individualized issues preclude a finding that a class action is superior…."); *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 548 (D. Nev. 2013) ("This is not a manageable class."); *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) ("Given the necessary number of individual inquiries, a class action cannot be a superior form of adjudication.").

011050-11/2533385 V1

## III.   CONCLUSION

Mrs. Linhart respectfully requests that the Court enter an order certifying her proposed class, appointing her as class representative, and appointing as class counsel Joseph M. Vanek of Sperling & Slater LLC, Christopher R. Pitoun of Hagens Berman Sobol Shapiro LLP, and David Klevatt of Klevatt & Associates, LLC.

Dated:  April 19, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/   *Christopher R. Pitoun*
    Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Abigail D. Pershing (SBN 346467)
abigailp@hbsslaw.com
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

David S. Klevatt (*pro hac vice*)
dklevatt@insurancelawyer.com
KLEVATT & ASSOCIATES, LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60601-1604
Telephone: (312) 782-9090

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph M. Vanek (*pro hac vice*)
jvanek@sperling-law.com
Mitchell H. Macknin (*pro hac vice*)
mhmacknin@sperling-law.com
Daniel A. Shmikler (*pro hac vice*)
dshmikler@sperling-law.com
John P. Bjork (*pro hac vice*)
jbjork@sperling-law.com
Martin V. Sinclair (*pro hac vice*)
mvs@sperling-law.com
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200

*Attorneys for Plaintiff Barbara Linhart and Proposed Class*

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL
011050-11/2533385 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Barbara Linhart and Proposed Class, certifies that this brief contains 6,972 words and complies with the word limit of L.R. 11-6.1.

DATED: April 19, 2023

/s/  Christopher R. Pitoun
Christopher R. Pitoun

PLTF'S REPLY ISO MOT. FOR CLASS CERT AND APPT.
OF CLASS REP. AND CLASS COUNSEL

011050-11/2533385 V1