O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA LINHART, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE COMPANY;<br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION;<br>LIFE INSURANCE COMPANY OF NORTH AMERICA;<br>NYLIFE INSURANCE COMPANY OF ARIZONA; and<br>DOES 1 to 50, inclusive,<br><br>    Defendants. | Case No. 5:21-cv-01640-JWH-DTB<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL [ECF No. 85] AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 99]** |

## I. SUMMARY OF DECISION

Before the Court are two motions:

- the motion of Plaintiff Barbara Linhart for class certification and appointment of class representative and class counsel;[1] and
- the motion of Defendant New York Life Insurance and Annuity Corporation ("NYLIAC") for Summary Judgment.[2]

After considering the papers filed in support and in opposition,[3] as well as the argument of counsel during the hearing on the Motions in July 2024, the Court orders that NYLIAC's Summary Judgment Motion is **GRANTED** and that Linhart's Class Certification Motion is **DENIED**, for the reasons set forth below.

## II. BACKGROUND

### A. Procedural History

Linhart filed her Complaint commencing this action in September 2021. In December 2021, Linhart filed her Amended Complaint, in which she asserts two claims for relief: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. NYLIAC is the only named defendant remaining in this action.[4]

---

[1]   Pl.'s Mot. for Class Cert. and Appointment of Class Representative and Class Counsel (the "Class Certification Motion") [ECF No. 85].

[2]   Def.'s Mot. for Summ. J. (the "Summary Judgment Motion") [ECF No. 99].

[3]   The Court considered the documents of record in this action, including the following papers: (1) First Am. Compl. (the "Amended Complaint") (including its attachments) [ECF No. 38]; (2) Class Certification Motion (including its attachments); (3) Def.'s Opp'n to Class Certification Motion (the "Class Certification Opposition") (including its attachments) [ECF No. 92]; (4) Def.'s Req. for Judicial Notice in Supp. of Class Certification Opposition (including its attachments) [ECF No. 93]; (5) Pl.'s Reply in Supp. of Class Certification Motion [ECF No. 124]; (6) Summary Judgment Motion; (7) Joint Statement (the "Joint Statement") [ECF No. 106]; (8) Pl.'s Opp'n to Summary Judgment Motion (the "Summary Judgment Opposition") [ECF No. 118]; and (9) Def.'s Reply in Supp. of Summary Judgment Motion (the "Summary Judgment Reply") [ECF No. 130].

[4]   When Linhart amended her Complaint in December 2021, she dismissed Defendants Life Insurance Company of North America and NYLife Insurance Company of Arizona. *See* Order Approving Filing of First Am. Compl. [ECF No. 37]. In August 2022, the Court granted the motion of Defendant New York Life Insurance Company to dismiss the Amended Complaint. *See* Order Granting Def.'s Mot. to Dismiss Pl.'s Amended Compl. [ECF No. 60]. When Linhart

In January 2024, Linhart filed her Class Certification Motion. In March 2024, NYLIAC filed its Summary Judgment Motion. Both Motions are fully briefed.

### B. Factual Background

#### 1. The Policy

In August 2007, James Linhart applied to NYLIAC for a life insurance policy.[5] In response, NYLIAC issued Policy No. 62 970 515 to James,[6] with a Policy Date of August 1, 2007.[7] James was the Policy's owner, as well as the named insured.[8] Linhart was the sole beneficiary under the Policy.[9]

The Policy was a "Universal Life" insurance policy with an initial face amount of $350,000.[10] Under the Policy's terms, James did not have to make premium payments on a set schedule.[11] Instead, James could pay premiums at any interval, and in almost any amount.[12]

#### 2. Coverage under the Policy

For James to maintain coverage under the Policy, its Cash Surrender Value needed to be sufficient to satisfy the next Monthly Deduction Charge.[13] The Cash Surrender Value was equal to the Account Value, less certain Surrender Charges.[14] Premium payments, and accruing interest, were added to the Account Value.[15] Every month, NYLIAC deducted the Monthly Deduction Charge from the Account Value.[16] The

---

failed to file a Second Amended Complaint, the Court dismissed Defendant New York Life Insurance Company with prejudice. *See* Order [ECF No. 65].

[5]   Joint Statement No. 1; *id.*, Part A ("Joint Exhibit Part A") [ECF No. 106-1], Ex. 1 3-15 (CM/ECF pagination is used herein to denote the page number for exhibits).

[6]   The Court refers to the insured—James Linhart—by his first name to distinguish him from Plaintiff Barbara Linhart. The Court intends no disrespect.

[7]   Joint Statement Nos. 2 & 156; Joint Exhibit Part A, Ex. 2 17-68 (the "Policy").

[8]   Joint Statement No. 3; Policy 19.

[9]   Joint Statement No. 160; Policy 19.

[10]  Joint Statement Nos. 4, 5, & 156; Policy 19.

[11]  Joint Statement No. 6; Policy 39-41.

[12]  Joint Statement No. 7; Policy 39-41.

[13]  Joint Statement No. 16; Policy 43.

[14]  Joint Statement No. 14; Policy 45.

[15]  Joint Statement No. 9; Policy 45.

[16]  Joint Statement Nos. 8-11; Policy 45 & 51.

Monthly Deduction Charge included the monthly cost of insurance for the Policy, in addition to certain fees and other charges agreed upon in the Policy.[17]

The Policy provided that if "the Cash Surrender Value is less than the Monthly Deduction Charge for the next policy month, the policy will continue for a Late Period of 62 days[.]"[18] If NYLIAC did "not receive payment before the end of the Late Period, the policy will end and there will be no more benefits under the policy or any attached riders."[19] NYLIAC "will mail a notice to [the policyholder] at [the policyholder's] last known address at least 31 days before the end of the Late Period."[20] NYLIAC "will also mail a copy of the notice to the last known address of any assignee on [its] records."[21]

### 3. Annual Policy Summary

The Policy Year ran from August 1 to July 31 of the next year.[22] The Policy provides that:

> Each policy year after the first, while this policy is in force and the Insured is living, we will send a written report to you within 30 days after the Policy Anniversary. It will show, as of that Anniversary, the Account Value, the Cash Surrender Value and the amount of any unpaid loan and accrued loan interest. This report will also give you any other facts required by state law or regulation.[23]

From 2013 to 2021 (Policy Years 6 through 14), NYLIAC mailed to James an "Annual Policy Summary" at the end of each Policy Year.[24] NYLIAC mailed those

---

[17]   Joint Statement No. 11; Policy 51.

[18]   Joint Statement No. 16; Policy 43.

[19]   Joint Statement No. 16; Policy 43.

[20]   Joint Statement No. 16; Policy 43.

[21]   Joint Statement No. 16; Policy 43.

[22]   Joint Statement No. 18; Joint Exhibit Part C [ECF No. 106-3], Ex. 76 (Decl. of Frank Citera in Supp. of Summary Judgment Motion (the "Citera Declaration")) ¶ 7.

[23]   Joint Statement No. 17; Policy 59.

[24]   Joint Statement Nos. 20-28; Joint Exhibit Part A, Ex. 3 (the "Annual Policy Summary Year 6") 70-75; id., Ex. 4 (the "Annual Policy Summary Year 7") 77-81; id., Ex. 5 (the "Annual Policy Summary Year 8") 83-88; id., Ex. 6 (the "Annual Policy Summary Year 9") 90-95; id., Ex. 7 (the "Annual Policy Summary Year 10") 97-102; id., Ex. 8 (the "Annual Policy Summary Year 11") 104-08; id., Ex. 9 (the "Annual Policy Summary Year 12") 110-15; id., Ex. 10 (the "Annual Policy Summary Year 13") 117-21; id., Ex. 11 (the "Annual Policy Summary Year 14") 123-27; Citera Declaration ¶¶ 10-18. To the extent that Linhart objects to that evidence based upon purported lack of knowledge, in the absence of any additional factual support, her objections are **OVERRULED**. See Fed. Election Comm'n v. Toledano, 317 F.3d 939, 950 (9th Cir.

Annual Policy Summaries to James's address of record for each year, and none was ever returned as "undeliverable."[25] Each Annual Policy Summary contained, among other things: information about the Account Value and Cash Surrender Value as of the end the Policy Year; a transaction history for the Policy Year, including premiums paid, interest credited, the Cost of Insurance deductions, and fees and other charges; and calculations regarding when the Policy would lapse under certain assumptions.[26]

The following notice appeared on page two of each Annual Policy Summary:

**New Jersey, Vermont, Florida, Maine & California Residents**—If the insured covered by this policy and/or policyowner is age 62 or older (NJ), age 64 or older (VT) or any age (FL, ME, and CA), you can designate a third party to whom we will mail copies of premium, cancellation and lapse notices. Please call a Customer Service Representative at the toll-free number on page one for more information regarding this procedure.[27]

NYLIAC used a size eight font for that notice.[28] NYLIAC placed that notice at the end of three columns of insurance-related definitions.[29] James never designated a secondary recipient for premium, cancellation, or pre-lapse notices.[30]

### 4. Insufficient Funds

For Policy Years 10-14, James's combined annual premiums and interest were never sufficient to pay for Monthly Deduction Charges.[31] Between December 20, 2016,

---

2002), *as amended on denial of reh'g* (Jan. 30, 2003) ("[F]ailure to remember and lack of knowledge are not sufficient to create a genuine dispute. The district court was entitled to treat these facts as established for purposes of summary judgment.").

[25] Joint Statement Nos. 20-43; Annual Policy Summary Year 6 70; Annual Policy Summary Year 7 77; Annual Policy Summary Year 8 83; Annual Policy Summary Year 9 90; Annual Policy Summary Year 10 97; Annual Policy Summary Year 11 104; Annual Policy Summary Year 12 110; Annual Policy Summary Year 13 117; Annual Policy Summary Year 14 123; Citera Declaration ¶¶ 10-18, 80, & 81; Joint Exhibit Part A, Ex. 32 208; *id.*, Ex. 16 137.

[26] Joint Statement No. 44; Annual Policy Summary Years 6-14.

[27] Joint Statement No. 45; Annual Policy Summary Year 6 71; Annual Policy Summary Year 7 78; Annual Policy Summary Year 8 84; Annual Policy Summary Year 9 91; Annual Policy Summary Year 10 98; Annual Policy Summary Year 11 105; Annual Policy Summary Year 12 111; Annual Policy Summary Year 13 118; and Annual Policy Summary Year 14 124.

[28] Joint Statement Nos. 46 & 140.

[29] *Id.* at No. 141.

[30] *Id.* at No. 49; Citera Declaration ¶ 24.

[31] Joint Statement No. 51; Citera Declaration ¶¶ 29-35.

and April 7, 2020, NYLIAC received zero premiums for the Policy.[32] For Policy Years 10-14, the Policy's Account Value was used to pay for coverage under the Policy.[33] Consequently, the Cash Surrender Value decreased each of those years.

### a.   Coverage During Policy Year 13

In March, June, and July of 2020, NYLIAC sent letters to James to warn him that his Policy was "in danger of lapsing."[34] In response, James paid premiums sufficient to keep his coverage for only one or two months at a time.[35]

The Annual Policy Summary Year 13 contained the following warning to James:

> If you make no **partial surrenders** or **loans**, your policy will continue to be in effect until:
>
> 1. **May 2021**, assuming that you make **all planned Monthly premium payments of $502.10** and that the **current** interest rate is credited and the **fees and charges** that are currently utilized continue to be deducted. **IMPORTANT: PLEASE NOTE THAT UNDER THESE ASSUMPTIONS YOUR POLICY WILL LAPSE BEFORE THE NEXT ANNIVERSARY.**[36]

### b.   Coverage During Policy Year 14

In April 2021, James sent a premium payment to NYLIAC.[37] That remittance was the last payment that NYLIAC received for the Policy.[38] That payment satisfied the

---

[32] Joint Statement No. 52; Citera Declaration ¶ 33. The Court considers that fact to be undisputed. Linhart's objections—asserting that the "Policy continued to provide coverage" and that a NYLIAC representative told Linhart that he had "plenty of Cash Value" on his Policy"—are irrelevant to the proffered fact and the supporting evidence.

[33] Joint Statement Nos. 53 & 54; Citera Declaration ¶¶ 34 & 35. The Court considers those facts to be undisputed. Linhart's objections—contending that the Policy still provided coverage and that Linhart retained the right to remit premium payments at any time—are irrelevant to the proffered facts and the supporting evidence.

[34] Joint Statement Nos. 58, 60, & 62; Joint Exhibit Part A, Ex. 17 140-142; *id.*, Ex. 18 144-146; *id.*, Ex. 20 152-154.

[35] Joint Statement No. 63; Citera Declaration ¶¶ 37-65. The Court considers that fact to be undisputed. Linhart's objections—contending that James could pay premiums at any interval and in almost any amount—are irrelevant to the proffered fact and the supporting evidence.

[36] Joint Statement No. 64; Annual Policy Summary Year 13 121.

[37] Joint Statement No. 83.

[38] *Id.* at No. 84; Citera Declaration ¶ 64. To the extent that Linhart objects to that evidence based upon her purported lack of knowledge, in the absence of any additional factual support, her

Monthly Deduction Charge for April through May 2021, but not for any time after May 2021.[39]

On April 27, 2021, James called NYLIAC to discuss the Policy.[40] James asked the NYLIAC representative whether he could "lower the policy amount[,]" and the NYLIAC representative suggested that he speak with his insurance agent.[41]

### i. June 1, 2021, Letter

On or about June 1, 2021, NYLIAC sent a letter to James by first-class U.S. mail, which was not returned to NYLIAC as undeliverable.[42] That letter warned James that his Policy "is in danger of lapsing."[43] The Policy "does not have sufficient cash surrender value to pay the monthly deduction charges due."[44] That letter contained the following statements:

> Limited coverage may continue based on the cash surrender value as of June 1, 2021. Your policy is in the grace period. You purchased this insurance for important financial protection. If you want to continue the valuable coverage this policy offers, you have to act now!

---

objection is **OVERRULED**. *See Fed. Election Comm'n*, 317 F.3d at 950. To the extent that Linhart objects to that evidence because it requires "scientific, technical, or other specialized knowledge," the Court agrees with NYLIAC's assertions that that fact and the supporting evidence "do[] not require insurance expertise or scientific, technical, or other specialized knowledge to know whether NYLIAC received a payment."

[39] Joint Statement No. 86; Citera Declaration ¶ 65. To the extent that Linhart objects to that evidence based upon her purported lack of knowledge, in the absence of any additional factual support, her objection is **OVERRULED**. *See Fed. Election Comm'n*, 317 F.3d at 950. To the extent that Linhart objects to that evidence because it requires "scientific, technical, or other specialized knowledge," the Court agrees with NYLIAC's assertions that that fact and the supporting evidence "do[] not require insurance expertise or scientific, technical, or other specialized knowledge to know whether premium payments satisfied the Monthly Deduction Charge."

[40] Joint Statement No. 78; Joint Exhibit Part A, Ex. 30 (the "Phone Call Transcript April 2021") 197-201.

[41] Joint Statement Nos. 80-82; Phone Call Transcript 199:11-24.

[42] Joint Statement Nos. 88 & 92; Joint Exhibit Part A, Ex. 33 (the "June 1, 2021, Letter") 214-216. To the extent that Linhart objects to that evidence based upon her purported lack of knowledge, in the absence of any additional factual support, her objection is **OVERRULED**. *See Fed. Election Comm'n*, 317 F.3d at 950.

[43] June 1, 2021, Letter 214.

[44] *Id.*

> **To keep your coverage in force, please mail your $1,300.56 along with the attached Policy Statement in the enclosed return envelope no later than August 3, 2021.** If payment is received after the above date we may not be able to reinstate your policy without evidence of insurability.[45]

### ii.     June 21, 2021, Premium Notice

On or about June 21, 2021, NYLIAC mailed a Premium Notice to James, which was a regularly scheduled reminder for his July 2021 premium.[46] The minimum premium due for the period from July 1 to August 1, 2021, was $1,261.44, and that sum was due by July 11, 2021.[47] The Notice contained the following statements on the first page:

> The amount due is the minimum monthly premium necessary to keep your policy in force until the next policy anniversary.  We urge you to pay more than the minimum amount in order to avoid lapsing in the future and ending your coverage.[48]

The Notice contained the following statements on the second page:

- You are being billed for the minimum premium for this policy.
- Paying the minimum premium for the period indicated here has no effect on any previous lapse warning you may have received.
- Because your policy is a flexible premium policy, you are responsible for making sure that the cash surrender value of your policy is sufficient to pay the monthly deduction charges needed to keep your policy, or any applicable riders, in force.
- If your cash surrender value becomes too low to pay the monthly deduction charges, you will enter a late period.  If payment isn't received by the end of your late period, your coverage, and all of its benefits, will be terminated except as otherwise stated in your policy.[49]

---

[45]     *Id.*

[46]     Joint Statement Nos. 93 & 94; Joint Exhibit Part A, Ex. 35 (the "June 21, 2021, Premium Notice") 221-223.  To the extent that Linhart objects to that evidence based upon her purported lack of knowledge, in the absence of any additional factual support, her objection is **OVERRULED**.  *See Fed. Election Comm'n*, 317 F.3d at 950.

[47]     June 21, 2021, Premium Notice 221.

[48]     *Id.*

[49]     *Id.* at 222.

### iii. June 28, 2021, Phone Call

On June 28, 2021, James and a representative of his insurance agent called NYLIAC.[50] Although they discussed the prospect of James surrendering the Policy, no formal action was taken.[51]

### iv. July 1, 2021, Letter

On or about July 1, 2021, NYLIAC sent a letter to James by first-class U.S. mail, which was not returned to NYLIAC as undeliverable.[52] That letter once again warned James that his Policy "is in danger of lapsing."[53] To maintain coverage, James needed to mail the total amount due—*i.e.*, $1,300.56—to NYLIAC, along with the attached Policy Statement, no later than August 3, 2021.[54] The letter noted that NYLIAC previously mailed a letter to James that informed him that his Policy "does not have sufficient cash surrender value to pay the Monthly Deduction Charges due, and [the Policy] may lapse."[55] The letter stated:

> If payment is received after the above date and your policy does lapse, all coverage under this policy will end and there will be no cash value or life insurance benefit. We would also have to report any taxable gain to the IRS at this time. More importantly, if you apply for reinstatement after this date, we may not be able to reinstate your policy without evidence of insurability.[56]

---

[50] Joint Statement No. 99; Joint Exhibit Part A, Ex. 36 (the "Phone Call Transcript June 2021") 225-233.

[51] *See* Phone Call Transcript June 2021.

[52] Joint Statement Nos. 107 & 112; Citera Declaration ¶ 73; Joint Exhibit Part A, Ex. 39 (the "July 1, 2021, Letter") 245-247. To the extent that Linhart objects to that evidence based upon her purported lack of knowledge, in the absence of any additional factual support, her objection is **OVERRULED**. *See Fed. Election Comm'n*, 317 F.3d at 950.

[53] July 1, 2021, Letter 245.

[54] *See generally id*.

[55] *Id.* at 245.

[56] *Id.*

### v. July 23, 2021, Premium Notice

On or about July 23, 2021, NYLIAC mailed a premium notice to James, which was a regularly scheduled reminder for his August 2021 premium.[57] The amount due by August 11, 2021, was $711.06.[58] The Notice contained the following statements:

- You are being billed for the minimum premium for this policy.
- Paying the minimum premium for the period indicated here has no effect on any previous lapse warnings you may have received.
- Because your policy is a flexible premium policy, you are responsible for making sure that the cash surrender value of your policy is sufficient to pay the monthly deduction charges needed to keep your policy, or any applicable riders, in force.
- If your cash surrender value becomes too low to pay the monthly deduction charges, you will enter a late period. If payment isn't received by the end of your late period, your coverage, and all of its benefits, will be terminated except as otherwise stated in your policy.[59]

### vi. August 2021

On August 3, 2021, NYLIAC issued a Termination Notice to James, informing him that coverage under the Policy expired.[60] Four days later, on August 7, 2021, James passed away.[61] Within one week of James's passing, a member of James's family contacted NYLIAC regarding payment under the Policy.[62] On August 12, 2021, a NYLIAC representative stated that NYLIAC would not reinstate James's Policy and that there were no payable death benefits.[63]

---

[57] Joint Statement Nos. 113 & 114; Citera Declaration ¶ 74; Joint Exhibit Part A, Ex. 41 (the "July 23, 2021, Premium Notice") 252-254.

[58] July 23, 2021, Premium Notice 252.

[59] Id. at 253.

[60] Joint Statement Nos. 119 & 195; Citera Declaration ¶ 77; Joint Exhibit Part A, Ex. 42 (the "Termination Notice") 256.

[61] Joint Statement No. 121.

[62] Id. at No. 197.

[63] Id. at Nos. 203-205.

## III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party need prove only that there is an absence of evidence to support the nonmoving party's case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory

Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56.  Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c), which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein."  *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

## IV.  ANALYSIS

Linhart contends that the Policy remained in force at the time of James's death, because NYLIAC failed to comply with Cal. Ins. Code §§ 10113.71 and 10113.72 (the "Statutes").[64]

### A.   The Statutes

The Statutes went into effect on January 1, 2013.  *See McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 226 (2021).  The Statutes provide as follows:

> **1.      Cal. Ins. Code § 10113.71**
>
> (a) Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date.  The 60-day grace period shall not run concurrently with the period of paid coverage.  The provision shall provide that the policy shall remain in force during the grace period.
>
> (b)
>
>> (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

---

[64]     *See generally* Summary Judgment Opposition.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

2. **Cal. Ins. Code § 10113.72**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

**B.   Statutory Construction**

A federal court interpreting a California statute applies "California's rules of statutory construction." *Turnacliff v. Westly*, 546 F.3d 1113, 1117 (9th Cir. 2008). "The California Supreme Court has declared that the 'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.'" *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001) (citing *People v. Massie*, 19 Cal. 4th 550, 569 (1998)). "Statutory interpretation under California law begins with the words themselves, giving them 'their plain and commonsense meaning,' because the words of a legal text 'generally provide

the most reliable indicator of [the enacting body's] intent." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020) (citing *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103 (2007)); *see also Apple Inc. v. Superior Ct.*, 56 Cal. 4th 128, 135 (2013) (internal quotation marks and citations omitted) ("As always, we start with the language of the statute, giv[ing] the words their usual and ordinary meaning, while construing them in light of the statute as a whole and the statute's purpose.").

"When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word." *Wasatch Prop. Mgmt. v. Degrate*, 35 Cal. 4th 1111, 1121-22, *as modified* (July 27, 2005). "The court will apply common sense to the language at hand and interpret the statute to make it workable and reasonable." *Id.* at 1122. "If the statutory language is clear and unambiguous our inquiry ends." *Murphy*, 40 Cal. 4th at 1103. When "the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." *Nolan v. City of Anaheim*, 33 Cal. 4th 335, 340 (2004).

### C.    Application

#### 1.    Designation Form

Linhart contends that NYLIAC failed to comply with the Statutes, because NYLIAC did not provide a Designation Form to James.[65] NYLIAC admits that it did not send a Designation Form to James, but it maintains that the Statutes did not require it to do so.[66]

Cal. Ins. Code § 10113.72(a) provides as follows:

> An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each application with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

---

[65]    Summary Judgment Opposition 13:3-18:8.
[66]    Summary Judgment Motion 25:21-28:18.

In view of the undisputed facts here, the Court concludes that NYLIAC was not obligated to send a Designation Form to James. The evidence shows that James's Policy was issued in 2007, six years before the Statutes were enacted. The Court gives the "plain and commonsense meaning" to the word "applicant." *See Murphy*, 40 Cal. 4th at 1103; *see also* Black's Law Dictionary (12th ed. 2024) (defining "APPLICANT" as "[s]omeone who requests something"). The word "applicant" is not susceptible to more than one reasonable interpretation. *See Nolan*, 33 Cal. 4th at 340. James was an "applicant" for the Policy in 2007, but he ceased being an "applicant" when the Policy issued. At that point, James was no longer requesting anything; his request had been fulfilled. Accordingly, the Court concludes that James was not an "applicant" for the Policy when the Statutes were enacted in 2013, or at any time thereafter.

Linhart urges the Court to consider the California Supreme Court's decision in *McHugh*. There, the California Supreme Court concluded that the Statutes "apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." *McHugh*, 12 Cal. 5th at 220. The Statutes were enacted "to shield consumers from losing life insurance coverage because of a missed premium payment." *Id*. The Statutes were designed to protect "policy owners— including elderly, hospitalized, or incapacitated ones who may be particularly vulnerable to missing a premium payment[.]" *Id*. However, the *McHugh* court recognized that the Statutes were not entirely retroactive. The court noted that different parts of the Statutes "plausibly favor the interpretations urged by *both* parties." *Id*. at 236 (emphasis in original). The California Supreme Court specifically determined that the applicable subdivision, Cal. Ins. Code § 10113.72(a), "unmistakably applies only to new policies[.]" *Id*. The language of that subdivision "refers repeatedly to the 'applicant' making a written designation, rather than the 'policy owner,' clearly indicating it applies only to new policies." *Id*. The defendant in *McHugh* "persuasively argue[d] that the particular phrasing of subdivision (a)'s command—it instructs that a policy '*shall not be* issued or delivered . . . until' an applicant has been given the written designation right—further supports that it applies only to new policies as of 2013, since 'shall be' commands often signify a statute's forward-looking nature." *Id*. (emphasis in original). When applying California law, federal courts "are bound by the decisions of the California Supreme Court, 'including reasoned dicta.'" *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (citation omitted). Accordingly, the Court concludes that the *McHugh* case firmly supports NYLIAC's position.

Linhart also asks the Court to consider two district court cases: *Poe v. Nw. Mut. Life Ins. Co.*, 699 F. Supp. 3d 871 (C.D. Cal. 2023) (appeal filed), and *Siino v. Foresters Life Ins. & Annuity Co.*, 2023 WL 4410948 (N.D. Cal. July 7, 2023). The Court has read and considered those authorities, and it concludes that neither case compels a different result. In a footnote, the *Siino* court concluded as follows:

> [T]he Statutes would be ineffective if insurers could violate other provisions and still terminate a policy. . . . [S]ections 10113.71(b)(1) and 10113.72(c) require that notice be sent to the policy owner's third-party designee. But an insurer who fails to give its insured the opportunity to designate a third-party designee as required by section 10113.72(a) makes the sending of that notice impossible. Accordingly, the Court concludes that an insurer cannot terminate a policy if it has not complied with sections 10113.71(a) or 10113.72(a).

*Id.* at *6 n.6. This Court is persuaded by the *Siino* court's observations that the subdivisions of those Statutes are interrelated. Nevertheless, the Court concludes that Cal. Ins. Code § 10113.72(a) is not applicable to the instant case. In view of the plain text of the Statutes, as well as the California Supreme Court's decision in *McHugh*, the Court concludes that Cal. Ins. Code § 10113.72(a) did not require NYLIAC to provide a Designation Form to James, because James was not an "applicant" in 2013 or thereafter.

Linhart urges the Court to consider "why the California legislature enacted" the Statutes.[67] However, the Court's analysis must "end[]" because "the statutory language is clear and unambiguous." *Murphy*, 40 Cal. 4th at 1103.

Accordingly, the Court concludes that NYLIAC was not obligated to provide James with a Designation Form.

### 2. Annual Notice

Linhart further asserts that NYLIAC's purported Annual Notices did not conform to the requirements set forth in the Statutes.[68]

Cal. Ins. Code § 10113.72(b) provides as follows:

The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

The undisputed evidence demonstrates that, every year following the enactment of the Statutes, NYLIAC sent an Annual Policy Summary to James.[69] NYLIAC mailed each Annual Policy Summary to James's address of record for each year, and none was ever

---

[67] *See* Summary Judgment Opposition 18:9-19:11.

[68] *Id.* at 13:10-11.

[69] Joint Statement Nos. 20-28; Annual Policy Summary Years 6-14.

returned as "undeliverable."[70] The following notice appeared on page two of each Annual Policy Summary:

> **New Jersey, Vermont, Florida, Maine & California Residents**—If the insured covered by this policy and/or policyowner is age 62 or older (NJ), age 64 or older (VT) or any age (FL, ME, and CA), you can designate a third party to whom we will mail copies of premium, cancellation and lapse notices. Please call a Customer Service Representative at the toll-free number on page one for more information regarding this procedure.[71]

The Court concludes that NYLIAC's Annual Notices comply with the Statutes. As required under Cal. Ins. Code § 10113.72(b), NYLIAC sent Annual Notices to James informing him of his right to designate a third party to receive premium, cancellation, and lapse notices. During the hearing in this Court, Linhart asserted that NYLIAC did not notify James of "the right to change the written designation[.]" Cal. Ins. Code § 10113.72(b). Because that subdivision includes the conjunction "or"—requiring notice of "the right to change the written designation or designate one or more persons"—the Court concludes that NYLIAC's notice was sufficient. *See Morville v. United Parcel Serv.*, 144 Cal. App. 3d 552, 555 (1983) (noting that "or" is a "disjunctive particle used to express an alternative, or to give a choice among two or more things").

Linhart also contends that NYLIAC's Annual Notices were insufficient because they used "inconspicuous language[,]" appeared "in size eight font[,] and [were] buried in the middle of its annual policy statements[.]"[72] As an initial matter, the Court concludes that NYLIAC's Annual Notices contained clear language that complied with the Statute. Moreover, as NYLIAC asserts—and the Court agrees—Cal. Ins. Code § 10113.72(b) "says nothing about type size, placement, or phrasing."[73] "In construing a statute, [the court does] not insert words into it as this would 'violate the cardinal rule that courts may not add provisions to a statute.'" *People* ex rel. *Gwinn v. Kothari*, 83

---

[70] Joint Statement Nos. 20-43; Annual Policy Summary Year 6 70; Annual Policy Summary Year 7 77; Annual Policy Summary Year 8 83; Annual Policy Summary Year 9 90; Annual Policy Summary Year 10 97; Annual Policy Summary Year 11 104; Annual Policy Summary Year 12 110; Annual Policy Summary Year 13 117; Annual Policy Summary Year 14 123; Citera Declaration ¶¶ 10-18, 80, & 81; Joint Exhibit Part A, Exs. 16 & 32.

[71] Joint Statement No. 45; Annual Policy Summary Year 6 71; Annual Policy Summary Year 7 78; Annual Policy Summary Year 8 84; Annual Policy Summary Year 9 91; Annual Policy Summary Year 10 98; Annual Policy Summary Year 11 105; Annual Policy Summary Year 12 111; Annual Policy Summary Year 13 118; and Annual Policy Summary Year 14 124.

[72] Summary Judgment Opposition 13:12-14.

[73] Summary Judgment Motion 23:5.

Cal. App. 4th 759, 768 (2000).  Therefore, the Court will not add requirements to Cal. Ins. Code § 10113.72(b) regarding font size, placement, or phrasing.

Accordingly, the Court concludes that NYLIAC's Annual Notices complied with the Statutes.

### 3. Grace Period and Pre-Lapse Notice

NYLIAC contends that its grace period and its pre-lapse notices comply with the Statutes.[74]

With respect to the grace period, while Cal. Ins. Code § 10113.71(a) requires "a provision for a grace period of not less than 60 days from the premium due date[,]" the Policy included a 62-day grace period.[75] As Linhart concedes,[76] NYLIAC complied—and even over-complied—with that particular requirement.

With respect to the pre-lapse notice, the Statutes require that a notice of pending lapse and termination of a life insurance policy must be mailed by the insurer to the named policy owner at least 30 days before the effective date of termination. *See* Cal. Ins. Code § 10113.71(b)(1).  The evidence shows that, on June 1 and July 1, 2021, NYLIAC sent letters to James that warned him that his Policy "is in danger of lapsing."[77] The letters stated that James must act to maintain his coverage under the Policy and that, if he did not do so, then his coverage under the policy would end.[78] NYLIAC did not issue the Termination Notice until August 3, 2021.[79]  Accordingly, the Court concludes that NYLIAC's Pre-Lapse Notices complied with the Statutes.

### D. Breach of Contract

A plaintiff asserting a breach of contract claim must allege:  (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage.  *See Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  The thrust of Linhart's breach of contract claim is that NYLIAC failed to comply with the Statutes and that NYLIAC failed to pay the benefit owed to Linhart.[80]  In

---

[74]    *Id.* at 20:18-22:9.

[75]    Joint Statement No. 16; Policy 43.

[76]    Summary Judgment Opposition 23:26-28 n.6.

[77]    June 1, 2021, Letter 214; July 1, 2021, Letter 245.

[78]    *See generally* June 1, 2021, Letter; July 1, 2021, Letter.

[79]    Joint Statement Nos. 119 & 195; Citera Declaration ¶ 77; Termination Notice.

[80]    *See generally* Amended Complaint; Summary Judgment Opposition.

view of the Court's conclusion above—that NYLIAC did comply with the Statutes—the Court necessarily concludes that NYLIAC was not in breach of contract, because the Policy lapsed. Accordingly, NYLIAC's Summary Judgment Motion is **GRANTED** with respect to this claim.

### E.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Without a viable breach of contract claim, "an insured's cause of action for breach of the implied covenant of good faith and fair dealing will fail as a matter of law." *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2018 WL 4962033, at *4 (N.D. Cal. Oct. 12, 2018); *see also Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1470 (2011) (concluding that a bad faith denial of insurance benefits claim fails as a matter of law when the plaintiff has no viable breach of contract claim). Accordingly, NYLIAC's Motion is also **GRANTED** with respect to this claim.

### F.  Punitive Damages

Under California law, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, *in addition to the actual damages*, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a) (emphasis added). "An award of actual damages, even if nominal, is required to recover punitive damages." *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 238 (2005).

As explained above, the Court concludes that Linhart is not entitled to relief with respect to any of the claims in the Amended Complaint. Because Linhart cannot recover any actual damages, Linhart cannot recover punitive damages. Accordingly, Linhart's request for punitive damages is **DENIED**.

### G.  Class Certification Motion

Because the Court concludes that Linhart's claims for relief must be dismissed and that NYLIAC's Summary Judgment Motion must be granted, the Court necessarily concludes that Linhart's Class Certification Motion is **DENIED**.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.   NYLIAC's Summary Judgment Motion [ECF No. 99] is **GRANTED**.

2.   Linhart's Class Certification Motion [ECF No. 85] is **DENIED**.

3. Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: December 26, 2024

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
John W. Holcomb
UNITED STATES DISTRICT JUDGE